# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>**CENTAUR, LLC et al.,**[1]<br><br>Debtors. | : Chapter 11<br>:<br>: Case No. 10-10799 (KJC)<br>: (Jointly Administered)<br>:<br>: Objection Deadline: March 30, 2010 at 4:00 p.m.<br>: Hearing Date: April 6, 2010 at 1:00 p.m.<br>: (only if objections filed)<br>: |

## DEBTORS' APPLICATION FOR (I) AUTHORITY TO EMPLOY AND RETAIN BLACKSTONE ADVISORY PARTNERS L.P. AS INVESTMENT BANKER AND FINANCIAL ADVISOR FOR THE DEBTORS *NUNC PRO TUNC* TO THE PETITION DATE AND (II) A WAIVER OF CERTAIN REQUIREMENTS OF LOCAL RULE 2016-2

The affiliated debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors") hereby file the application (the "Application")[2] pursuant to sections 327(a) and 328 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code"), Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2014-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), for entry of an order (i) authorizing the employment and retention of Blackstone Advisory Partners L.P. (the "Advisor") as investment banker and financial advisor for the Debtors, nunc pro tunc, to the Petition Date and (ii) waiving certain requirements of Local Rule 2016-2 and respectfully represent as follows:

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, if applicable, are: Centaur, LLC (8148); Centaur Colorado, LLC (9131); Centaur Indiana, LLC; Centaur Racing, LLC; Hoosier Park, L.P. (0820); HP Dining & Entertainment, LLC; Centaur Pennsylvania, LLC; VVD Properties General Partner, LLC; Valley View Downs GP, LLC; VVD Properties, LP (6808); Centaur PA Land Management, LLC; and Centaur PA Land General Partner, LP.

[2] A proposed order granting the relief requested in the Application is attached hereto as Exhibit D.

## Jurisdiction

1. This Court has jurisdiction to consider this Application pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this District pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

2. On March 6, 2010 (the "Petition Date"), each of the Debtors commenced chapter 11 cases in this Court by filing voluntary petitions for relief under the Bankruptcy Code.

3. By order dated March 10, 2010 [D.I. 19], the Debtors' chapter 11 cases are being jointly administered for procedural purposes only.

4. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5. No creditors' committee has yet been appointed in these cases. Further, no examiner or trustee has been requested or appointed in any of the Debtors' chapter 11 cases.

6. Additional background facts on the Debtors, including an overview of the Debtors' businesses, information on the Debtors' corporate structure, information on the Debtors' debt structure and information on the events leading up to the Debtors' chapter 11 cases are contained in the Declaration of Kurt E. Wilson in Support of First Day Motions, filed on March 8, 2010 [Case No. 09-13760 (KJC), D.I. 122].

## Relief Requested

7. By the Application, pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rule 2014(a), and Local Rule 2014-1, the Debtors respectfully request entry of an order (i) authorizing the employment and retention of the Advisor as investment banker and financial advisor for the Debtors, nunc pro tunc, to the Petition Date and

in accordance with the terms of the letter agreement between the Debtors and the Advisor, dated as of and effective as of September 16, 2009 (the "Engagement Letter"), which is attached hereto as Exhibit A, and (ii) waiving certain requirements of Local Rule 2016-2 pursuant to Local Rule 2016-2(g).

**Basis for Relief**

8. Recently, the Debtors have faced a number of challenges which, taken together, have had a negative impact on the Debtors' liquidity and overall financial performance, thereby necessitating the commencement of these chapter 11 cases. To address this growing liquidity crisis, the Debtors retained the Advisor to provide financial advisory services to the Debtors in connection with a possible restructuring of certain liabilities of the Debtors and the sale, merger, or other disposition of all or a portion of the Debtors or their assets (a "Sale Transaction") and to assist the Debtors in analyzing, structuring, negotiating and effecting a "Restructuring" (as defined in the Engagement Letter) or Transaction pursuant to the terms of the Engagement Letter. As a result of an ongoing lack of adequate liquidity and an inability to service their debt, the Debtors had no alternative but to seek relief under chapter 11 of the Bankruptcy Code.

