IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>CENTAUR, LLC, et al.,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 10-10799 (KJC)<br><br>(Jointly Administered)<br><br>Objection Deadline: April 22, 2010 at 4:00 p.m.<br>Hearing Date: May 25, 2010 at 10:00 a.m.<br>(If Objections Filed) |

**DEBTORS' APPLICATION FOR (I) AUTHORITY TO EMPLOY AND RETAIN INNOVATION CAPITAL, LLC AS SPECIAL FINANCIAL ADVISOR FOR THE DEBTORS IN CONNECTION WITH THE SALE OF CERTAIN ASSETS *NUNC PRO TUNC* TO THE PETITION DATE AND (II) A WAIVER OF CERTAIN REQUIREMENTS OF LOCAL RULE 2016-2**

The affiliated debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors") hereby file the application (the "Application")[2] pursuant to sections 327(a) and 328 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code"), Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2014-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), for entry of an order (i) authorizing the employment and retention of Innovation Capital, LLC ("Innovation Capital") as special financial advisor for the Debtors in connection with the sale, merger or acquisition (collectively, the "Transaction") of all of the equity interests in, or substantially all of the assets of, Centaur Colorado, LLC ("Centaur Colorado"), including the Fortune Valley Hotel & Casino ("Fortune Valley") in Central City, Colorado, nunc pro tunc, to the Petition Date and (ii) waiving certain requirements of Local Rule 2016-2 and respectfully represent as follows:

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, if applicable, are: Centaur, LLC (8148); Centaur Colorado, LLC (9131); Centaur Indiana, LLC; Centaur Racing, LLC; Hoosier Park, L.P. (0820); HP Dining & Entertainment, LLC; Centaur Pennsylvania, LLC; VVD Properties General Partner, LLC; Valley View Downs GP, LLC; VVD Properties, LP (6808); Centaur PA Land Management, LLC; and Centaur PA Land General Partner, LP.

## Jurisdiction

1. This Court has jurisdiction to consider this Application pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

## Procedural Background

2. On March 6, 2010 (the "Petition Date"), each of the Debtors commenced chapter 11 cases in this Court by filing voluntary petitions for relief under the Bankruptcy Code.

3. By Order dated March 10, 2010 [D.I. 19], the Debtors' chapter 11 cases are being jointly administered for procedural purposes only.

4. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5. On March 17, 2010, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors (the "Committee") in these cases. No examiner or trustee has been requested or appointed in any of the Debtors' chapter 11 cases.

6. On March 28, 2010, the Debtors filed a joint plan of reorganization [Case No. 10-10799 (KJC), D.I. 85] and a disclosure statement related thereto [Case No. 10-10799 (KJC), D.I. 86].

## Factual Background

7. The Debtors are leading domestic horse racing, off-track betting ("OTB") and casino operators with approximately 219,000 square feet of combined gaming space. The Debtors currently own, operate and/or have interests in racing and casino

---

[2] A proposed order granting the relief requested in the Application is attached hereto as Exhibit C.

facilities in five distinct gaming markets in Indiana and Colorado, with a project in progress in northwest Pennsylvania. The Debtors employ approximately 1,300 full and part-time individuals.

8. The Debtors own and operate Hoosier Park, a casino and horse racing track in Anderson, Indiana, along with three OTB facilities located in downtown Indianapolis, Fort Wayne, and Merrillville (the "OTB Facilities"). Hoosier Park is one of two horse racing tracks in Indiana with seating capacity for 2,750 racing patrons and offering 143 days of live racing per year. Fully integrated with Hoosier Park's racing facilities is a Las Vegas-style 92,000 square-foot casino building with nine bars and restaurants. The single-level casino floor features 2,000 slot machines and electronic table games, including craps, poker, blackjack and roulette. The three OTB Facilities average 22,500 square feet and seat 400 patrons, on average.

9. The Debtors also own Fortune Valley, located approximately 35 miles west of Denver. Fortune Valley's 37,000 square feet of gaming space offers nearly 750 slot, video poker and video keno machines and live table games, including craps, roulette, blackjack and poker. The two-floor complex also offers three restaurants, two bars and a multi-story hotel featuring 118 guest rooms and a parking garage.

10. Additional background facts on the Debtors, including an overview of the Debtors' businesses, information on the Debtors' corporate structure, information on the Debtors' debt structure and information on the events leading up to the Debtors' chapter 11 cases are contained in the Declaration of Kurt E. Wilson in Support of First Day Motions, filed on March 8, 2010 [Case No. 09-13760 (KJC), D.I. 122].

