# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **In re** | : | **Chapter 11** |
| | : | |
| **CENTAUR, LLC et al.,**[1] | : | **Case No. 10-10799 (KJC)** |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |
| | : | |
| | : | Related to Docket Nos. 235, 262, 264, 457, 459 |

## DEBTORS' OMNIBUS RESPONSE TO THE OBJECTION OF WELLS FARGO BANK NATIONAL ASSOCIATION, AS AGENT, AND THE OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO THE DEBTORS' MOTION FOR AN ORDER (I) APPROVING THE DISCLOSURE STATEMENT RELATING TO THE AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION FOR CENTAUR, LLC AND ITS AFFILIATED DEBTORS; (II) APPROVING FORM OF BALLOTS AND PROPOSED SOLICITATION, VOTING AND TABULATION PROCEDURES FOR THE PLAN AND PLAN CONFIRMATION PROCEDURES; (III) APPROVING THE SOLICITATION PACKAGES AND PRESCRIBING THE FORM AND MANNER OF NOTICE AND DISTRIBUTION THEREOF; AND (IV) SCHEDULING A HEARING ON PLAN CONFIRMATION

The affiliated debtors and debtors in possession in the above-captioned chapter 11

cases (collectively, the "Debtors") hereby file this omnibus response (the "Response") to the

objection [D.I. 262] (the "Second Lien Objection") of Wells Fargo Bank, National Association,

as administrative agent and collateral agent for the Debtors' prepetition second lien credit

facilities (the "Prepetition Second Lien Agent"), and the objection [D.I. 264] (the "Committee

Objection" and together with the Second Lien Objection, the "Objections") of the Official

Committee of Unsecured Creditors appointed in these chapter 11 cases (the "Committee") to the

Debtors' motion [D.I. 235] (the "Motion") for an order (i) approving the Disclosure Statement

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, if applicable, are: Centaur, LLC (8148); Centaur Colorado, LLC (9131); Centaur Indiana, LLC; Centaur Racing, LLC; Hoosier Park, L.P. (0820); HP Dining & Entertainment, LLC; Centaur Pennsylvania, LLC; VVD Properties General Partner, LLC; Valley View Downs GP, LLC; VVD Properties, LP (6808); Valley View Downs, LP (1028); Centaur PA Land Management, LLC; Centaur PA Land General Partner, LP; and Centaur PA Land, LP. Debtors Centaur PA Land, LP and Valley View Downs, LP (together, the "Valley View Downs Debtors") filed their chapter 11 petitions on October 28, 2009. The remaining Debtors (collectively, the "Centaur Debtors") filed their chapter 11 petitions on March 6, 2010.

[D.I. 238] (the "First Amended Disclosure Statement") relating to the Amended Joint Chapter 11 Plan of Reorganization for Centaur, LLC and Its Affiliated Debtors, dated May 7, 2010 [D.I. 236] (the "First Amended Plan"); (ii) approving the form of ballots and proposed solicitation, voting and tabulation procedures for the First Amended Plan, and the First Amended Plan confirmation process; (iii) approving the Solicitation Packages (as defined in the Motion) and prescribing the form and manner of notice and distribution thereof; and (iv) scheduling a confirmation hearing on the First Amended Plan. In support of the Response, the Debtors respectfully state as follows:

## PRELIMINARY STATEMENT

The purpose of a disclosure statement is to provide adequate information so that impaired creditors entitled to vote on a plan can make an informed decision as to whether to accept or reject the plan. Despite the "kitchen-sink" nature of the Objections, particularly the Committee Objection, the Debtors believe the information contained in the Revised Disclosure Statement (as defined below) is more than adequate. The Debtors acknowledge that there are disputed issues in these chapter 11 cases that will need to be resolved in connection with confirmation of the Revised Plan (as defined below). Yet, the Debtors believe that they should be permitted to go forward with the solicitation and then focus on resolving the disputed issues between solicitation and confirmation.

