# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>**CENTAUR, LLC, et al.,**[1]<br><br>Debtors. | : Chapter 11<br>:<br>: Case No. 10-10799 (KJC)<br>:<br>: (Jointly Administered)<br>:<br>: Re: Docket No. 531 |

## DECLARATION OF KURT E. WILSON IN SUPPORT OF THE DEBTORS' MOTION FOR ENTRY OF AN ORDER (A) AUTHORIZING THE TRANSFER OF THE EQUITY INTERESTS TO BE ISSUED ON THE EFFECTIVE DATE IN THE CONVEYED ENTITIES FREE AND CLEAR OF LIENS; AND (B) GRANTING RELATED RELIEF

I, Kurt E. Wilson, hereby declare under penalty of perjury that, to the best of my knowledge and belief, and after reasonable inquiry, the following is true and correct:

1. I am the Chief Financial Officer, Executive Vice President, Secretary and Treasurer of Centaur, LLC. Centaur, LLC is the manager of (i) Centaur Pennsylvania, LLC (the "Seller"); (ii) Centaur PA Land Management, LLC, the general partner of Centaur PA Land General Partners, LP, which is the general partner of Centaur PA Land, LP; and (iii) Valley View Downs GP, LLC, the general partner of Valley View Downs, LP. As such, I am familiar with the day-to-day operations, business and financial affairs of the debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors").

2. I submit this declaration in support of the Debtors' motion (the "Motion") for entry of an order, among other things, (a) authorizing and approving the transfer by the Debtors of the equity interests (the "Transferred Interests") to be issued subject to and following

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, if applicable, are: Centaur, LLC (8148); Centaur Colorado, LLC (9131); Centaur Indiana, LLC; Centaur Racing, LLC; Hoosier Park, L.P. (0820); HP Dining & Entertainment, LLC; Centaur Pennsylvania, LLC; VVD Properties General Partner, LLC; Valley View Downs GP, LLC; VVD Properties, LP (6808); Valley View Downs, LP (1028); Centaur PA Land Management, LLC; Centaur PA Land General Partner, LP; and Centaur PA Land, LP. Debtors Centaur PA Land, LP and Valley View Downs, LP filed their chapter 11 petitions on October 28, 2009. The remaining Debtors filed their chapter 11 petitions on March 6, 2010.

confirmation, and on the effective date of, the Fourth Amended Joint Plan of Reorganization for Centaur, LLC and Its Affiliated Debtors [D.I. 764] (as may be amended from time to time, the "Plan"), in reorganized Valley View Downs, LP, Centaur PA Land Management, LLC, Centaur PA Land General Partner, LP and Centaur PA Land, LP (collectively, the "Conveyed Entities") free and clear of liens (the "Transaction"); and (b) granting related relief.

3. Except as otherwise indicated, all facts set forth in this declaration are based upon my personal knowledge, information provided to me by certain of the Debtors' employees, my review of relevant documents or my opinion based upon my experience, knowledge and information concerning the operations and financial affairs of the Debtors. If I were called upon to testify, I would testify competently to the facts set forth in this declaration. I am authorized to submit this declaration.

4. On August 31, 2010, the Court entered an order [D.I. 621] (the "Procedures and Protections Order"), among other things, (a) authorizing and approving bidding procedures for the auction of the Transferred Interests (the "Bidding Procedures"); (b) scheduling an auction (the "Auction") and final hearing; and (c) approving the form and manner of notice thereof (the "Transaction Notice"). In order to create as much interest in the Auction as possible, the Debtors delivered the Transaction Notice and the Procedures and Protections Order to each of the entities set forth in paragraph 36 of the Motion, including those entities that expressed to the Debtors an interest in purchasing the Valley View Downs opportunity.

5. Both prior to and following the dates the Debtors commenced their chapter 11 cases, the Debtors diligently and in good faith marketed the Valley View Downs opportunity and/or the Transferred Interests to secure the highest and best offer therefor.

Beginning in September 2008, as part of the amendment of their first and second lien credit facilities in 2008, the Debtors committed to using their best efforts to obtain a buyer for the Valley View Downs opportunity. In conjunction with the Debtors' former financial advisor and investment banker, the Debtors contacted several potential buyers over the period of September 2008 through early 2009.

6. While reviewing various strategic alternatives with regard to Valley View Downs, the Debtors renewed their efforts to market the Valley View Downs opportunity in September 2009. The Debtors' efforts resulted in a modest amount of interest with only one proposed buyer engaging in an actual exchange of term sheets. That proposed buyer later withdrew its offer. Thereafter and prior to the filing of the Motion, the Debtors entertained in-bound offers and indications of interest, but were unable to reach mutually agreeable terms with any interested parties.

7. By Order dated September 23, 2010 [D.I. 694], the Court authorized the Debtors to employ and retain Innovation Capital, LLC ("Innovation") as special financial advisor for the Seller and the Conveyed Entities in connection with the marketing, auction and transfer of the Transferred Interests. The Debtors, with the assistance of Innovation, have significantly marketed and actively solicited bids for the purchase of the Transferred Interests beginning in September 2010 in accordance with the Bidding Procedures approved by the Court.