9. The Advisor is a preeminent financial and restructuring advisor with a reputation for creativity in complex business situations. The Debtors have selected the Advisor as their investment banker and financial advisor because of the Advisor's diverse experience, knowledge, recognized expertise, and reputation in the restructuring field, its understanding of the issues involved in chapter 11 cases, and because the Debtors believe that the Advisor possesses the resources and is well qualified to provide the investment banking and financial advisory services that will be required here.

MIAMI 864933 (2K)

10. The Advisor's Restructuring and Reorganization Advisory Group (the "Restructuring Group") is a leading advisor to companies as well as creditors in large, complex, and high profile restructurings and bankruptcies. Established in 1991, the Restructuring Group has advised companies and creditors in approximately 250 distressed situations, both in and out of bankruptcy proceedings, involving nearly $1 trillion of total liabilities. The Restructuring Group's clients include companies, creditors, corporate parents, financial sponsors, and acquirers of troubled companies. The Restructuring Group is particularly active in large, complex, and high-profile bankruptcies and restructurings. The Restructuring Group has advised in the following chapter 11 reorganizations, among others: Delta Air Lines, Inc., Enron Corporation, General Motors Corporation, Global Crossing Ltd., Mirant, SemGroup, L.P., Station Casinos Inc., Twin River Casino, W.R. Grace & Co., Winn-Dixie Stores, Inc, and Yonkers Racing Corporation. In addition to restructuring advice, the Restructuring Group has provided general advice to such major companies as AIG, Aquila, Inc., Ford Motor Company, The Goodyear Tire & Rubber Company, and Xerox Corporation. As a result of its work on a significant share of major restructuring assignments, the Restructuring Group is one of the most seasoned and experienced restructuring advisors on Wall Street. The Restructuring Group's senior professionals have well in excess of 150 years of combined experience in restructuring assignments.

11. Steven Zelin, a Senior Managing Director in the Restructuring Group, will lead all of the day-to-day aspects of this engagement. Mr. Zelin has been providing restructuring services full-time since 1988. He is well-suited to provide the services required by the Debtors and his advisory experience extends across many industries, including gaming and entertainment. His most notable assignments include Aeromexico/Mexicana Airlines; Aquila,

Inc.; Alliance Entertainment, Inc.; Big V Supermarkets (Shop Rite); Enron Corporation; Entergy New Orleans; Ferruzzi Finanziaria; General Motors Corporation; Goodyear Tire & Rubber Corporation; Integrated Resources, Inc.; Kindred Healthcare (formerly Vencor); Marvel Entertainment Group; Motorola Inc. (on its restructuring of Iridium); Pacific Lumber Corp. and Scotia Pacific Company; Paragon Trade Brands, Inc.; R.H. Macy & Co.; SemGroup, L.P.; Twin River Casino; and Xerox Corporation.

A.  **Scope of Services**

12.  As set forth above, the Debtors employed the Advisor on September 16, 2009 to assist the Debtors in the evaluation of strategic alternatives and to serve as their financial advisor in connection with their restructuring efforts. Since then, the Advisor has become familiar with the Debtors' businesses, operations, and financial condition and is both well qualified and uniquely able to represent the Debtors as financial advisor in connection with such matters in a cost-effective and efficient manner.

13.  The following Advisor professionals will be responsible for providing professional services to the Debtors: Steven Zelin, Senior Managing Director; Shervin Korangy, Managing Director; Sebastian Arango, Vice President and Louis Littman, Analyst. Additional staff will be provided as needed.

14.  The Debtors have negotiated the terms of the Engagement Letter, which sets forth the services that the Advisor will provide to the Debtors as well as the manner in which the Advisor will be compensated for such services. To date, the Advisor has provided, and/or will provide on a going-forward basis upon the Court's approval of the Application, the following services:

**Business Plan / Financial Model**

(a) Assist in the evaluation of the Company's (as defined in the Engagement Letter) businesses and prospects;

(b) Assist in the development of the Company's long-term business plan and related financial projections;

(c) Assist in the development of financial data and presentations to the Company's governing board, various creditors and other third parties;

**Restructuring Design**

(d) Analyze various restructuring scenarios and the potential impact of these scenarios on the recoveries of those stakeholders impacted by the Restructuring;

(e) Provide strategic advice with regard to restructuring or refinancing the Company's Obligations (as defined in the Engagement Letter);