## Relief Requested

11. By the Application, pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rule 2014(a), and Local Rule 2014-1, the Debtors respectfully

3

request entry of an order (i) authorizing the employment and retention of Innovation Capital as special financial advisor for the Debtors in connection with the Transaction, nunc pro tunc, to the Petition Date and in accordance with the terms of the letter agreement between Centaur, LLC (the "Company"), Centaur Colorado and Innovation Capital, dated as of and effective as of December 7, 2007 (as amended on October 26, 2009 and as subsequently amended on April 5, 2010, the "Engagement Letter"), which is attached hereto as Exhibit A, and (ii) waiving certain requirements of Local Rule 2016-2 pursuant to Local Rule 2016-2(g).

## Basis for Relief

12. The Debtors have pursued the sale, merger or acquisition of all of the equity interests in, or substantially all of the assets of, Centaur Colorado, including Fortune Valley. The Debtors retained Innovation Capital to provide financial advisory services in connection with the Transaction pursuant to the terms of the Engagement Letter.

13. Innovation Capital is an investment banking and financial advisory firm with expertise in the areas of mergers and acquisitions, corporate finance, restructuring and valuation advisory services. The Debtors have selected Innovation Capital as their financial advisor for the Transaction because of Innovation Capital's diverse experience, knowledge, recognized expertise, and reputation in providing financial advisory services in connection with the gaming, leisure and hospitality industries, its understanding of the issues involved in chapter 11 cases, and because the Debtors believe that Innovation Capital possesses the resources and is well qualified to provide the financial advisory services that will be required here.

14. Innovation Capital is a leading advisor to companies as well as creditors in complex and high profile restructurings and bankruptcies that involve gaming companies. Innovation Capital is particularly active in bankruptcies and restructurings in the gaming industry. Innovation Capital has advised in the following restructuring advisory

4

assignments, among others: Aladdin Gaming Holdings, Lake of the Torches Economic Development Corporation, Greektown Holdings, Inc., President Casinos, Choctaw Resort Development Enterprise and American Gaming Group. As a result of its work on a significant share of gaming restructuring assignments, Innovation Capital is a seasoned and experienced restructuring advisory firm in the gaming industry.

15. Matt Sodl, a Managing Director of Innovation Capital, will lead all of the day-to-day aspects of this engagement. Mr. Sodl has been providing restructuring services to gaming industry clients since 2001. He is well-suited to provide the services required by the Debtors and his advisory experience extends across many industries, including gaming and entertainment. His most notable distressed asset sale assignments include the $82 million asset sale transaction of President Casino's Biloxi, Mississippi gaming assets pursuant to section 363 of the Bankruptcy Code and the $29 million asset sale transaction of Furr's Restaurant Group pursuant to section 363 of the Bankruptcy Code.

A. **Scope of Services**

16. As set forth above, the Debtors employed Innovation Capital on December 7, 2007 to serve as their financial advisor in connection with the Transaction. Since then, Innovation Capital has become familiar with the businesses, operations, and financial condition of Centaur Colorado, including Fortune Valley, and is both well qualified and uniquely able to represent the Debtors as financial advisor in connection the Transaction in a cost-effective and efficient manner.

17. The following Innovation Capital professionals will be responsible for providing professional services to the Debtors: Matt Sodl, Kevin Scheible, and Alex Wang. Additional staff will be provided as needed.

18. The Debtors have negotiated the terms of the Engagement Letter and the subsequent amendments, which set forth the services that Innovation Capital will provide

5

to the Debtors as well as the manner in which Innovation Capital will be compensated for such services. To date, Innovation Capital has provided, and/or will provide on a going-forward basis upon the Court's approval of the Application, the following services in connection with the Transaction:

(a) Assist the Company and Centaur Colorado in identifying, contacting and evaluating candidates for a potential Transaction and assist the Company and Centaur Colorado in negotiating and consummating the Transaction;

(b) Advise the Company and Centaur Colorado on the current state of the market with respect to the Transaction;

(c) Assist in arranging financing for the Transaction, as requested; and

(d) Provide such other advisory services as are customarily provided in connection with the analysis and negotiation of the Transaction as requested and mutually agreed.

19. Innovation Capital has stated its desire and willingness to act in these chapter 11 cases and to render the necessary professional services as financial advisor for the Debtors in connection with the Transaction.

B. **Disinterestedness**

20. Section 327(a) of the Bankruptcy Code provides for the appointment of a professional where that person does not possess any interest materially adverse to a debtor with regard to the matters that will be handled by such person and where the professional is a disinterested person.