The bulk of the objections that challenge the adequacy of the information contained in the First Amended Disclosure Statement have been addressed or resolved by revisions and additions contained in the Revised Plan, the Revised Disclosure Statement, the revised ballots, notices and other solicitation materials (collectively, the "Revised Solicitation Materials") and the revised proposed order granting the Motion (the "Revised Proposed

2

Order").[2] References to such revisions and additions are set forth herein. Based upon the revisions and additional disclosures made in response to the Objections, the Debtors submit that the Revised Disclosure Statement contains adequate information regarding the Revised Plan. Most of the remaining purported defects in the First Amended Disclosure Statement do not relate to the adequacy of information in the First Amended Disclosure Statement but rather are essentially arguments regarding the confirmability of the First Amended Plan and, therefore, should be addressed at the hearing on confirmation. Accordingly, the Revised Disclosure Statement provides "adequate information" to creditors and should be approved.

## BACKGROUND

1.      On October 28, 2009, the Valley View Downs Debtors and, on March 6, 2010, the Centaur Debtors, each commenced a chapter 11 case in the Bankruptcy Court for the District of Delaware (the "Court") by filing a voluntary petition for relief under title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code").

2.      On March 17, 2010, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed the Committee in these chapter 11 cases.[3] No examiner or trustee has been requested or appointed in any of the Debtors' chapter 11 cases.

3.      On March 28, 2010, the Debtors filed a joint plan of reorganization [D.I. 85] and a disclosure statement related thereto [D.I. 86].

---

[2]      Clean versions of the Revised Solicitation Materials as well as blacklines comparing the Revised Solicitation Materials to versions of the solicitation materials filed with the Motion are attached hereto as Exhibit B. A clean version of the Revised Proposed Order as well as a blackline comparing the Revised Proposed Order to the proposed order filed with the Motion are attached hereto as Exhibit C.

[3]      On July 6, 2010, the U.S. Trustee filed a revised notice of appointment of the Committee [D.I. 397] (the "Revised Appointment Notice"). The Revised Appointment Notice indicates that one of the original members of the Committee, Churchill Downs, Inc. (together with any of its affiliates that may hold claims against the Debtors, "Churchill"), is no longer a member of the Committee.

4. Pursuant to Orders dated April 15, 2010 [D.I. 166, Case No. 09-13760 (KJC), D.I. 271], the Debtors' chapter 11 cases are being jointly administered for procedural purposes only.

5. On May 7, 2010, the Debtors filed the First Amended Plan, the First Amended Disclosure Statement and the Motion.[4]

6. The First Amended Plan contained a number of features that have since been modified. Under the First Amended Plan, general unsecured claims were to be cancelled, and holders of general unsecured claims in excess of $10,000 that did not elect to have their claims treated as convenience claims were to receive no distribution on account of such claims. First Amended Plan § 5.6. Additionally, the First Amended Plan included two classes of equity interests, "Class 9 – Borrower Equity Interests" and "Class 10 – Subsidiary Equity Interests." First Amended Plan §§ 5.9, 5.10. The First Amended Plan proposed to cancel Class 9 – Borrower Equity Interests while rendering Class 10 – Subsidiary Equity Interests unimpaired. First Amended Plan §§ 5.9, 5.10. Additionally, pursuant to the terms of the First Amended Plan, in the event the holders of "Class 3 – Second Lien Claims" and "Class 5 – Valley View Downs Unsecured Claims" did not vote to accept the First Amended Plan pursuant to section 1126(c) of the Bankruptcy Code, such holders were to receive no distributions on account of their claims and holders of certain allowed intercompany claims were to receive distributions on account of their claims.[5] First Amended Plan § 5.8.

---

[4] Additional background facts on the Debtors, including an overview of the Debtors' businesses, information on the Debtors' corporate structure, information on the Debtors' debt structure and information on the events leading up to the Debtors' chapter 11 cases are contained in the Declaration of Kurt E. Wilson in Support of First Day Motions, filed on March 8, 2010 [Case No. 09-13760 (KJC), D.I. 122].