8. Prior to and following the retention of Innovation, the Debtors and Innovation initiated and continued prepetition efforts to gauge potential bidders' interest in the Transferred Interests, indentified several new potential bidders and had conversations with the various potential bidders to market the Transferred Interests and to discuss the sale process. Following entry of the Protections and Procedures Order and prior to the Auction, Innovation

prepared and updated materials, including a teaser and confidential investor presentation, distributed materials and communicated with potential buyers.

9. During that time, the Debtors and Innovation evaluated the level of interest from parties that had expressed prior interest, contacted relevant parties regarding the renewed marketing efforts and notified other potential buyers about the opportunity to participate in the process. Ultimately, 65 potential buyers were approached, 11 of which signed binding confidentiality agreements.

10. Starting in September 2010, Innovation distributed 17 bidder packages, which included a letter of instructions to bidders, the proposed form of purchase agreement (the "Model Purchase Agreement") and disclosure schedules prepared by the Debtors, the Procedures and Protections Order entered by the Court and the exhibits thereto, a form of non-collusion affidavit, a form of escrow agreement, wire instructions and a document delivery checklist. On October 5, 2010, upon receipt of bidder packets from American Harness Tracks, LLC, Bedford Developments Management Company, LLC, Merit WPU LLC and Western PA Gaming Ventures, LLC, the Debtors and their professionals evaluated the viability of each submission and the financial wherewithal of each bidder. Upon improving their bids at the beginning of the Auction, American Harness Tracks, LLC, Bedford Developments Management Company, LLC, Merit WPU LLC and Western PA Gaming Ventures, LLC were allowed to submit further bids at the Auction.

11. On October 20, 2010, the Auction for the Transferred Interests was held in accordance with the Procedures and Protections Order. Having considered the bids submitted prior to and during the Auction, the Debtors, in consultation with the Prepetition First Lien

Agent,[2] the Prepetition Second Lien Agent and the Committee, selected American Harness Tracks, LLC, the bidder submitting the highest or otherwise best offer (the "Buyer"), as the winning bidder.

12. On October 26, 2010, the Debtors filed the Purchase Agreement (including all exhibits, schedules and ancillary agreements related thereto, and substantially in the form attached to the proposed order granting the Motion as Exhibit 1, the "Purchase Agreement") by and between the Seller and the Buyer along with notice [D.I. 826] of the Purchase Agreement, the deadline for parties to object to the Motion and the date and time of the final hearing on the Motion.

13. In my opinion, a reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein, and the rights of third parties to submit higher or otherwise better offers for all or any portion of the Transferred Interests in accordance with the Bidding Procedures approved by this Court was afforded to all interested persons and entities.

14. The Debtors and the Buyer have complied with the Bidding Procedures in all respects. The bidding and auction process was non-collusive, fair and reasonable, conducted in good faith and resulted in the Debtors obtaining what the Debtors, in consultation with the Prepetition First Lien Agent, the Prepetition Second Lien Agent and the Committee, concluded was the highest and offer for the Transferred Interests.

15. The Debtors have determined that the Transaction will enable them to obtain the highest and best price for the Transferred Interests in the current market. I believe that the Transaction is a sound exercise of the Debtors' business judgment because the consummation of the Transaction will allow the Debtors to sell the Valley View Downs opportunity (through

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

5

the transfer of the Transferred Interests) while generating significant cash for the Conveyed Entities' estates.

16. To the best of my knowledge, information and belief, the Buyer and its affiliates are not insiders of the Debtors and are not controlled by, or acting on behalf of, any insider of the Debtors. The Buyer has no connection to the Debtors or the Debtors' employees. Moreover, I am not aware of any agreements between management or key employees and the Buyer regarding compensation or future employment in connection with the sale of the Transferred Interests. Furthermore, there are no interim arrangements between the Debtors and the Buyer.

17. The Purchase Agreement was negotiated, proposed and entered into by the Seller and the Buyer in good faith, without collusion and from arm's-length bargaining positions.

18. In my opinion, the Buyer has proceeded in good faith in all respects in connection with this proceeding.

19. Neither the Debtors (including the Seller) nor the Buyer have entered into any agreement with potential bidders in connection with the transfer of the Transferred Interests in an attempt to control the sale price of the Transferred Interests.

20. The Transaction, if consummated, will generate $5.6 million in gross proceeds for the Conveyed Entities' estates. I believe, based upon my knowledge of the Valley View Downs opportunity and the marketing efforts employed, that the consideration to be received is fair and reasonable and represents the highest and best offer for the Transferred Interests.

21. I believe that the Transaction is in the best interest of the Conveyed Entities' estates.

Executed on December 9, 2010

By: *[signature]*
Name: Kurt E. Wilson
Title: Executive Vice President, Chief
Financial Officer, Treasurer and
Secretary