(f) Evaluate the Company's debt capacity and alternative capital structures;

**Restructuring Implementation**

(g) Participate in negotiations among the Company and its creditors, suppliers, lessors and other interested parties;

(h) Value securities offered by the Company in connection with a Restructuring;

(i) Advise the Company and negotiate with lenders with respect to potential waivers or amendments of various credit facilities;

**Other**

(j) If specifically requested in writing by the Company, advise and assist the Company in evaluating a potential Financing (as defined in the Engagement Letter), contact potential sources of capital and assist the Company in negotiating and consummating a Financing;

(k) Assist the Company in identifying, contacting and evaluating candidates for a potential Sale Transaction and assist the Company in negotiating and consummating a Sale Transaction;

(l) Analyze the Company's financial liquidity and evaluate alternatives to improve such liquidity;

(m) Assist in arranging debtor in possession financing for the Company, as requested;

MIAMI 864933 (2K)

(n) Provide expert witness testimony concerning any of the subjects encompassed by the other financial advisory services; and

(o) Provide such other advisory services as are customarily provided in connection with the analysis and negotiation of a Restructuring as requested and mutually agreed.

15. The Advisor has stated its desire and willingness to act in these chapter 11 cases and to render the necessary professional services as financial advisor for the Debtors.

**B. Disinterestedness**

16. Section 327(a) of the Bankruptcy Code provides for the appointment of a professional where that person does not possess any interest materially adverse to a debtor with regard to the matters that will be handled by such person and where the professional is a disinterested person.

17. The Advisor has informed the Debtors that, except as qualified in the Declaration of Steven Zelin in support of the Application (the "Zelin Declaration"), a copy of which is annexed hereto as Exhibit B, and except as qualified in the declaration of Robert Gentile in support of the Application (the "Gentile Declaration", and together with the Zelin Declaration, the "Blackstone Declarations"), a copy of which is annexed hereto as Exhibit C,[3] the Advisor has no material connection with the Debtors, their creditors, any other party in interest, their respective attorneys and accountants, the United States Trustee for the District of Delaware (the "U.S. Trustee"), or any person employed by the office of the U.S. Trustee in the above-captioned chapter 11 cases.

18. Based on the Blackstone Declarations, the Debtors believe the Advisor (a) does not hold or represent any interest adverse to the Debtors or their estates, and (b) is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, as

---

[3] The Blackstone Declarations are incorporated herein by reference.

7

required by section 327(a) of the Bankruptcy Code. The Debtors' knowledge, information, and belief regarding the matters set forth herein are based, and made in reliance upon, the Blackstone Declarations.

19. The Debtors have been advised that no senior managing director, managing director or employee of the Advisor is related or connected to any employee of the Office of the United States Trustee for the District of Delaware or the Office of the Clerk of Court for the United States Bankruptcy Court for the District of Delaware. Also, no senior managing director, managing director or employee of the Advisor is related or connected with any of the Bankruptcy Judges currently serving in the United States Bankruptcy Court for the District of Delaware.

20. To the extent that the Advisor discovers any additional facts bearing on the matters described herein during the period of the Advisor's retention, the Advisor will supplement the information provided in the Declarations.

21. As of September 16, 2009 and pursuant to the Engagement Letter, the Advisor was retained by the Debtors on a prepetition basis to represent the Debtors in their restructuring and reorganization efforts (the "Prepetition Assignment"). In connection with the Prepetition Assignment, the Advisor was paid $1,214,954.43 in Monthly Fees and expenses incurred and a $25,000 Expense Advance (as such terms are defined in the Engagement Letter). As of the Petition Date, the Advisor has earned, including expenses incurred, $1,150,668.72 for the 172 calendar days it was employed prepetition.[4] The Advisor will apply the net unearned Monthly Fees in the amount of $64,285.71 against fees earned and expenses incurred by the

---

[4] This amount is comprised of five monthly fees of $200,000.00, a stub monthly fee of $135,714.29 for the time period from February 16, 2010 to March 6, 2010, and expenses incurred of $14,954.43.

8

Advisor postpetition. To the extent the Expense Advance exceeds expenses incurred by the Advisor prepetition, such excess shall be applied against postpetition fees and expenses.