21. Innovation Capital has informed the Debtors that, except as qualified in the Declaration of Matt Sodl in support of the Application (the "Sodl Declaration"), a copy of which is annexed hereto as Exhibit B,[3] Innovation Capital has no material connection with the Debtors, their creditors, any other party in interest, their respective attorneys and

---

[3] The Sodl Declaration is incorporated herein by reference.

MIAMI 867306 (2K)
WM1A 950879v1 04/08/10

accountants, the U.S. Trustee, or any person employed by the office of the U.S. Trustee in the above-captioned chapter 11 cases.

22. Based on the Sodl Declaration, the Debtors believe Innovation Capital (a) does not hold or represent any interest adverse to the Debtors or their estates, and (b) is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code. The Debtors' knowledge, information, and belief regarding the matters set forth herein are based, and made in reliance upon, the Sodl Declaration.

23. The Debtors have been advised that no managing director or employee of Innovation Capital is related or connected to any employee of the Office of the U.S. Trustee or the Office of the Clerk of Court for the United States Bankruptcy Court for the District of Delaware. Also, no managing director or employee of Innovation Capital is related or connected with any of the Bankruptcy Judges currently serving in the United States Bankruptcy Court for the District of Delaware.

24. To the extent that Innovation Capital discovers any additional facts bearing on the matters described herein during the period of Innovation Capital's retention, Innovation Capital will supplement the information provided in the Declarations.

25. As of December 7, 2007 and pursuant to the Engagement Letter, Innovation Capital was retained by the Debtors on a prepetition basis to represent the Debtors in their efforts to pursue a sale, merger or acquisition of all of the equity interests in, or substantially all of the assets of, Centaur Colorado, including Fortune Valley (the "Prepetition Assignment"). In connection with the Prepetition Assignment, Innovation Capital was paid a $10,000 Expense Retainer Fee (as such terms are defined in the Engagement Letter) none of which remained as of the Petition Date. As of the Petition Date, Innovation Capital has incurred expenses of $17,712.82 for the 819 calendar days it was employed prepetition.

Innovation Capital received a payment for expenses in the amount of $7,586.41 on February 5, 2010. Outstanding expenses as of the Petition Date total $126.41. Innovation Capital has agreed to voluntarily waive any claim against the Debtors for the payment of outstanding prepetition expenses. Accordingly, all expenses incurred and/or accrued by Innovation Capital in connection with the representation of the Debtors prior to the filing of their petitions were satisfied, discharged, and/or extinguished prior to the filing of their petitions.

C. **Terms of Retention**

26. The Debtors understand that Innovation Capital intends to apply to this Court for allowance of compensation and reimbursement of expenses in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and orders of this Court.

27. The Debtors and Innovation Capital have agreed to the compensation structure set forth in the Engagement Letter (the "Fee and Expense Structure"), a partial summary of which is provided below, in consideration for the services to be rendered by Innovation Capital in these chapter 11 cases. Section 328(a) of the Bankruptcy Code provides, in relevant part, that a debtor "with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title . . . on any reasonable terms and conditions of employment, including on a retainer, or an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a). Section 328(a) therefore, permits the Court to approve the Fee and Expense Structure set forth in the Engagement Letter in connection with the Debtors' retention of Innovation Capital.

28. The Debtors have agreed to pay Innovation Capital according to the Fee and Expense Structure,[4] subject to this Court's approval and in compliance with further orders of this Court, as follows:

> (a) reimbursement of all reasonable and necessary out-of-pocket expenses incurred during the engagement, up to $40,000 including, but not limited to, reasonable travel and lodging, direct identifiable data processing and communication charges, courier services, legal fees, and other necessary expenditures described in invoices setting forth in reasonable detail the nature and amount of such expenses; provided, however, that the Company shall have no obligation to reimburse expenses incurred prior to the date of the Engagement Letter, and subject to the terms of the indemnification agreement attached to the Engagement Letter as <u>Attachment A</u>, incurred after the termination or expiration of the Engagement Letter. In connection therewith the Company shall pay Innovation Capital a $10,000 non-refundable expense retainer which Innovation Capital shall apply towards any out-of-pocket expenses and any remaining balance will be credited against the Fee (as defined below) due and payable at the closing of the Transaction. Expenses in excess of $10,000 shall be approved in writing, in advance.
>
> (b) a monthly advisory fee (the "Monthly Advisory Fee") in the amount of twenty thousand dollars ($20,000) per month due on the fifteenth (15th) of each month up to a maximum of five (5) months such that the total aggregate Monthly Advisory Fees paid shall not exceed one hundred thousand dollars ($100,000). If the fifteenth (15th) of a month falls on a Saturday or Sunday, the Monthly Advisory Fee shall be due on the first business day following the fifteenth (15th) of that month. The first Monthly Advisory Fee shall be due upon execution of the second amendment to the Engagement Letter. It is agreed that the Monthly Advisory Fee(s) shall be fully credited against the Transaction Fee. Notwithstanding the due date of such Monthly Advisory Fee, however, payment of any Monthly Advisory Fee shall be after application to the Court and shall be subject to any order entered by the Court including any order approving interim compensation procedures.
>
> (c) an additional fee (the "Transaction Fee") equal to $675,000. Except as otherwise provided herein, the Transaction shall be deemed to have been consummated upon the closing of a sale, merger or acquisition of all of the equity interests in, or substantially all of the assets of, Centaur Colorado, including Fortune Valley.[5]