[5] Pursuant to the First Amended Plan, the payment of allowed intercompany claims was also contingent on the Court's determination by final order that assets of Valley View Downs, LP were not collateral or proceeds of collateral subject to the prepetition liens and security interests of the administrative agent and collateral agent for the

7.     On May 18, 2010, the Prepetition Second Lien Agent filed the Second Lien Objection.

8.     On May 19, 2010, the Committee filed the Committee Objection.

9.     On July 22, 2010, the Debtors filed the Second Amended Joint Plan of Reorganization of Centaur, LLC and Its Affiliated Debtors [D.I. 457] (as may be further amended, the "Revised Plan") and a disclosure statement related thereto [D.I. 459] (as may be further amended, the "Revised Disclosure Statement").

10.     As set forth in the Revised Disclosure Statement, Blackstone Advisory Partners L.P., the Debtors' investment banker and financial advisor, determined that the Reorganized Enterprise Value[6] of the Reorganized Debtors ranges from approximately \$300 to \$360 million. Revised Disclosure Statement § VIII.C.(a). The Debtors estimate that the approximate aggregate amount of Allowed First Lien Claims as of March 6, 2010, including accrued but unpaid interest, is in excess of \$405 million. Revised Disclosure Statement § IV.B.

11.     Under the Revised Plan, the Debtors' obligations under the Prepetition First Lien Credit Agreement and the Specified Hedging Agreements will be cancelled and, in exchange, each holder of an Allowed First Lien Claim shall in full satisfaction of such holder's Allowed First Lien Secured Claim, receive a distribution of (i) new secured first lien debt of the Reorganized Debtors in the amount of \$115 million, less the amount of any exit financing necessary to fund the Debtors' emergence from chapter 11; (ii) 97.8 % of new payable-in-kind notes; (iii) non-detachable penny warrants to purchase new equity interests; (iv) the cash

---

Debtors' prepetition first lien credit facilities (the "Prepetition First Lien Agent") and Prepetition Second Lien Agent. First Amended Plan § 5.8.

[6]     Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to such terms in the Revised Plan and the Revised Disclosure Statement.

proceeds of (y) any Assets of Valley View Downs, LP and (z) any sale that results in the transfer, directly or indirectly, of any Assets of Valley View Downs, LP, to the extent that the Assets reduced to cash or subject to such sale are collateral or proceeds of collateral subject to the prepetition liens and security interests of the Prepetition First Lien Agent; (v) the cash proceeds of the Assets of Centaur Colorado, LLC; and (vi) the cash proceeds of (y) the Assets of Centaur PA Land, LP and (z) any sale that results in the transfer, directly or indirectly, of any Assets of Centaur PA Land, LP.[7] Revised Plan § 5.2. The holders of Allowed First Lien Claims will also receive, on account of their Allowed First Lien Deficiency Claims, a distribution of (i) the cash proceeds remaining after the payment of certain administrative expense claims of (y) the Assets of Valley View Downs, LP and (z) any sale that results in the transfer, directly or indirectly, of any Assets of Valley View Downs, LP, to the extent that the Assets reduced to cash or subject to such sale are not collateral or proceeds of collateral subject to the prepetition liens and security interests of the Prepetition First Lien Agent; and (ii) a pro rata share of the interests in a litigation trust that will be charged with pursuing certain designated avoidance actions on behalf of the Debtors' estates for the benefit of unsecured creditors (the "Litigation Trust Interests"). Revised Plan § 5.2.

12.     The Revised Plan provides that the Prepetition Second Lien Credit Agreement will be cancelled and, if holders of Allowed Second Lien Claims vote to accept the Plan as a class pursuant to section 1126 of the Bankruptcy Code, holders of Allowed Second Lien Claims will receive a distribution of (i) $3.0 million aggregate face amount of new payable-in-kind notes; and (ii) Litigation Trust Interests. Revised Plan § 5.3. Likewise, in the event that

---

[7]     In the event that Class 3 – Second Lien Claims or Class 5 – Valley View Downs Unsecured Claims do not vote in favor of the Revised Plan pursuant to section 1126 of the Bankruptcy Code, holders of Allowed First Lien Claims may receive additional consideration under the Revised Plan. Plan § 5.2.

holders of Allowed Valley View Downs Unsecured Claims vote to accept the Revised Plan as a class, such holders shall receive a distribution of (i) $400,000 aggregate face amount of new payable-in-kind notes; and (ii) Litigation Trust Interests. Revised Plan § 5.5.[8]

13.     The Revised Plan also provides that each holder of Allowed Second Lien Claims, Allowed Valley View Downs Unsecured Claims, or Allowed General Unsecured Claims in excess of $10,000 may elect to reduce its Allowed Claims, in their entirety, to $10,000, and receive treatment in Class 7 – Convenience Claims. Revised Plan §§ 1.29, 5.7. The Revised Plan proposes to satisfy Class 7 – Convenience Claims in full, in Cash. Revised Plan § 5.7.