### C. Terms of Retention

22. The Debtors understand that the Advisor intends to apply to this Court for allowance of compensation and reimbursement of expenses in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and orders of this Court.

23. The Debtors and the Advisor have agreed to the compensation structure set forth in the Engagement Letter (the "Fee and Expense Structure"), a partial summary of which is provided below, in consideration for the services to be rendered by the Advisor in these chapter 11 cases. Section 328(a) of the Bankruptcy Code provides, in relevant part, that a debtor "with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title . . . on any reasonable terms and conditions of employment, including on a retainer, or an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a). Section 328(a) therefore, permits the Court to approve the Fee and Expense Structure set forth in the Engagement Letter in connection with the Debtors' retention of the Advisor.

24. The Debtors have agreed to pay the Advisor according to the Fee and Expense Structure,[5] subject to this Court's approval and in compliance with further orders of this Court, as follows:

    (a)    a monthly advisory fee (the "Monthly Fee") in the amount of $200,000 in cash, with the first Monthly Fee payable upon the execution of this

---

[5] To the extent there is any inconsistency in connection with the summary of the Fee and Expense Structure set forth in this Application and the Fee and Expense Structure as set forth in the Engagement Letter, the terms of the Engagement Letter shall control. The Engagement Letter contains additional provisions for compensation that are not set forth in this Application.

9

Engagement Letter by both parties and additional installments of such Monthly Fee payable in advance on each monthly anniversary of the effective date of the Engagement Letter. Fifty percent of all monthly fees paid starting with the effective date of the Engagement Letter shall be credited, without duplication, against any Restructuring Fee, Financing Fee and Sale Transaction Fee described below, either previously paid or simultaneously or subsequently payable;

(b) an additional fee (the "Restructuring Fee") equal to $5,000,000. Except as otherwise provided herein, a Restructuring shall be deemed to have been consummated upon (a) the binding execution and effectiveness of all necessary waivers, consents, amendments or restructuring agreements between the Company and its creditors involving the compromise of the face amount of such Obligations or the conversion of all or a material part of such Obligations into alternative securities, including equity, in the case of an out-of-court restructuring; or b) the execution, confirmation and consummation of a Plan of Reorganization pursuant to an order of the Bankruptcy Court, in the case of an in-court restructuring. The Restructuring Fee will be

(I) earned on the earliest of:

(w) consummation of the Restructuring,

(x) in the event that the Company attempts to implement the Restructuring by means of a prenegotiated plan of reorganization under chapter 11 of the Bankruptcy Code, the receipt of sufficient commitments, agreements or other expressions of intention to accept such plan that the Company elects to file a chapter 11 case and therein represent to the Bankruptcy Court hearing such case that the Company will seek to confirm a plan based on the prenegotiated plan, and

(II) payable, in immediately available funds, on the consummation of the Restructuring.

Notwithstanding the foregoing, (a) a Restructuring specifically shall be deemed to exclude any assumption at face value of Obligations in connection with the sale or disposition of any subsidiaries, joint ventures, assets or lines of business of the Company, (b) the restructured Obligations shall exclude any Obligations in respect of which a Restructuring Fee has previously been paid, and (c) no Restructuring Fee shall be payable in respect of a Restructuring solely of the Company's Obligations to one or more of PR Valley View Downs, L.P., PREIT-RUBIN, Inc., Churchill Downs Management Company and Churchill Downs Incorporated.

10

(c) reimbursement of all reasonable and necessary out-of-pocket expenses incurred during this engagement, including, but not limited to, reasonable travel and lodging as per firm policy which will be limited to coach class airfare (except for flight segments longer than 3 hours in duration which the Advisor shall be permitted to purchase airfare one class above coach level), direct identifiable data processing, document production, publishing services and communication charges, courier services, working meals (subject to cap of $50 per person per day), reasonable fees and expenses of the Advisor's counsel and other necessary expenditures, payable upon rendition of invoices setting forth in reasonable detail the nature and amount of such expenses; provided, however, that the Company shall have no obligation to reimburse expenses incurred prior to the date hereof, and subject to the terms of the indemnification agreement attached to the Engagement Letter as <u>Attachment A</u>, incurred after the termination or expiration of the Engagement Letter. In connection therewith the Company shall pay the Advisor on the Effective Date and maintain thereafter a $25,000 expense advance for which the Advisor shall account upon termination of the Engagement Letter.