---

[4] To the extent there is any inconsistency in connection with the summary of the Fee and Expense Structure set forth in this Application and the Fee and Expense Structure as set forth in the Engagement Letter and amendments thereto, the terms of the Engagement Letter and the amendments shall control. The Engagement Letter contains additional provisions for compensation that are not set forth in this Application.

[5] The Debtors are also seeking to retain Blackstone Advisory Partners L.P. ("Blackstone") as financial advisors and investment bankers in their chapter 11 cases. However, the letter agreement between the Debtors and Blackstone Advisory Partners L.P., dated as of and effective as of September 16, 2009 (the "Blackstone

9

(d) if, during the term of the engagement, and as a result of the efforts and introductions of Innovation Capital, the Company or Centaur Colorado determines to raise external funds or enter into a separate transaction (other than as contemplated by the Engagement Letter) with an entity contacted by Innovation Capital (after approval by the Company), the Company will compensate Innovation Capital for its services in structuring the other transaction and introducing the parties. For the services rendered in connection with the other transaction, the Debtors agrees to pay Innovation Capital, or cause Innovation Capital to be paid, fees comparable to those customarily charged by investment banking firms in similar transactions, such fees to be paid upon the consummation of the other transaction.

29. The Debtors believe that the Fee and Expense Structure set forth in the Engagement Letter includes reasonable terms and conditions of employment and should be approved under section 328(a) of the Bankruptcy Code. The Fee and Expense Structure appropriately reflects the nature of the services to be provided by Innovation Capital and the fee structures typically utilized by leading financial advisors of similar stature to Innovation Capital for comparable engagements, both in and out of court. The Fee and Expense Structure is consistent with Innovation Capital's normal and customary billing practices for cases of this size and complexity that require the scope of services outlined. In particular, the Debtors believe that the Fee and Expense Structure creates a proper balance between flat fees, contingency fees and out-of-pocket expenses. Similar fixed and contingency fee arrangements have been approved and implemented in other large chapter 11 cases in this district. See, e.g., In re WCI Cmtys., Inc., No. 08-11643 (KJC) (Bankr. D. Del. Aug. 27, 2008) (authorizing retention of Lazard Freres & Co. LLC as financial advisor for debtors, under section 327(a) and 328(a) of the Bankruptcy Code); In re New Century TRS Holdings, Inc., No. 07-10416 (Bankr. D. Del. Apr. 25 2007) (same); In re Oakwood Homes Corp., No.

---

Engagement Letter") specifically provides that no Sale Transaction Fee (as defined in the Blackstone Engagement Letter) shall be paid to Blackstone "with respect to a Sale Transaction to one or more of the holders of the Obligations or incorporating all or substantially all of the assets or all or a majority or controlling interest in the equity securities of Centaur Colorado, LLC (including the Fortune Valley Hotel and Casino)."

MIAMI 867306 (2K)
WM1A 950879v1 04/08/10

02-13396 (PJW) (Bankr. D. Del. Jul. 21, 2003); In re Burlington Indus., Inc., No. 01-11282 (RJN) (Bankr. D. Del. May 21, 2003) (authorizing retention of Miller Buckfire Lewis & Co., LLC, and Dresdner Kleinwort Wasserstein, Inc., as financial advisor for debtors, under section 327(a) and 328(a) of the Bankruptcy Code); In re Kaiser Aluminum Corp., No. 02-10429 (JFK) (Bankr. D. Del. Mar. 19, 2002) (authorizing retention of Lazard Freres & Co. LLC and subjecting compensation to same standard of review).

30. In sum, therefore, the Debtors believe that the Fee and Expense Structure includes reasonable terms and conditions of employment in light of (a) industry practice, (b) market rates charged for comparable services both in and out of the chapter 11 context, (c) Innovation Capital's substantial experience with respect to financial advisory services, and (d) the nature and scope of work to be performed by Innovation Capital in these chapter 11 cases.