14.     Pursuant to the terms of the Revised Plan, holders of Allowed General Unsecured Claims that do not make the Convenience Class Election will receive a distribution of the Litigation Trust Interests. Revised Plan § 5.6.

15.     Under the Revised Plan, Class 8 – Intercompany Claims and Class 9 – Equity Interests will be cancelled and the holders of such Claims shall not receive a distribution. Revised Plan §§ 5.8, 5.9.

16.     The hearing for the Court to consider approval of the Revised Disclosure Statement is currently scheduled for July 28, 2010.

---

[8]     If holders of Class 3 – Second Lien Claims do not vote to accept the Revised Plan pursuant to section 1126 of the Bankruptcy Code, holders of Allowed Second Lien Claims will not receive a distribution of payable-in-kind notes but instead shall receive a distribution of (i) the cash proceeds remaining after the payment of certain administrative expense claims of (y) the Assets of Valley View Downs, LP and (z) any sale that results in the transfer, directly or indirectly, of any Assets of Valley View Downs, LP, to the extent that the Assets reduced to cash or subject to such sale are not collateral or proceeds of collateral subject to the prepetition liens and security interests of the Prepetition First Lien Agent; and (ii) Litigation Trust Interests. Revised Plan § 5.3. Likewise, if holders of Class 5 – Valley View Downs Unsecured Claims do not vote to accept the Revised Plan pursuant to section 1126 of the Bankruptcy Code, holders of Allowed Valley View Downs Unsecured Claims will not receive a distribution of payable-in-kind notes but instead shall receive a distribution of (i) the cash proceeds remaining after the payment of certain administrative expense claims of (y) the Assets of Valley View Downs, LP and (z) any sale that results in the transfer, directly or indirectly, of any Assets of Valley View Downs, LP, to the extent that the Assets reduced to cash or subject to such sale are not collateral or proceeds of collateral subject to the prepetition liens and security interests of the Prepetition First Lien Agent; and (ii) Litigation Trust Interests. Revised Plan § 5.5.

## I.    Disclosure Statement Objections

### A.    The Revised Disclosure Statement Satisfies the Requirements of Section 1125(a) of the Bankruptcy Code

17.    Pursuant to section 1125(b) of the Bankruptcy Code, a debtor in possession may not solicit votes to accept or reject a plan of reorganization without first receiving court approval of a written disclosure statement that contains "adequate information." Section 1125(a)(1) of the Bankruptcy Code defines "adequate information" as:

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan, but adequate information need not include such information about any other possible or proposed plan . . . .

11 U.S.C. § 1125(a)(1). A disclosure statement as a whole must provide information "reasonably practicable" to permit an "informed judgment" by those entitled to vote on a plan of reorganization. See Oneida Motor Freight, Inc. v. United Jersey Bank, 848 F.2d 414, 417 (3d Cir. 1988); see also Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. General Motors Corp., 337 F.3d 314, 321 (3d Cir. 2003).

18.    In examining the adequacy of the information contained in a disclosure statement, courts have broad discretion. See In re Cajun Elec. Power Co-op, Inc., 230 B.R. 715, 731 (Bankr. M.D. La. 1999) (citing In re Tex. Extrusion Corp., 844 F.2d 1142, 1157 (5th Cir. 1988) ("This determination is largely within the discretion of the bankruptcy court.")); see also In re A.H. Robins Co., 880 F.2d 694, 696 (4th Cir. 1989); In re Egan, 33 B.R. 672, 674-75 (Bankr. N.D. Ill. 1983). Many courts have found that the determination as to the adequacy of the

contents of a disclosure statement depends upon the facts and circumstances of each case. See,

e.g., Oneida Motor Freight, 848 F.2d at 418; Eubanks v. F.D.I.C., 977 F.2d 166, 169 n.2 (5th Cir.