(d) If other than in connection with a Restructuring, the Company consummates a Sale Transaction incorporating all or substantially all of the assets or all or a majority or controlling interest in the equity securities of the Company, the Advisor shall be paid a fee payable upon consummation of such sale (the "Sale Transaction Fee") equal to the fee calculated based on the Aggregate Consideration as set forth in <u>Schedule I</u> to the Engagement Letter; provided however, that no Sale Transaction Fee shall be paid with respect to a Sale Transaction to one or more of the holders of the Obligations or incorporating all or substantially all of the assets or all or a majority or controlling interest in the equity securities of Centaur Colorado, LLC (including the Fortune Valley Hotel and Casino), Centaur Pennsylvania, LLC, VVD Properties, LP, VVD Properties General Partner, LLC, Centaur PA Land Management, LLC, Centaur PA Land General Partner, LP, Centaur PA Land, LP, Valley View Downs GP, LLC and/or Valley View Downs, LP (including the Valley View Downs racing business) (collectively, the "Excluded Properties"). Seventy-five (75) percent of any Sales Transaction Fee(s) paid shall be credited, without duplication, against any Restructuring Fee or Financing Fee either previously paid or simultaneously or subsequently payable.

(e) A fee, payable upon consummation of a Financing (other than a Financing, whether debtor-in-possession or otherwise, from one or more Holders of the Obligations), equal to the amount set forth in <u>Schedule II</u> to the Engagement Letter (the "Financing Fee"). Twenty-five (25) percent of any Financing Fee(s) paid shall be credited, without duplication, against any Restructuring Fee or any Sale Transaction Fee either previously paid or simultaneously or subsequently payable.

MIAMI 864933 (2K)

25. The Debtors believe that the Fee and Expense Structure set forth in the Engagement Letter includes reasonable terms and conditions of employment and should be approved under section 328(a) of the Bankruptcy Code. The Fee and Expense Structure appropriately reflects the nature of the services to be provided by the Advisor and the fee structures typically utilized by leading financial advisors of similar stature to the Advisor for comparable engagements, both in and out of court. The Fee and Expense Structure is consistent with the Advisor's normal and customary billing practices for cases of this size and complexity that require the scope of services outlined. In particular, the Debtors believe that the Fee and Expense Structure creates a proper balance between fixed monthly fees and contingency fees. Similar fixed and contingency fee arrangements have been approved and implemented in other large chapter 11 cases in this district. See, e.g., In re WCI Cmtys., Inc., No. 08-11643 (KJC) (Bankr. D. Del. Aug. 27, 2008) (authorizing retention of Lazard Freres & Co. LLC as financial advisor for debtors, under section 327(a) and 328(a) of the Bankruptcy Code); In re New Century TRS Holdings, Inc., No. 07-10416 (Bankr. D. Del. Apr. 25 2007) (same); In re Oakwood Homes Corp., No. 02-13396 (PJW) (Bankr. D. Del. Jul. 21, 2003); In re Burlington Indus., Inc., No. 01-11282 (RJN) (Bankr. D. Del. May 21, 2003) (authorizing retention of Miller Buckfire Lewis & Co., LLC, and Dresdner Kleinwort Wasserstein, Inc., as financial advisor for debtors, under section 327(a) and 328(a) of the Bankruptcy Code); In re Kaiser Aluminum Corp., No. 02-10429 (JFK) (Bankr. D. Del. Mar. 19, 2002) (authorizing retention of Lazard Freres & Co. LLC and subjecting compensation to same standard of review).

26. In sum, therefore, the Debtors believe that the Fee and Expense Structure includes reasonable terms and conditions of employment in light of (a) industry practice, (b) market rates charged for comparable services both in and out of the chapter 11 context,

12

MIAMI 864933 (2K)

(c) the Advisor's substantial experience with respect to financial advisory services, and (d) the nature and scope of work to be performed by the Advisor in these chapter 11 cases.

27. Pursuant to sections 327(a) and 328 of the Bankruptcy Code, Bankruptcy Rule 2016 and Local Rule 2016-2(g), the Debtors are seeking approval of the Advisor's retention without the Advisor being required, in its invoices and applications submitted pursuant to the Court, to (a) maintain receipts for expenses in amounts less than $75 and (b) maintain time records for services rendered by the Advisor's professionals or conform to any schedule of hourly rates.