31. Pursuant to sections 327(a) and 328 of the Bankruptcy Code, Bankruptcy Rule 2016 and Local Rule 2016-2(g), the Debtors are seeking approval of Innovation Capital's retention without Innovation Capital being required, in its invoices and applications submitted pursuant to the Court, to (a) maintain receipts for expenses in amounts less than $75 and (b) maintain time records for services rendered by Innovation Capital's professionals or conform to any schedule of hourly rates.

32. Requiring Innovation Capital to submit detailed time records for the professional services would unduly burden the estates and Innovation Capital. Professionals that provide similar services in the ordinary course of the Debtors' businesses do not generally record their time. Furthermore, Innovation Capital, when providing services to clients outside of chapter 11, does not record its time for services provided.

33. This Court has recognized in other cases that the retained professionals need not file detailed time records in connection with providing certain non-bankruptcy

services to the Debtors. See, e.g., In re Foamex Int'l Inc., Case No. 05-12685 (PJW) (Bankr. D. Del. Feb. 13, 2006); In re SFMB Acquisition Corp., Case No. 03-11524 (PJW) (Bankr. D. Del. Dec. 22, 2003); In re Pillowtex, Case No. 03-12339 (PJW) (Bankr. D. Del. Dec. 1, 2003); In re Alterra Healthcare Corp., Case No. 03-10254 (MFW) (Bankr. D. Del. Mar. 21, 2003).

34. The Debtors submit that the retention of Innovation Capital on the terms and conditions set forth herein and in the Engagement Letter is in the best interests of the Debtors, their estates, creditors, and all parties in interest.

### D. Indemnification Provisions

35. The Engagement Letter provides that the Debtors will indemnify, hold harmless, reimburse, defend, and provide contribution to Innovation Capital, its affiliates, and their respective directors, officers, employees, advisors and other representatives (collectively, the "Indemnified Parties") under certain circumstances (such indemnification obligation being referred to as the "Indemnification Provisions"). The Debtors, however, will not indemnify or reimburse the Indemnified Parties for acts involving gross negligence or willful misconduct, as determined by a court of competent jurisdiction in a final judgment. The Indemnification Provisions, as modified by the proposed form of order authorizing Innovation Capital's retention, reflect the qualifications and limits on such terms that are customary in this jurisdiction and are in substantially the same form as terms that were approved by this Court in other cases. See, e.g., In re United Artists Theatre Co., 315 F.3d 217 (3d Cir. 2003); In re WCI Cmtys., Inc., No. 08-11643 (KJC) (Bankr. D. Del. Aug. 27, 2008); In re J.L. French Auto. Castings, Inc., Case No. 06-10119 (MFW) (Bankr. D. Del. Mar. 3, 2006); In re Foamex Int'l Inc., Case No. 05-12685 (PJW) (Bankr. D. Del. Feb. 13, 2006); In re Exide Techs., Case No. 02-11125 (KJC) (Bankr. D. Del. Aug. 21, 2002). Accordingly, the Debtors and Innovation Capital believe that the Indemnification Provisions,

as modified by the proposed order, are customary and reasonable for engagements of this type and should be approved in these cases.

## Notice

36.     Notice of the Application has been provided to (a) the Office of the United States Trustee for the District of Delaware; (b) Credit Suisse, Grand Cayman Branch, as issuer of a letter of credit in favor of the Commonwealth of Pennsylvania; (c) the administrative agents under the Debtors' prepetition credit facilities and their respective counsel; (d) the Committee; (e) the Pennsylvania Gaming Control Board of the Commonwealth of Pennsylvania; (f) the Pennsylvania Harness Racing Commission; (g) the Indiana Horse Racing Commission; (h) the Indiana Gaming Commission; (i) the Colorado Limited Gaming Control Commission; (j) the Internal Revenue Service; and (k) all parties requesting notice pursuant to Bankruptcy Rule 2002. The Debtors submit that under the circumstances no other or further notice is necessary.

WHEREFORE, the Debtors respectfully request entry of an order (i) granting the relief requested herein and (ii) granting the Debtors such other and further relief as the Court deems just and proper.

Dated: April 8, 2010
       Wilmington, Delaware

                                  CENTAUR, LLC (for itself and on behalf of its affiliated debtors and debtors in possession)

                                  By: _____
                                  Kurt E. Wilson
                                  Executive Vice President, Chief Financial Officer, Treasurer and Secretary of Centaur, LLC