1992); In re U.S. Brass Corp., 194 B.R. 420, 424-25 (Bankr. E.D. Tex. 1996) (listing factors

courts have considered in determining the adequacy of information provided in a disclosure

statement); In re Scioto Valley Mortg. Co., 88 B.R. 168, 170-71 (Bankr. S.D. Ohio 1988) (same);

In re Phoenix Petroleum Co., 278, B.R. 385, 393 (Bankr. E.D. Pa. 2001) (finding that the

determination of adequacy of the information contained in a disclosure statement is "subjective

and made on a case by case basis" (internal quotations omitted)). As noted in Phoenix

Petroleum,

> Courts will take a practical approach as to what is necessary under
> the circumstances of each case, such as the cost of preparation of
> the statements, the need for relative speed in solicitation and
> confirmation, and . . . the need for investor protection.

Id. (quoting H.R. Rep. No. 595, 95th Cong, 1st Sess., 408-09 (1977)).

19.     In determining whether a contested disclosure statement contains adequate

information, courts consider the sophistication of the audience to whom disclosure is directed.

See In re Zenith Elec. Corp., 241 B.R. 92, 99 (Bankr. D. Del. 1999) (finding that when

determining whether disclosure was adequate that courts should consider the audience requesting

additional information and that disclosure should be tailored to the sophistication of the

investor).

20.     When information beyond that in the disclosure statement is otherwise

available to creditors, courts may consider such information in determining whether a disclosure

statement meets the requirements of section 1125(a) of the Bankruptcy Code. See First Am.

Bank of New York v. Century Glove, Inc., 81 B.R. 274, 279 (D. Del. 1988) ("Because

§ 1125(a)(2)(C) contemplates that the typical investor will have information available to it

regarding debtor's affairs through sources other than the disclosure statement, the adequacy of information will be determined with a view to a typical investor's outside sources."); In re Copy Crafters Quickprint, Inc., 92 B.R. 973, 979 (Bankr. N.D.N.Y. 1988) ("[I]n ascertaining the adequacy of information in a disclosure statement, the bankruptcy court must consider each creditor's access to outside sources of information."); see also Zenith, 241 B.R. at 99 ("In considering the adequacy of a disclosure statement, it is important to keep in mind the audience. Here, those entitled to vote on the Plan are sophisticated, institutional investors . . . [with] competent professionals . . . . They have also been involved in negotiations . . . [and] [s]ignificant documents and information (in addition to the Disclosure Statement) were made available . . . during that time.").

21.     The Debtors submit that the Revised Disclosure Statement provides adequate information and satisfies all of the requirements of section 1125 of the Bankruptcy Code. Most importantly, the Debtors have provided adequate disclosure with respect to the key disputed issue in these Chapter 11 Cases. Specifically, the Revised Disclosure Statement adequately discloses that there is a dispute over whether the L/C Cash would be encumbered by the liens of the Prepetition First Lien Agent and the Prepetition Second Lien Agent if it reverted back to the Debtors. See Revised Disclosure Statement § V.C(c). Furthermore, the Revised Disclosure Statement discloses how the treatment of the various classes of holders of Claims, including holders of Allowed Second Lien Claims and Allowed Valley View Downs Unsecured Claims, will be altered in the event that the Court determines that the L/C Cash is not collateral or proceeds of collateral subject to the prepetition liens and security interests of the Prepetition First Lien Agent and the Prepetition Second Lien Agent. See Revised Disclosure Statement § IV.B.

**B.** **The Debtors Have Revised the First Amended Disclosure Statement and the First Amended Plan to Address the Material Concerns Raised in the Objections**

22.    While the Debtors submit that the First Amended Disclosure Statement contained adequate information as required by section 1125 of the Bankruptcy Code, the Debtors offered both the Committee and the Prepetition Second Lien Agent the opportunity to provide a position statement or other supplement in the Revised Disclosure Statement. The Debtors believe that allowing the Committee and the Prepetition Second Lien Agent the opportunity to present information in a manner more acceptable to them is a fair compromise, and should be sufficient to alleviate many concerns regarding the adequacy of the information in the First Amended Disclosure Statement.