28. Requiring the Advisor to submit detailed time records for the professional services would unduly burden the estates and the Advisor. Professionals that provide similar services in the ordinary course of the Debtors' businesses do not generally record their time. Furthermore, the Advisor, when providing services to clients outside of chapter 11, does not record its time for services provided.

29. This Court has recognized in other cases that the retained professionals need not file detailed time records in connection with providing certain non-bankruptcy services to the Debtors. See, e.g., In re Foamex Int'l Inc., Case No. 05-12685 (PJW) (Bankr. D. Del. Feb. 13, 2006); In re SFMB Acquisition Corp., Case No. 03-11524 (PJW) (Bankr. D. Del. Dec. 22, 2003); In re Pillowtex, Case No. 03-12339 (PJW) (Bankr. D. Del. Dec. 1, 2003); In re Alterra Healthcare Corp., Case No. 03-10254 (MFW) (Bankr. D. Del. Mar. 21, 2003).

30. The Debtors submit that the retention of the Advisor on the terms and conditions set forth herein and in the Engagement Letter is in the best interests of the Debtors, their estates, creditors, and all parties in interest.

MIAMI 864933 (2K)

D. **Indemnification Provisions**

31. The Engagement Letter provides that the Debtors will indemnify, hold harmless, reimburse, defend, and provide contribution to the Advisor, its affiliates, and their respective directors, officers, employees, advisors and other representatives (collectively, the "Indemnified Parties") under certain circumstances (such indemnification obligation being referred to as the "Indemnification Provisions"). The Debtors, however, will not indemnify or reimburse the Indemnified Parties for acts involving gross negligence or willful misconduct, as determined by a court of competent jurisdiction in a final, non-appealable judgment. The Indemnification Provisions, as modified by the proposed form of order authorizing the Advisor's retention, reflect the qualifications and limits on such terms that are customary in this jurisdiction and are in substantially the same form as terms that were approved by this Court in other cases. See, e.g., In re United Artists Theatre Co., 315 F.3d 217 (3d Cir. 2003); In re WCI Cmtys., Inc., No. 08-11643 (KJC) (Bankr. D. Del. Aug. 27, 2008); In re J.L. French Auto. Castings, Inc., Case No. 06-10119 (MFW) (Bankr. D. Del. Mar. 3, 2006); In re Foamex Int'l Inc., Case No. 05-12685 (PJW) (Bankr. D. Del. Feb. 13, 2006); In re Exide Techs., Case No. 02-11125 (KJC) (Bankr. D. Del. Aug. 21, 2002). Accordingly, the Debtors and the Advisor believe that the Indemnification Provisions, as modified by the proposed order, are customary and reasonable for engagements of this type and should be approved in these cases.

## Notice

32. Notice of the Application has been provided to (a) the Office of the United States Trustee for the District of Delaware; (b) Credit Suisse, Grand Cayman Branch, as issuer of a letter of credit in favor of the Commonwealth of Pennsylvania; (c) the administrative agents under the Debtors' prepetition credit facilities and their respective counsel; (d) the Debtors' thirty (30) largest known unsecured creditors on a consolidated basis as of the Petition Date;

14

(e) the Pennsylvania Gaming Control Board of the Commonwealth of Pennsylvania; (f) the Pennsylvania Harness Racing Commission; (g) the Indiana Horse Racing Commission; (h) the Indiana Gaming Commission; (i) the Colorado Limited Gaming Control Commission; (j) the Internal Revenue Service; and (k) all parties requesting notice pursuant to Bankruptcy Rule 2002. The Debtors submit that under the circumstances no other or further notice is necessary.

WHEREFORE, the Debtors respectfully request entry of an order (i) granting the relief requested herein and (ii) granting the Debtors such other and further relief as the Court deems just and proper.

Dated: March 17, 2010
       Wilmington, Delaware

                                      CENTAUR, LLC (for itself and on behalf of its affiliated debtors and debtors in possession)

                                      By: _____
                                      Kurt E. Wilson
                                      Executive Vice President, Chief Financial Officer, Treasurer and Secretary of Centaur, LLC