23.    In the Objections, the Prepetition Second Lien Agent and the Committee set forth objections to the First Amended Disclosure Statement on the basis that (i) the First Amended Plan is purportedly facially unconfirmable; and (ii) the First Amended Disclosure Statement lacks adequate information regarding certain issues.

24.    Without admitting the validity of such objections, in an effort to appease the Committee and the Prepetition Second Lien Agent and move toward a resolution of the Objections, the Debtors have taken steps to address the issues raised in the Objections by, among other things, further revising the First Amended Disclosure Statement. The chart attached as Exhibit A hereto outlines the proposed revisions incorporated into the Revised Disclosure Statement and other responses to the issues raised in the Objections. The Debtors also contest and respond to certain of the arguments raised in the Objections below.

**C.    Since the Revised Plan is Not Patently Unconfirmable, Many Issues Raised in the Objections are Premature and Should Be Reserved for the Confirmation Hearing**

25.    The Objections to the First Amended Disclosure Statement both assert challenges to the conformability of the First Amended Plan. As such, the Objections assert inappropriate bases for objecting to the adequacy of the First Amended Disclosure Statement. If a creditor believes that its treatment under the Revised Plan violates some provision in the Bankruptcy Code or a principle of law, the proper remedy is to object to the confirmation of the Revised Plan itself, not to the adequacy of information in the First Amended Disclosure Statement or the Revised Disclosure Statement.

26.    Generally, courts have been reluctant to entertain confirmation issues and challenges at a disclosure statement hearing, noting instead that such objections should be addressed at the confirmation hearing and in accordance with the due process considerations relevant to such a hearing. See, e.g., In re Featherworks Corp., Inc., 45 B.R. 455, 457 (Bankr. E.D.N.Y. 1984) (noting that it was premature to determine the feasibility of the plan before hearing on confirmation); In re U.S. Brass Corp., 194 B.R. at 422 ("Disapproval of the adequacy of a disclosure statement may sometimes be appropriate where it describes a plan of reorganization which is so fatally flawed that confirmation is impossible. However, such action is discretionary and must be used carefully so as not to convert the disclosure statement hearing into a confirmation hearing, and to insure that due process concerns are protected.") (citing In re Cardinal Congregate I, 121 B.R. 760, 764 (Bankr. S.D. Ohio 1990)). The court in In re Waterville Timeshare Group, for example, described the limitations of a disclosure statement hearing:

> [A]pproval of a disclosure statement is an interlocutory action in the progress of a Chapter 11 reorganization effort leading to a

> confirmation hearing at which all parties have ample opportunity
> to object to confirmation of the plan.

67 B.R 412, 413 (Bankr. D.N.H. 1986). Moreover, the court observed that section 1125(a)

excludes from a disclosure statement hearing those strategic objections "designed to delay and

hobble the efforts of the [plan proponent] to put a plan before the court." Id. at 414.

      27.     The disclosure statement hearing should only address the adequacy of a

disclosure statement and should not be utilized by creditors to challenge the confirmability of the

plan. As one court stated, "[i]f the creditors oppose their treatment in the plan, but the

Disclosure Statement contains adequate information, issues respecting the plan's confirmability

will await the hearing on confirmation." In re Scioto Valley Mortgage Co., 88 B.R. at 172; see

also In re Featherworks Corp., Inc., 45 B.R. at 457 (approving the adequacy of an amended

disclosure statement filed in connection with a plan that almost exactly mirrored a previously

rejected plan and holding that: "[I]t is too early before the hearing on confirmation to conclude

that the present plan cannot be confirmed. That determination must await examination of the

evidence offered at the hearing on confirmation."). Consideration of issues relating to

confirmation of a plan at a disclosure statement hearing is appropriate only when the proposed

plan is "patently" or "facially" unconfirmable. See Cardinal Congregate I, 121 B.R. at 764

("[D]isapproval of the adequacy of a disclosure statement may sometimes be appropriate where

it describes a plan of reorganization which is so fatally flawed that confirmation is impossible");

In re Phoenix Petroleum Co., 278 B.R. at 394 ("Courts generally have agreed that it may, on

occasion, be appropriate to consider issues at the disclosure hearing stage which could otherwise

be raised at confirmation, if the described plan is fatally flawed so that confirmation would not

be possible . . . ."); In re Monroe Well Serv., Inc., 80 B.R. 324, 333 (Bankr. E.D. Pa. 1987)

("[O]ccasionally, it may be appropriate to disapprove of a disclosure statement, even if it

properly summarizes and provides adequate information about a proposed plan, when a court is convinced that the plan could not possibly be confirmed."). "However, such action is discretionary and must be used carefully so as not to convert the disclosure statement hearing into a confirmation hearing, and to insure that due process concerns are protected." In re U.S. Brass Corp., 194 B.R. at 422; In re Miller, Case No. 96-81663, 2008 WL 191256, at *3 (Bankr. E.D. La. Jan. 22, 2008); Cardinal Congregate I, 121 B.R. at 764.

28.     In this case, the Revised Plan is neither "patently" nor "facially" unconfirmable. In general, the Objections to the confirmability of the First Amended Plan assert that: (a) the First Amended Plan violates the absolute priority rule; (b) the First Amended Plan violates the best interest of creditors test; (c) the First Amended Plan unfairly discriminates; (d) the First Amended Plan is not feasible; and (e) any bifurcation of the Pennsylvania Debtors or Centaur Colorado, LLC from the balance of the First Amended Plan is impermissible.[9] Second Lien Obj. ¶¶ 15-19, 22; Committee Obj. ¶¶ 42, 44-46, 48, 49. The Revised Plan addresses some of these objections and the Revised Disclosure Statement provides adequate disclosure as to others. Further, the Debtors submit that the hearing on the Revised Disclosure Statement is not the appropriate time to litigate the merits of these contentions. Rather, the proper time for this debate is at the hearing on confirmation of the Revised Plan. The Debtors reserve their rights to fully respond, at the appropriate time, to the aforementioned objections and any other objections raised in connection with confirmation of the Revised Plan.

---

[9]     The Objections also attack the purported First Amended Plan's purported "substantive consolidation" structure and the treatment of Intercompany Claims under the First Amended Plan. Second Lien Obj. ¶¶ 20-21; Committee Obj. ¶¶ 40, 42. As the Debtors explain in the Revised Disclosure Statement, although the Revised Plan classifies Claims against different Debtors, other than Valley View Downs, LP, jointly, this is not intended to result in substantive consolidation. Rather, this is merely done for administrative efficiency. See Revised Disclosure Statement § X.C. The Debtors believe that the issue as to Intercompany Claims is moot since the Revised Plan provides that no distribution will be made on account of Intercompany Claims. See Revised Disclosure Statement §§ IV.B; IV.C.

**D.      Any Additional Disclosure Sought by the Committee or the Prepetition Second Lien Agent is Not Necessary or Warranted**

29.     As set forth above, the Objections included requests for specific information and/or claimed that the First Amended Disclosure Statement should contain certain information not previously included therein. For instance, the Second Lien Agent requested additional disclosure as to the terms of additional restructuring alternatives. Second Lien Obj. ¶ 24. Section 1125(a)(1) of the Bankruptcy Code provides, however, that "adequate information need not include such information about any other possible or proposed plan." 11 U.S.C. § 1125(a)(1); see also Colo. Mountain Express v. Aspen Limousine Serv., Inc. (In re Aspen Limousine Serv., Inc.), 193 B.R. 325, 334 (D. Colo. 1996) (finding that a debtor need not disclose the existence of an alternative plan if one exists in order for the relevant disclosure statement to meet the adequate information requirement.); Kirk v. Texaco, 82 B.R. 678, 684 (S.D.N.Y. 1988) (holding that shareholders could not challenge the adequacy of a disclosure statement on the basis that it failed to "discuss some other possible plan," namely a hypothetical plan in which the shareholders did not agree to release certain derivative actions pending against management of the debtor). Disclosure statements are "intended to assist the creditors in evaluating the plan on its face, rather than to promote a comparison among various proposed plans." Aspen Limousine Serv., 193 B.R. at 334; accord In re Brandon Mill Farms, Ltd., 37 B.R. 190, 192 (Bankr. N.D. Ga. 1984). Thus, the Revised Disclosure Statement need only provide adequate information about the Revised Plan, not any other potential alternate plans or strategies. Accordingly, the Debtors submit that the information provided in the Revised Disclosure Statement is sufficient for disclosure purposes.

30.     As mentioned, to the extent possible, the First Amended Disclosure Statement has been revised to accommodate requests for additional disclosure, if reasonable, and

references to the sections of the Revised Disclosure Statement addressing these requests directly and indirectly are identified in Exhibit A. In some situations, a reference to a source of such information has been identified in the Revised Disclosure Statement, and with respect to certain information, certain substantive information is provided directly on Exhibit A. With respect to certain requests, the Debtors have included in the Revised Disclosure Statement an explanation as to why such requested information is not included or have indicated on Exhibit A why such request is not feasible.

31.     The Debtors submit that other requests for additional disclosure and analysis need to be reasonably weighed against the costs to the Debtors' estates, the likelihood that votes would be impacted and the impact that any disclosure could have on creditor recoveries. See 11 U.S.C. § 1125(a)(1) ("[I]n determining whether a disclosure statement provides adequate information, the court shall consider the complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information . . ."); H.R. Rep. No. 95-595, 9th Cong., 1st Sess. 409 (1997) ("Courts will take a practical approach as to what is necessary under the circumstances of each case, such as the cost of preparation of the statements, the need for relative speed in solicitation and confirmation, and, of course, the need for investor protection. There will be a balancing of interest in each case."); see also In re Lisanti Foods, Inc., 329 B.R. 491, 507 (D.N.J. 2006) (citing H.R. Rep. No. 95-595, 9th Cong., 1st Sess. 409 (1997) and concluding that the Debtor's disclosure statement provided adequate information over an objection that the disclosure statement failed to provide adequate information regarding the effects of the substantive consolidation proposed by the Plan); cf., Floyd v. Hefner, No. H-03-5693, 2006 WL 2844245, at *30 (S.D. Tex. Sept. 29, 2006) (analyzing the adequacy of a disclosure statement to determine

whether a trustee's failure to provide disclosure of a potential lawsuit as an asset prohibited the debtor from pursuing such lawsuit and finding that the disclosure statement provided adequate information because the "cost of obtaining additional information may have been excessive" and it did not appear that more information was necessary for the creditors to make an informed decision).

32.     The Debtors submit that certain requests for additional disclosure will have little, if any, impact on voting. The Prepetition Second Lien Claimholders are represented by sophisticated counsel and are likely to vote to reject the Revised Plan, whatever the level of disclosure. Most of the Committee's constituency stands to receive either a full or material recovery under the Revised Plan or a de minimis recovery under the Revised Plan. Thus, additional disclosure is unlikely to alter the votes of unsecured creditors. For the foregoing reasons, the Debtors believe that the Revised Disclosure Statement satisfies the standards of the Bankruptcy Code even though it does not provide additional disclosure in response to every individual request of the Prepetition Second Lien Agent or the Committee.

## CONCLUSION

33.    For the foregoing reasons, the Objections should be overruled in their

entirety and the Motion should be approved.

Dated: July 26, 2010
        Wilmington, Delaware

FOX ROTHSCHILD LLP

Jeffrey M. Schlerf (No. 3047)
Eric M. Sutty (No. 4007)
John H. Strock (No. 4965)
919 North Market Street, Suite 1600
Wilmington, Delaware 19801
(302) 654-7444

-and-

Gerard Uzzi (admitted pro hac vice)
WHITE & CASE LLP
1155 Avenue of the Americas
New York, New York 10036
(212) 819-8200

-and-

Michael C. Shepherd (admitted pro hac vice)
Lane E. Begy (admitted pro hac vice)
WHITE & CASE LLP
200 South Biscayne Boulevard, Suite 4900
Miami, Florida 33131
(305) 371-2700

Attorneys for the Debtors and
Debtors in Possession