## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **In re** | : | **Chapter 11** |
| | : | |
| **CENTAUR, LLC, et al.,**[1] | : | **Case No. 10-10799 (KJC)** |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |
| | : | |

## MODIFIED FOURTH AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION FOR CENTAUR, LLC AND ITS AFFILIATED DEBTORS

Dated: ~~October 18, 2010~~January 28, 2011

WHITE & CASE LLP                    -and-    FOX ROTHSCHILD LLP
Gerard H. Uzzi (admitted pro hac vice)           Jeffrey M. Schlerf (No. 3047)
1155 Avenue of the Americas                      Eric M. Sutty (No. 4007)
New York, New York  10036                        John H. Strock (No. 4965)
(212) 819-8200                                   919 North Market Street, Suite 1600
                                                 Wilmington, Delaware  19801
                                                 (302) 654-7444
Michael C. Shepherd (admitted pro hac vice)
Lane E. Begy (admitted pro hac vice)
200 South Biscayne Boulevard, Suite 4900
Miami, Florida  33131
(305) 371-2700

ATTORNEYS FOR THE DEBTORS AND DEBTORS-IN-POSSESSION

---

[1]  The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, if applicable, are: Centaur, LLC (8148); Centaur Colorado, LLC (9131); Centaur Indiana, LLC; Centaur Racing, LLC; Hoosier Park, L.P. (0820); HP Dining & Entertainment, LLC; Centaur Pennsylvania, LLC; VVD Properties General Partner, LLC; Valley View Downs GP, LLC; VVD Properties, LP (6808); Valley View Downs, L.P. (1028); Centaur PA Land Management, LLC; Centaur PA Land General Partner, LP; and Centaur PA Land, LP.  Debtors Centaur PA Land, LP and Valley View Downs, LP filed their chapter 11 petitions on October 28, 2009.  The remaining Debtors filed their chapter 11 petitions on March 6, 2010.

**TABLE OF CONTENTS**

Page

ARTICLE I. DEFINITIONS ........................................................................................................1

1.1. "Administrative Expense Claim" ...............................................................................1
1.2. "Administrative Fund" ...............................................................................................1
1.3. "Affiliate" ..................................................................................................................1
1.3.1.4. "Allowed" .............................................................................................................1
1.4. "Assets" .....................................................................................................................1
1.5. "Avoidance ActionsAssets" .......................................................................................1
1.6. "Avoidance Actions" ..................................................................................................1
1.7. "Ballot" ....................................................................................................................12
1.7.1.8. "Balloting Agent" .................................................................................................2
1.8. "Bankruptcy Code" ....................................................................................................2
1.9. "Bankruptcy CourtCode" ...........................................................................................2
1.10. "Bankruptcy Court" ..................................................................................................2
1.11. "Bankruptcy Rules" ..................................................................................................2
1.11.1.12. "Bidding Procedures" ........................................................................................2
1.12.1.13. "Board of Managers" .........................................................................................2
1.13.1.14. "Borrower" .........................................................................................................2
1.14.1.15. "Business Day" ...................................................................................................2
1.15. "Cash" ......................................................................................................................2
1.16. "Cash" ......................................................................................................................2
1.17. "Causes of Action" ...................................................................................................2
1.17. "Centaur Colorado, LLC Effective Date" .................................................................2
1.18. "Centaur Colorado, LLC Effective Date" .................................................................2
1.19. "Challenges" .............................................................................................................3
1.19.1.20. "Chapter 11 Cases" ............................................................................................3
1.20. "Claim" ....................................................................................................................3
1.21. "Claims AgentClaim" ...............................................................................................3
1.22. "CommitteeClaims Agent" ........................................................................................3
1.23. "Confirmation DateCommittee" ................................................................................3
1.24. "Confirmation HearingDate" .....................................................................................3
1.25. "Confirmation OrderHearing" ...................................................................................3
1.26. "Confirmation Order" ...............................................................................................3
1.27. "Consenting First Lien Claimholders" ......................................................................3
1.27. "Contested Claim" .....................................................................................................3
1.28. "Contested Claim" .....................................................................................................3
1.29. "Contested Claims Reserve" ......................................................................................3
1.29. "Convenience Claim" ................................................................................................3
1.30. "Convenience Claim" ................................................................................................3
1.31. "Convenience Class Election" ...................................................................................4
1.31.1.32. "Cure Cost" .......................................................................................................4
1.32.1.33. "Debt Claim" ......................................................................................................4
1.33. "Debtor" ...................................................................................................................4

1.34. "Debtor" .................................................................................................................... 4
1.35. "Debtor-in-Possession" ................................................................................................ 4
1.35. "Deficiency Claim" ...................................................................................................... 4
1.36. "Designated Avoidance Actions" ................................................................................ 4
1.36. "Deficiency Claim" ...................................................................................................... 4
1.37. "Designated Avoidance Actions" ................................................................................ 4
1.38. "Designated Defendants" ............................................................................................ 4
1.39. "Disallowed" ................................................................................................................ 4
1.38. 1.40. "Disbursing Agent" ............................................................................................ 4
1.39. "Disclosure Statement" ................................................................................................ 4
1.40. "Disclosure Statement Order" ..................................................................................... 4
1.41. "Distribution Date Disclosure Statement" .................................................................. 4
1.42. "Effective Date" ........................................................................................................... 5
1.42. "Disclosure Statement Order" ..................................................................................... 5
1.43. "Distribution Date" ...................................................................................................... 5
1.44. "Effective Date" ........................................................................................................... 5
1.45. "Entity" ......................................................................................................................... 5
1.44. 1.46. "Equity Interest" ................................................................................................. 5
1.45. 1.47. "Estate" ............................................................................................................... 5
1.46. 1.48. "Estimation Order" ............................................................................................. 5
1.47. "Existing L/C" .............................................................................................................. 5
1.48. "Existing Management" ................................................................................................ 5
1.49. "Existing L/C" .............................................................................................................. 6
1.50. "Existing Management" ................................................................................................ 6
1.51. "Exit Financing" ........................................................................................................... 5 6
1.50. 1.52. "Fee Application" ................................................................................................ 6
1.51. 1.53. "Fee Claim" ......................................................................................................... 6
1.52. 1.54. "Final Cash Collateral Order" ............................................................................ 6
1.53. 1.55. "Final Order" ...................................................................................................... 6
1.54. "First Lien Claim" ........................................................................................................ 6
1.55. "First Lien Deficiency Claim" ..................................................................................... 6
1.56. "First Lien Secured Claim" .......................................................................................... 6
1.57. "First Lien Deficiency Claim" ..................................................................................... 7
1.58. "First Lien Secured Claim" .......................................................................................... 7
1.59. "First Lien Take Back Documents" .............................................................................. 6 7
1.58. 1.60. "First Lien Take Back Paper" ............................................................................. 7
1.59. 1.61. "Fortune Valley Sale Agreement" ...................................................................... 7
1.60. 1.62. "General Unsecured Claim" ............................................................................... 7
1.61. 1.63. "Guaranty" ........................................................................................................... 7
1.62. 1.64. "Holdings" ........................................................................................................... 7
1.63. 1.65. "Hoosier Park, LLC" .......................................................................................... 7
1.64. 1.66. "Indiana Debtors" ............................................................................................... 7
1.65. 1.67. "Insider" .............................................................................................................. 7
1.66. 1.68. "Intercompany Claim" ........................................................................................ 7
1.67. 1.69. "Intercompany Financing Claim" ...................................................................... 7 8
1.68. 1.70. "Internal Revenue Code" ................................................................................... 8 9

1.69. "IRS" ................................................................................................................ 8

1.70. "L/C Claim" ...................................................................................................... 8

1.71. "L/C IssuerIRS" ................................................................................................ 89

1.72. "Litigation TrustL/C Claim" ........................................................................... 9

1.73. "Litigation Trust DeclarationL/C Issuer" ...................................................... 9

1.74. "Litigation Trust Interests" ............................................................................. 9

1.75. "Litigation TrusteeTrust Declaration" ............................................................ 9

1.76. "Litigation Trust Interests" ............................................................................. 9

1.77. "Litigation Trustee" .......................................................................................... 9

1.78. "Long Term Employment Agreements" ......................................................... 9

1.77.1.79. "Management Incentive Plan" ............................................................... 910

1.78. "New Centaur, LLC" ......................................................................................... 9

1.79. "New Centaur, LLC Membership Interests" .................................................. 9

1.80. "NewCoNew Centaur, LLC" ............................................................................ 910

1.81. "NewCoNew Centaur, LLC Membership Interests" ...................................... 910

1.82. "NewCo Operating Agreement" ...................................................................... 9" ........ 10

1.83. "NewCo PIK NotesMembership Interests" .................................................... 10

1.84. "NewCo WarrantsOperating Agreement" ...................................................... 10

1.85. "NewCo PIK Notes" .......................................................................................... 10

1.86. "NewCo Warrants" ............................................................................................ 10

1.87. "Notice of Confirmation" ................................................................................. 1011

1.86.1.88. "Objection Deadline" ............................................................................. 1011

1.87.1.89. "Original Debt Documents" ................................................................... 1011

1.88.1.90. "Other Secured Claim" ........................................................................... 1011

1.89.1.91. "Pennsylvania Debtors" ......................................................................... 1011

1.90.1.92. "Pennsylvania Gaming Control Board" ................................................ 1011

1.91.1.93. "Pennsylvania Gaming License Application" ....................................... 11

1.92.1.94. "Person" ................................................................................................... 11

1.93.1.95. "Petition Date" ........................................................................................ 11

1.94. "Plan" ................................................................................................................. 11

1.95. "Plan Distribution" ........................................................................................... 11

1.96. "Plan Documents" ............................................................................................. 11

1.97. "Plan SecuritiesDistribution" ......................................................................... 11

1.98. "Plan SupplementDocuments" ........................................................................ 11

1.99. "Prepetition First Lien Agent" ....................................................................... 11

1.100. "Prepetition First Lien Claimholders" ......................................................... 11

1.99. "Plan Securities" .............................................................................................. 12

1.100. "Plan Supplement" .......................................................................................... 12

1.101. "Prepetition First Lien Credit Agreement" ......................... 11Agent" .......... 12

1.102. "Prepetition Intercreditor Agreement" ................ 11First Lien Claimholders" .... 12

1.103. "Prepetition SecondFirst Lien AgentCredit Agreement" ........................... 12

1.104. "Prepetition Second Lien ClaimholdersIntercreditor Agreement" ............ 12

1.105. "Prepetition Second Lien Credit AgreementAgent" .................................... 12

1.106. "Prepetition Second Lien Claimholders" ...................................................... 12

1.107. "Prepetition Second Lien Credit Agreement" .............................................. 12

1.108. "Priority Non-Tax Claim" .............................................................................. 12

MIAMI 896127 (2K)

~~1.107.~~1.109. "Priority Tax Claim" ........................................................................... 12

~~1.108.~~1.110. "Pro Rata Share" ............................................................................... 12

~~1.109.~~1.111. "Professional" .................................................................................. ~~12~~13

~~1.110.~~1.112. "Rejection Damage Claim" ................................................................ ~~12~~13

~~1.111.~~1.113. "Released Persons" ........................................................................... ~~12~~

~~1.112. "Reorganized Centaur Colorado, LLC"~~ .......................................... ~~13~~

~~1.113. "Reorganized Centaur PA Land General Partner, LP"~~ ..................... 13

1.114. "Reorganized Centaur ~~PA Land~~Colorado, ~~LP~~LLC" ............................ 13

1.115. "Reorganized Centaur PA Land ~~Management, LLC~~General Partner, LP" ........ 13

1.116. "Reorganized ~~Pennsylvania~~PA Land, ~~LLC~~LP" ................................. 13

1.117. "Reorganized ~~Debtors~~Centaur PA Land Management, LLC" .............. 13

1.118. "Reorganized ~~HP Dining & Entertainment~~Centaur Pennsylvania, LLC" ...... 13

1.119. "Reorganized ~~Valley View Downs GP, LLC~~Debtors" ...................... 13

1.120. "Reorganized ~~Valley View Downs, LP"~~ ....... ~~13~~HP Dining & Entertainment, LLC"  14

1.121. "Reorganized ~~VVD Properties General Partner~~Valley View Downs GP, LLC" ...... ~~13~~14

1.122. "Reorganized ~~VVD Properties~~Valley View Downs, LP" ..................... ~~13~~14

1.123. "Reorganized VVD Properties General Partner, LLC" ......................... 14

1.124. "Reorganized VVD Properties, LP" .................................................... 14

1.125. "Required Lenders" ........................................................................... ~~13~~14

~~1.124.~~1.126. "Restructuring Transactions" ............................................................ ~~13~~

~~1.125. "Sale Documents"~~ ........................................................................... ~~13~~

~~1.126. "Sale Hearing"~~ ............................................................................... 14

1.127. "Sale ~~Order~~Documents" .................................................................. 14

1.128. "~~Schedules~~Sale Hearing" ............................................................... 14

1.129. "~~Second Lien Claim~~Sale Order" ..................................................... 14

1.130. "~~Schedules"~~ .................................................................................. 15

1.131. "Second Lien Claim" ........................................................................ 15

1.132. "Section 503(b)(9) Bar Date" ........................................................... ~~14~~15

~~1.131.~~1.133. "Section 503(b)(9) Claims" .............................................................. ~~14~~15

~~1.132.~~1.134. "Secured Claim" .............................................................................. ~~14~~15

1.135. "Settlement" ................................................................................... 15

~~1.133.~~1.136. "Specified Hedging Agreements" .................................................... 15

1.137. "Stapled NewCo PIK Notes" ............................................................ 15

~~1.134.~~1.138. "Subordinated Claim" ..................................................................... 15

~~1.135.~~1.139. "Subsidiary Guarantor" ................................................................... ~~15~~16

~~1.136.~~1.140. "U.S. Trustee" ................................................................................. ~~15~~16

~~1.137.~~1.141. "Valley View Downs Unsecured Claim" .......................................... ~~15~~16

~~1.138.~~1.142. "Winning Competitive Bidder" ....................................................... ~~15~~16


ARTICLE II. INTERPRETATION AND APPLICATION .............................................. ~~15~~16


2.1. Interpretation .......................................................................................... ~~15~~16

2.2. Application of Definitions and Rules of Construction Contained in the Bankruptcy Code .......... ~~16~~17

2.3. Other Terms ............................................................................................ ~~16~~17

2.4. Incorporation of Plan Documents ............................................................. ~~16~~17

ARTICLE III. CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS .......................... ~~16~~17

    3.1. Administrative Expense Claims and Tax Claims. ............................................ ~~16~~17
    3.2. Claims and Equity Interests. .......................................................................... ~~17~~18
        (a)    Class 1 – Priority Non-Tax Claims. ...................................... ~~17~~18
        (b)    Class 2 – First Lien Claims. .................................................. ~~17~~18
        (c)    Class 3 – Second Lien Claims. .............................................. ~~17~~18
        (d)    Class 4 – Other Secured Claims. ........................................... ~~17~~18
        (e)    Class 5 – Valley View Downs Unsecured Claims. ................ ~~17~~18
        (f)    Class 6 – General Unsecured Claims. .................................... ~~17~~19
        (g)    Class 7 – Convenience Claims. .............................................. ~~17~~19
        (h)    Class 8 – Intercompany Claims. ............................................ ~~18~~19
        (i)    Class 9 – Equity Interests. .................................................... ~~18~~19

ARTICLE IV. IDENTIFICATION OF IMPAIRED CLASSES OF CLAIMS
    AND EQUITY INTERESTS .................................................................. ~~18~~19

    4.1. Impaired and Unimpaired Classes of Claims and Equity Interests. ............... ~~18~~19
    4.2. Impairment Controversies. ............................................................................. ~~18~~19

ARTICLE V. PROVISIONS FOR TREATMENT OF CLAIMS AND EQUITY
    INTERESTS UNDER THE PLAN ........................................................ ~~18~~19

    5.1. Class 1 – Priority Non-Tax Claims. ............................................................... ~~18~~19
    5.2. Class 2 – First Lien Claims. ........................................................................... ~~18~~20
    5.3. Class 3 – Second Lien Claims. ....................................................................... ~~20~~21
    5.4. Class 4 – Other Secured Claims. .................................................................... 21
    5.5. Class 5 – Valley View Downs Unsecured Claims. ......................................... ~~21~~22
    5.6. Class 6 – General Unsecured Claims. ............................................................ 22
    5.7. Class 7 – Convenience Claims. ....................................................................... ~~22~~23
    5.8. Class 8 – Intercompany Claims. ..................................................................... ~~22~~23
    5.9. Class 9 – Equity Interests. .............................................................................. ~~23~~24
    5.10. Allowance of Valley View Downs Unsecured Claims of PR Valley View
        Downs, L.P. and PREIT-RUBIN, Inc. ..................................................... 24

ARTICLE VI. PROVISIONS FOR TREATMENT OF UNCLASSIFIED
    CLAIMS UNDER THE PLAN .............................................................. ~~23~~25

    6.1. Unclassified Claims. ....................................................................................... ~~23~~25
    6.2. Treatment of Administrative Expense Claims and Intercompany Financing
        Claims. ..................................................................................................... ~~23~~25
        (a)    Time for Filing Administrative Expense Claims. ................. ~~23~~25
        (b)    Time for Filing Fee Claims. .................................................. ~~24~~25
        (c)    Time for Filing Section 503(b)(9) Claims. ........................... ~~24~~26
        (d)    Allowance of Administrative Expense Claims, Fee Claims and Section
            503(b)(9) Claims. ................................................................. ~~24~~26
        (e)    Payment of Allowed Administrative Expense Claims. ......... ~~24~~26
        (f)    Intercompany Financing Claims. ........................................... ~~25~~26

6.3. Treatment of Priority Tax Claims. ...................................................... 25 26

ARTICLE VII. ACCEPTANCE OR REJECTION OF THE PLAN; EFFECT OF
REJECTION BY ONE OR MORE CLASSES OF CLAIMS OR EQUITY
INTERESTS ................................................................................................ 25 27

7.1. Classes Entitled to Vote. ................................................................... 25 27
7.2. Class Acceptance Requirement. ........................................................ 25 27
7.3. Tabulation of Votes on a Non-Consolidated Basis. ......................... 26 27
7.4. Cramdown. ......................................................................................... 26 27
7.5. Confirmation of All Cases. ................................................................ 26 28

ARTICLE VIII. MEANS FOR IMPLEMENTATION OF THE PLAN ................... 26 28

8.1. Operations Between the Confirmation Date and the Effective Date. ... 26 28
8.2. Certain Transactions On or Prior to the Effective Date. ................... 26 28
    (a)    Formation of NewCo, New Centaur, LLC and Hoosier Park, LLC. ... 26 28
    (b)    Issuance of NewCo Membership Interests to Centaur, LLC, New Centaur, LLC Membership Interests to NewCo and Membership Interests of Hoosier Park, LLC to New Centaur, LLC. ... 27 28
    (c)    Restructuring Transactions. ... 27 29
    (d)    Entry into First Lien Take Back Documents and Exit Financing. ... 29 30
    (e)    Issuance of NewCo PIK Notes, Stapled NewCo PIK Notes and NewCo Warrants. ... 29 31
    (f)    Transfer of NewCo Membership Interests. ... 29 31
    (g)    Sale of Partnership Interests of Reorganized Valley View Downs, LP, Reorganized Centaur PA Land General Partner, LP and Reorganized Centaur PA Land, LP and Membership Interests of Reorganized Centaur PA Land Management, LLC or, Alternatively, Withdrawal of the Pennsylvania Gaming License Application. ... 30 31
8.3. Corporate Action. ............................................................................... 31 33
8.4. Termination of Certain Debt Obligations. ........................................ 32 35
8.5. Continued Corporate Existence. ....................................................... 33 35
8.6. Re-vesting of Assets. .......................................................................... 33 35
8.7. Initial Managers and General Partners. ............................................ 33 35
8.8. Officers. .............................................................................................. 33 36
8.9. Retention of Causes of Action/Reservation of Rights. .................... 34 36
8.10. Alternative Sale in the Event of Failure to Obtain Regulatory Consents, Authorizations and Approvals. ................................................ 34 36

ARTICLE IX. LITIGATION TRUST ........................................................................ 35 37

9.1. Creation of the Litigation Trust and Appointment of the Litigation Trustee. ... 35 37
9.2. Property of the Litigation Trust. ....................................................... 36 38
9.3. Purpose of the Litigation Trust. ........................................................ 36 39
9.4. Powers of the Litigation Trustee. ...................................................... 36 39
9.5. Cooperation Between the Litigation Trustee and the Disbursing Agent. ... 37 40
9.6. Distributions from the Litigation Trust. ............................................ 37 40
9.7. Termination of the Litigation Trust. .................................................. 37 41

ARTICLE X. MANAGEMENT INCENTIVE PLAN........................................................38 41

ARTICLE XI. THE DISBURSING AGENT.................................................................38 41

11.1. Appointment of the Disbursing Agent...........................................................38 41
11.2. Powers and Duties.............................................................................................38 41
11.3. Exculpation........................................................................................................38 42

ARTICLE XII. DISTRIBUTION PROVISIONS..........................................................39 42

12.1. Sources of Cash for Plan Distributions..........................................................39 42
12.2. Investment of Funds Held by the Disbursing Agent; Tax Reporting by the
       Disbursing Agent.............................................................................................39 42
12.3. Plan Distributions.............................................................................................39 43
12.4. Timing of Plan Distributions...........................................................................40 43
12.5. Address for Delivery of Plan Distributions/Unclaimed Distributions.........40 43
12.6. Time Bar to Cash Payments.............................................................................40 44
12.7. Manner of Payment under the Plan.................................................................41 44
12.8. Expenses Incurred on or after the Effective Date and Claims of the Disbursing
       Agent.................................................................................................................41 44
12.9. Fractional Plan Distributions..........................................................................41 44
12.10. Surrender and Cancellation of Instruments.................................................41 45

ARTICLE XIII. PROCEDURES FOR RESOLVING AND TREATING
       CONTESTED CLAIMS......................................................................................42 45

13.1. Prosecution of Contested Claims....................................................................42 45
13.2. Objection Deadline............................................................................................42 45
13.3. Claims Settlement..............................................................................................42 45
13.4. Entitlement to Plan Distributions Upon Allowance.......................................42 46
13.5. Contested Claims Reserve................................................................................42 46
13.6. Estimation of Claims.........................................................................................43 46
13.7. No Recourse Against the Debtors, the Litigation Trustee, or the Reorganized
       Debtors..............................................................................................................43 46

ARTICLE XIV. TREATMENT OF EXECUTORY CONTRACTS AND
       UNEXPIRED LEASES.......................................................................................43 47

14.1. Assumption and Rejection of Executory Contracts and Unexpired Leases...43 47
14.2. Cure....................................................................................................................45 48
14.3. Claims Arising from Rejected Contracts.........................................................46 49

ARTICLE XV. CONDITIONS PRECEDENT TO CONFIRMATION OF THE
       PLAN AND THE OCCURRENCE OF THE EFFECTIVE DATE....................46 49

15.1. Conditions Precedent to Confirmation............................................................46 49
15.2. Conditions Precedent to the Occurrence of the Effective Date......................47 50
15.3. Waiver of Conditions........................................................................................48 52
15.4. Effect of Non-Occurrence of the Effective Date.............................................48 52

ARTICLE XVI. RETENTION OF JURISDICTION................................................................48́52

ARTICLE XVII. MISCELLANEOUS PROVISIONS.............................................................50́54

    17.1. Releases by the Debtors.................................................................................50́54
    17.2. Release of Released Persons by Other Released Persons..............................50́54
    17.3. Third Party Agreements; Subordination..........................................................51́55
    17.4. Payment of Statutory Fees............................................................................51́56
    17.5. Satisfaction of Claims...................................................................................52́56
    17.6. Exculpation....................................................................................................52́56
    17.7. Discharge of Liabilities.................................................................................52́56
    17.8. Discharge of Debtors.....................................................................................53́57
    17.9. Notices............................................................................................................53́57
    17.10. Headings.......................................................................................................54́58
    17.11. Governing Law.............................................................................................54́58
    17.12. Expedited Determination..............................................................................54́58
    17.13. Exemption from Transfer Taxes....................................................................54́58
    17.14. Retiree Benefits............................................................................................54́59
    17.15. Notice of Entry of Confirmation Order and Relevant Dates........................55́59
    17.16. Interest and Attorneys' Fees.........................................................................55́59
    17.17. Modification of the Plan...............................................................................55́59
    17.18. Revocation of Plan.......................................................................................55́60
    17.19. Setoff Rights.................................................................................................56́60
    17.20. Compliance with Tax Requirements..............................................................56́61
    17.21. Rates.............................................................................................................56́61
    17.22. Injunctions....................................................................................................56́61
    17.23. Binding Effect..............................................................................................57́62
    17.24. Severability...................................................................................................57́62
    17.25. No Admissions.............................................................................................57́62
    17.26. Dissolution of the Committee.......................................................................58́62
    17.27. Potential Exclusion of the Pennsylvania Debtors from the Plan.................58
    17.27. Settlement.....................................................................................................63
    17.28. Indemnification of the Prepetition First Lien Agent.....................................58́63
    17.29. Fee Auditor...................................................................................................63

**EXHIBIT**

Debtors……………………………………………………………………..…………...Exhibit "A"

Centaur, LLC and its affiliated debtors and debtors-in-possession in the above-captioned jointly administered chapter 11 cases, Case No. 10-10799 (KJC) (Jointly Administered), hereby collectively propose the following joint chapter 11 plan of reorganization:

# ARTICLE I.

## DEFINITIONS

In the Plan, the following definitions apply:

**1.1. "Administrative Expense Claim"** means any right to payment, whether secured or unsecured, constituting a cost or expense of administration of any of the Chapter 11 Cases under sections 503(b) and 507(a)(2) of the Bankruptcy Code and any Allowed Claims under section 507(b) of the Bankruptcy Code, including, without limitation, any actual and necessary costs and expenses of preserving the Debtors' Estates, any actual and necessary costs and expenses of operating the Debtors' businesses, Claims related to Adequate Protection Obligations (as defined in the Final Cash Collateral Order), any indebtedness or obligations incurred or assumed by the Debtors, as debtors-in-possession, during the Chapter 11 Cases, including, without limitation, any allowances of compensation and reimbursement of expenses to the extent allowed by Final Order under section 330 or 503 of the Bankruptcy Code, but not including Intercompany Financing Claims.

**1.2. "Administrative Fund"** means $100,000 in Cash transferred by the Debtors or the Reorganized Debtors, as the case may be, to the Litigation Trust.

**1.3. 1.2. "Affiliate"** means, with respect to any Person, all Persons that would fall within the definition assigned to such term in section 101(2) of the Bankruptcy Code, if such Person was a debtor in a case under the Bankruptcy Code.

**1.4. 1.3. "Allowed"** means, with respect to a Claim: (i) any Claim against any Debtor which is listed by such Debtor in the Schedules, as such Schedules may be amended by the Debtors from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and for which no contrary proof of claim has been filed; (ii) any timely filed, liquidated, non-contingent Claim as to which the time for objection permitted by the Plan has expired and no objection has been interposed; or (iii) any Claim expressly allowed by a Final Order or by agreement in accordance with the provisions of the Plan, which include any First Lien Claims and the L/C Claim, provided, however, that an Allowed Claim against a Debtor will not be reduced by the receipt of Plan Distributions from the Estate of another Debtor also liable on such Allowed Claim, provided further, however, that a holder of an Allowed Claim shall not be entitled to recover more than the total amount of the indebtedness it is owed.

**1.5. 1.4. "Assets"** means, with respect to any Debtor, all of such Debtor's right, title and interest of any nature in property of any kind, wherever located, as specified in section 541 of the Bankruptcy Code.

**1.6. 1.5. "Avoidance Actions"** means all Causes of Action of the Estates that arise under chapter 5 of the Bankruptcy Code and any analogous Causes of Action arising under state law.

**1.7.** ~~1.6.~~ **"Ballot"** means those certain ballots sent to holders of Claims and Equity Interests for purposes of voting on the Plan.

**1.8.** ~~1.7.~~ **"Balloting Agent"** means AlixPartners, LLP.

**1.9.** ~~1.8.~~ **"Bankruptcy Code"** means the Bankruptcy Reform Act of 1978, as codified at title 11 of the United States Code, as amended from time to time and applicable to the Chapter 11 Cases.

**1.10.** ~~1.9.~~ **"Bankruptcy Court"** means the United States Bankruptcy Court for the District of Delaware, or such other court having jurisdiction over the Chapter 11 Cases.

**1.11.** ~~1.10.~~ **"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure, as prescribed by the United States Supreme Court pursuant to section 2075 of title 28 of the United States Code and as applicable to the Chapter 11 Cases.

**1.12.** ~~1.11.~~ **"Bidding Procedures"** means the procedures which ~~shall govern~~governed the submission of proposals to acquire the partnership interests of Reorganized Valley View Downs, LP, Reorganized Centaur PA Land General Partner, LP and Reorganized Centaur PA Land, LP and the membership interests of Reorganized Centaur PA Land Management, LLC.

**1.13.** ~~1.12.~~ **"Board of Managers"** means the management board of NewCo, the composition of which shall be as described in Exhibit "H" to the Disclosure Statement and acceptable to the ~~Consenting~~Prepetition First Lien ~~Claimholders~~Agent and Required Lenders.

**1.14.** ~~1.13.~~ **"Borrower"** means Centaur, LLC.

**1.15.** ~~1.14.~~ **"Business Day"** means any day other than a Saturday, a Sunday or any other day on which commercial banks are required or authorized to close for business in New York, New York.

**1.16.** ~~1.15.~~ **"Cash"** means legal tender of the United States of America or readily marketable direct obligations of, or obligations guaranteed by, the United States of America.

**1.17.** ~~1.16.~~ **"Causes of Action"** means all claims, rights, actions, causes of action, liabilities, obligations, suits, debts, remedies, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages or judgments, whether known or unknown, liquidated or unliquidated, fixed or contingent, matured or unmatured, foreseen or unforeseen, asserted or unasserted, arising in law, equity or otherwise, <u>including</u>, without limitation, any claims, causes of action, rights or remedies created by or arising under the Bankruptcy Code, <u>including</u>, without limitation, transfers avoidable and/or recoverable under sections 542, 544, 547, 548, 549 and 550 of the Bankruptcy Code on behalf of the Debtors and their Estates.

**1.18.** ~~1.17.~~ **"Centaur Colorado, LLC Effective Date"** means, at the election of Centaur Colorado, LLC, (a) the Effective Date or (b) the sixtieth (60th) Business Day (unless extended by the Debtors) following the earlier of (i) the closing date of the sale of substantially all of the Assets of Centaur Colorado, LLC pursuant to the Fortune Valley Sale Agreement and as

authorized by Final Order of the Bankruptcy Court pursuant to section 363 of the Bankruptcy Code and (ii) the date of breach or termination of the Fortune Valley Sale Agreement, which breach or termination precludes the closing of such sale.

1.19. ~~1.18.~~ **"Challenges"** means the Claims or Causes of Action, ~~if any,~~ asserted by the Committee in accordance with the Final Cash Collateral Order, set forth in the ~~unredacted form of the complaint attached as Exhibit A to the Committee's motion dated July 9, 2010 for an order granting leave, standing and authority to prosecute and, if appropriate, settle claims on behalf of the Debtors' Estates and for other relief [Case No. 10-10799 (KJC), D.I. 415]~~ sealed complaint commencing the adversary proceeding styled as Official Committee of Unsecured Creditors of Centaur, LLC and Affiliated Debtors v. Credit Suisse AG, Cayman Islands Branch, et al., Adversary Proceeding No. 10-55358 (KJC), and for which the Bankruptcy Court ~~has~~ granted the Committee leave, standing and authority to prosecute on behalf of the Debtors and their Estates.

1.20. ~~1.19.~~ **"Chapter 11 Cases"** means the cases commenced under chapter 11 of the Bankruptcy Code pending before the Bankruptcy Court with respect to each of the Debtors styled as In re Centaur, LLC, et al., Case No. 10-10799 (KJC) (Jointly Administered).

1.21. ~~1.20.~~ **"Claim"** means (a) any right to payment, whether or not such right is known or unknown, reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, or (b) any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment, whether or not such right to an equitable remedy is known or unknown, reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

1.22. ~~1.21.~~ **"Claims Agent"** means the entity designated by order of the Bankruptcy Court to process proofs of claim.

1.23. ~~1.22.~~ **"Committee"** means the Official Committee of Unsecured Creditors appointed by the U.S. Trustee in the Chapter 11 Cases.

1.24. ~~1.23.~~ **"Confirmation Date"** means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the dockets of the Chapter 11 Cases.

1.25. ~~1.24.~~ **"Confirmation Hearing"** means the hearing held by the Bankruptcy Court, as it may be continued from time to time, to consider confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code.

1.26. ~~1.25.~~ **"Confirmation Order"** means the order of the Bankruptcy Court confirming the Plan.

1.27. ~~1.26.~~ **"Consenting First Lien Claimholders"** means the required majorities of Prepetition First Lien Claimholders under section 1126(c) of the Bankruptcy Code.

1.28. ~~1.27.~~ **"Contested Claim"** means any Claim that is not an Allowed Claim or a Disallowed Claim.

MIAMI 896127 (2K)

**1.29. 1.28. "Contested Claims Reserve"** means a reserve of Cash, NewCo PIK Notes and Litigation Trust Interests created pursuant to Section 13.5.

**1.30. 1.29. "Convenience Claim"** means a Second Lien Claim, General Unsecured Claim or Valley View Downs Unsecured Claim (a) in an amount equal to or less than $10,000, or (b) with respect to which the Person holding such Claim has made the Convenience Class Election; provided that Claims of Insiders may not be classified as Convenience Claims.

**1.31. 1.30. "Convenience Class Election"** means the election by a Person holding a Second Lien Claim, General Unsecured Claim or Valley View Downs Unsecured Claim to reduce each of its Allowed Claims that exceed $10,000 to $10,000, and to thereby receive treatment in Class 7 – Convenience Claims in full satisfaction of its Allowed Claims. The Convenience Class Election may be made by submitting a properly completed ballot to the Balloting Agent before the deadline for voting on the Plan.

**1.32. 1.31. "Cure Cost"** means any amount payable by a Debtor pursuant to Section 14.2 and section 365(b)(1) of the Bankruptcy Code.

**1.33. 1.32. "Debt Claim"** means a Claim against any of the Debtors arising under the Original Debt Documents.

**1.34. 1.33. "Debtor"** means Centaur, LLC and its affiliated debtors and debtors-in-possession in the Chapter 11 Cases as identified on Exhibit "A" annexed hereto.

**1.35. 1.34. "Debtor-in-Possession"** means any Debtor, in its capacity as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

**1.36. 1.35. "Deficiency Claim"** means the unsecured deficiency portion of any Claim against any Debtor.

**1.37. 1.36. "Designated Avoidance Actions"** means any Avoidance Actions that may be asserted against Entities or Persons other than Released Persons (except in the case of Designated Avoidance Actions, Centaur, Inc. and Holdings) to avoid those certain transfers of property described on Exhibit "I" to the Disclosure Statement and to recover such transferred property.

**1.38. "Designated Defendants"** means any Entity identified on Exhibit "I" to the Disclosure Statement or that is or may be liable in connection with the Designated Avoidance Actions (other than (i) any Person described in clause (a) of Section 1.113 and (ii) solely as to any Person described in clause (a) of Section 1.113, any Person described in clause (d) of Section 1.113).

**1.39. 1.37. "Disallowed"** when used with respect to a Claim, means a Claim, or such portion of a Claim, that has been disallowed by a Final Order.

**1.40. 1.38. "Disbursing Agent"** means (a) New Centaur, LLC, Hoosier Park, LLC and the Reorganized Debtors, in (i) making the Plan Distributions contemplated under the Plan, the Confirmation Order, or any other relevant Final Order, and (ii) performing any other act or task

that is or may be delegated to the Disbursing Agent under the Plan, and (b) the Litigation Trustee, as provided in Section 9.4.

**1.41. 1.39. "Disclosure Statement"** means the Disclosure Statement filed with respect to the Plan, as it may be amended or modified from time to time.

**1.42. 1.40. "Disclosure Statement Order"** means the order entered by the Bankruptcy Court (a) approving the Disclosure Statement as containing adequate information required under section 1125 of the Bankruptcy Code, and (b) authorizing the use of the Disclosure Statement for soliciting votes on the Plan.

**1.43. 1.41. "Distribution Date"** means, with respect to any Claim, (a) the Effective Date or a date that is as soon as reasonably practicablenot later than the sixtieth (60th) Business Day after the Effective Date, if such Claim is then an Allowed Claim, or (b) a date that is as soon as reasonably practicable after the date such Claim becomes Allowed, if not Allowed on the Effective Date; provided that, in the case of Plan Distributions to be made to the Prepetition First Lien Claimholders from the Assets of, or the proceeds of the Assets of, Centaur Colorado, LLC, "Distribution Date" means the later of the Effective Date or a date that is as soon as reasonably practicable after the receipt by the Debtors of the Cash proceeds of such Assets as a result of a sale of such Assets; provided further, that, in the case of Plan Distributions, if any, to be made to the Prepetition First Lien Claimholders or the Prepetition Second Lien Claimholders from the Assets of, or the proceeds of the Assets of, Valley View Downs, LP, or the proceeds of the partnership interests of Reorganized Valley View Downs, LP, Reorganized Centaur PA Land General Partner, LP and Reorganized Centaur PA Land, LP or the membership interests of Reorganized Centaur PA Land Management, LLC, as a result of (i) the sale of such Assets, partnership interests or membership interests, or (ii) the return of the $50 million in Cash deposited in an account in the name of the L/C Issuer to secure the Existing L/C to Valley View Downs, LP, "Distribution Date" means the later of the Effective Date or a date that is as soon as reasonably practicable after the receipt by the Debtors of the Cash proceeds of such Assets, partnership interests or membership interests.

**1.44. 1.42. "Effective Date"** means (i) for the Debtors other than Centaur Colorado, LLC, a date selected by the Debtors which must be a Business Day that is no later than thirty (30) Business Days after all of the conditions specified in Section 15.2 have been satisfied or waived (to the extent subject to waiver), and (ii) for Centaur Colorado, LLC, the Centaur Colorado, LLC Effective Date.

**1.45. 1.43. "Entity"** means any Person or organization created by law, including, without limitation, any individual, company, corporation, limited liability company, partnership, association, joint stock company, joint venture, estate, trust, unincorporated organization, or government or any political subdivision thereof.

**1.46. 1.44. "Equity Interest"** means any outstanding ownership interest in any of the Debtors, including, without limitation, interests evidenced by common or preferred stock, membership interests and options or other rights to purchase or otherwise receive any ownership interests in any of the Debtors and any right to payment or compensation based upon any such

interest, whether or not such interest is owned by the holder of such right to payment or compensation.

**1.47.** ~~1.45.~~ **"Estate"** means the estate of any Debtor created by section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Cases.

**1.48.** ~~1.46.~~ **"Estimation Order"** means an order or orders of the Bankruptcy Court (a) estimating or otherwise establishing the Allowed amounts of estimated Claims, and (b) entered by the Bankruptcy Court in connection with Section 13.6. The Estimation Order may be the Confirmation Order if the Confirmation Order grants the same relief that otherwise would have been granted in separate Estimation Order(s).

**1.49.** ~~1.47.~~ **"Existing L/C"** means the letter of credit extended by the L/C Issuer to Valley View Downs, LP on October 30, 2007, as amended and restated, which expires by its terms on ~~October 26, 2010,~~April 25, 2011, unless further amended and restated to extend the term thereof with Bankruptcy Court approval.

**1.50.** ~~1.48.~~ **"Existing Management"** means, collectively, the following members of the management of the Debtors: Roderick J. Ratcliff, Kurt E. Wilson and James L. Brown.

**1.51.** ~~1.49.~~ **"Exit Financing"** means the new first lien debt, if any, extended to New Centaur, LLC, as borrower, NewCo and the Reorganized Debtors, as guarantors, (a) as necessary to fund the Debtors' emergence from the Chapter 11 Cases, (b) in an amount agreed upon by the Debtors ~~and the Consenting,~~ Prepetition First Lien ~~Claimholders~~Agent and Required Lenders and (c) the proceeds of which shall be used to, among other things, pay the costs associated with the Debtors' emergence from the Chapter 11 Cases. The Exit Financing, if any, shall be included in a single facility with the First Lien Take Back Paper and, regardless of the amount of the Exit Financing, the aggregate amount of the Exit Financing and the First Lien Take Back Paper shall be $~~115~~160 million. The terms of the Exit Financing shall be the same as those of the First Lien Take Back Paper described in Exhibit "D" to the Disclosure Statement.

**1.52.** ~~1.50.~~ **"Fee Application"** means an application for allowance and payment of a Fee Claim.

**1.53.** ~~1.51.~~ **"Fee Claim"** means a Claim of a Professional.

**1.54.** ~~1.52.~~ **"Final Cash Collateral Order"** means that certain Final Order (A) Authorizing Use of Cash Collateral, (B) Granting Adequate Protection, and (C) Modifying the Automatic Stay entered April 30, 2010 [Case No. 10-10799 (KJC), D.I. 205], as amended by that certain Order Extending the Committee's Challenge Period Under the Final Cash Collateral Order entered June 25, 2010 [Case No. 10-10799 (KJC), D.I. 367].

**1.55.** ~~1.53.~~ **"Final Order"** means (a) an order or judgment of the Bankruptcy Court or any other court or adjudicative body as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing are then pending, or (b) in the event that an appeal, writ of certiorari, reargument, or rehearing thereof has been sought, such order of the Bankruptcy Court or any other court or adjudicative body shall have been affirmed by the highest court to

which such order was appealed, or certiorari has been denied, or from which reargument or rehearing was sought, and the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall have expired; <u>provided</u> that no order shall fail to be a Final Order solely because of the possibility that a motion pursuant to section 502(j) of the Bankruptcy Code, Rule 59 or Rule 60 of the Federal Rules of Civil Procedure or Bankruptcy Rule 9024 may be filed with respect to such order.

**1.56.** ~~1.54.~~ **"First Lien Claim"** means any First Lien Secured Claim and any First Lien Deficiency Claim.

**1.57.** ~~1.55.~~ **"First Lien Deficiency Claim"** means any Deficiency Claim by a Prepetition First Lien Claimholder arising under the Prepetition First Lien Credit Agreement and/or the Specified Hedging Agreements.

**1.58.** ~~1.56.~~ **"First Lien Secured Claim"** means any Secured Claim by a Prepetition First Lien Claimholder arising under the Prepetition First Lien Credit Agreement and/or the Specified Hedging Agreements.

**1.59.** ~~1.57.~~ **"First Lien Take Back Documents"** means the First Lien Take Back Paper, together with all documents, instruments and agreements executed or entered into in connection therewith, and any amendments thereto.

**1.60.** ~~1.58.~~ **"First Lien Take Back Paper"** means new first lien debt in an amount equal to $~~115~~160 million, less the amount of the Exit Financing, if any. The First Lien Take Back Paper shall be included in a single facility with any Exit Financing and, regardless of the amount of the Exit Financing, the aggregate amount of the First Lien Take Back Paper and the Exit Financing shall be $~~115~~160 million. The terms of the First Lien Take Back Paper are described more fully in Exhibit "D" to the Disclosure Statement. The First Lien Take Back Paper shall be in substantially the form filed with the Bankruptcy Court as a Plan Document.

**1.61.** ~~1.59.~~ **"Fortune Valley Sale Agreement"** means the asset purchase agreement by and between Centaur Colorado, LLC, as seller, and Luna Gaming Central City LLC, as buyer, for the purchase and sale of substantially all of the Assets of Centaur Colorado, LLC as approved by Final Order of the Bankruptcy Court pursuant to section 363 of the Bankruptcy Code.

**1.62.** ~~1.60.~~ **"General Unsecured Claim"** means any unsecured Claim against a Debtor, other than an Administrative Expense Claim, a First Lien Deficiency Claim, a Second Lien Claim, a Valley View Downs Unsecured Claim, a Convenience Claim, an Intercompany Claim, an Intercompany Financing Claim, a Priority Tax Claim or a Priority Non-Tax Claim.

**1.63.** ~~1.61.~~ **"Guaranty"** means any guaranty by one or more Debtors of an obligation of any other Debtors.

**1.64.** ~~1.62.~~ **"Holdings"** means Centaur Gaming, LLC.

MIAMI 896127 (2K)

**1.65.** ~~1.63.~~ **"Hoosier Park, LLC"** means the Indiana limited liability company to be formed pursuant to Section 8.2 to serve as the direct subsidiary of New Centaur, LLC and the immediate parent of Reorganized HP Dining & Entertainment, LLC.

**1.66.** ~~1.64.~~ **"Indiana Debtors"** means, collectively, Centaur Indiana, LLC; Centaur Racing, LLC; Hoosier Park, L.P.; and HP Dining & Entertainment, LLC.

**1.67.** ~~1.65.~~ **"Insider"** means, with respect to any Person, all Persons that would fall within the definition assigned to such terms in section 101(31) of the Bankruptcy Code.

**1.68.** ~~1.66.~~ **"Intercompany Claim"** means any Claim held by any Debtor against any other Debtor that occurred or came into existence prior to the Petition Date other than an Intercompany Financing Claim.

**1.69.** ~~1.67.~~ **"Intercompany Financing Claim"** means any Claim of a Debtor against another Debtor arising pursuant to (a) that certain Interim Order Pursuant to 11 U.S.C. §§ 105(a), 362, 363(b), 364(b) and 503(b)(1) and Fed. R. Bankr. P. 4001, (I) Authorizing the Debtors to Obtain Unsecured Post-petition Financing from Centaur, LLC; (II) Granting Such Intercompany Financing Superpriority Administrative Expense Status; (III) Authorizing Payment of Certain Prepetition Expenses; and (IV) Providing Notice of and Scheduling a Final Hearing entered November 23, 2009 [Case No. 09-13760 (KJC), D.I. 49]; (b) that certain Final Order Pursuant to 11 U.S.C. §§ 105(a), 362, 363(b), 364(b) and 503(b)(1) and Fed. R. Bankr. P. 4001, (I) Authorizing the Debtors to Obtain Unsecured Post-petition Financing from Centaur, LLC; (II) Granting such Intercompany Financing Superpriority Administrative Expense Status; and (III) Authorizing Payment of Certain Prepetition Expenses entered December 4, 2009 [Case No. 09-13760 (KJC), D.I. 60]; (c) that certain Order Supplementing the Final Order Authorizing the Debtors to (A) Amend the Expiring Letter of Credit in Support of Debtors' Gaming License Application to Extend the Term Thereof and (B) Obtain Additional Availability Under the Intercompany Financing Order for Payment of Certain Fees to the L/C Issuer in Connection With Such Further Extension entered January 25, 2010 [Case No. 09-13760 (KJC), D.I. 82]; (d) that certain Order (I) Authorizing Continued Use of Existing (A) Cash Management Systems, (B) Bank Accounts and (C) Business Forms; (II) Granting Administrative Expense Priority Status to Certain Intercompany Transactions; and (III) Waiving Investment and Deposit Requirements entered March 10, 2010 [Case No. 10-10799 (KJC), D.I. 30]; (e) that certain Interim Order (I) Authorizing Continued Use of Existing (A) Cash Management Systems, (B) Bank Accounts and (C) Business Forms; (II) Granting Administrative Expense Priority Status to Certain Intercompany Transactions; and (III) Waiving Investment and Deposit Requirements entered March 11, 2010 [Case No. 09-13760 (KJC), D.I. 153]; (f) that certain Order Supplementing the Intercompany Financing Order to Authorize the Debtors to Obtain Additional Availability Under the Intercompany Financing entered March 16, 2010 [Case No. 09-13760 (KJC), D.I. 164]; (g) those certain Interim Orders (I) Further Supplementing the Final Orders Authorizing the Valley View Downs Debtors to (A) Further Amend the Letter of Credit in Support of Valley View Downs Debtors' Gaming License to Extend the Term Thereof Until July 28, 2010 and (B) Obtain Additional Availability Under the Intercompany Financing Order for Payment of a Fee to the L/C Issuer in Connection With Such Further Extension; (II) Authorizing Centaur, LLC to Provide Such Additional Availability; and (III) Providing Notice of and Scheduling a Final Hearing entered April 26, 2010 [Case No. 09-13760 (KJC), D.I. 279, Case

No. 10-10799 (KJC), D.I. 182]; (h) that certain Final and Modified Final Order (I) Authorizing Continued Use of Existing (A) Cash Management Systems, (B) Bank Accounts and (C) Business Forms; (II) Granting Administrative Expense Priority Status to Certain Intercompany Transactions; and (III) Waiving Investment and Deposit Requirements entered May 11, 2010 [Case No. 09-13760 (KJC), D.I. 285, Case No. 10-10799 (KJC), D.I. 246]; and (i) those certain Final Orders (I) Further Supplementing the Final Orders Authorizing the Valley View Downs Debtors to (A) Further Amend the Letter of Credit in Support of Valley View Downs Debtors' Gaming License Application to Extend the Term Thereof Until October 26, 2010 and (B) Obtain Additional Availability Under the Intercompany Financing Order for Payment of a Fee to the L/C Issuer in Connection With Such Further Extension; and (II) Authorizing Centaur, LLC to Provide Such Additional Availability entered on June 22, 2010 [Case No. 09-13760 (KJC), D.I. 287, Case No. 10-10799 (KJC), D.I. 357]; (j) that certain Order (I) Further Supplementing the Final Orders Authorizing the Valley View Downs Debtors to (A) Further Amend the Letter of Credit in Support of Valley View Downs Debtors' Gaming License Application to Extend the Term Thereof Until January 24, 2011 and (B) Obtain Additional Availability Under the Intercompany Financing Order for Payment of a Fee to the L/C Issuer in Connection With Such Further Extension; and (II) Authorizing Centaur, LLC to Provide Such Additional Availability entered on October 21, 2010 [Case No. 10-10799 (KJC), D.I. 796]; (k) that certain Order (I) Further Supplementing the Final Orders Authorizing the Valley View Downs Debtors to (A) Further Amend the Letter of Credit in Support of Valley View Downs Debtors' Gaming License Application to Extend the Term Thereof Until April 25, 2011 and (B) Obtain Additional Availability Under the Intercompany Financing Order for Payment of a Fee to the L/C Issuer in Connection With Such Further Extension; and (II) Authorizing Centaur, LLC to Provide Such Additional Availability entered on January 20, 2011 [Case No. 10-10799 (KJC), D.I. 1207]; and (l) any additional orders of the Bankruptcy Court entered in connection with further extensions of the Existing L/C.

**1.70. 1.68.** "**Internal Revenue Code**" means the Internal Revenue Code of 1986, as amended, and any applicable rulings, regulations (including temporary and proposed regulations) promulgated thereunder, judicial decisions, and notices, announcements, and other releases of the United States Treasury Department or the IRS.

**1.71. 1.69.** "**IRS**" means the United States Internal Revenue Service.

**1.72. 1.70.** "**L/C Claim**" means any Claim of the L/C Issuer arising under the Existing L/C.

**1.73. 1.71.** "**L/C Issuer**" means Credit Suisse AG, Cayman Islands Branch, in its capacity as issuer of the Existing L/C.

**1.74. 1.72.** "**Litigation Trust**" means the trust created pursuant to Article IX.

**1.75. 1.73.** "**Litigation Trust Declaration**" means the declaration of trust to be entered into by the Debtors and the Litigation Trustee. The Litigation Trust Declaration shall be in substantially the form filed with the Bankruptcy Court as a Plan Document.

**1.76. 1.74.** "**Litigation Trust Interests**" means the beneficial interests in the Litigation Trust to be issued to the holders of Allowed First Lien Deficiency Claims, Allowed Second Lien

Claims, Allowed Valley View Downs Unsecured Claims, Allowed General Unsecured Claims and Allowed Intercompany Claims against Valley View Downs, LP, which will not be certificated, will not be tradeable (except as provided in the Litigation Trust Declaration) and will be evidenced in the records of the Litigation Trust.

**1.77. 1.75. "Litigation Trustee"** means the Person selected to serve as the initial trustee of the Litigation Trust.

**1.78. 1.76. "Long Term Employment Agreements"** means, collectively, the employment agreements to be entered into on the Effective Date by and between NewCo, New Centaur, LLC, Hoosier Park, LLC or one or more of the Reorganized Debtors, on the one hand, and the Existing Management, on the other, which agreements shall be in form and substance satisfactory to the ~~Consenting~~Prepetition First Lien ~~Claimholders~~Agent and Required Lenders. The terms of the Long Term Employment Agreements shall be filed with the Bankruptcy Court as a Plan Document.

**1.79. 1.77. "Management Incentive Plan"** means that certain management incentive plan, the terms of which plan are to be determined and implemented on or after the Effective Date and which shall be in form and substance satisfactory to the ~~Consenting~~Prepetition First Lien ~~Claimholders~~Agent, Required Lenders and ~~the~~ Board of Managers. The terms of the Management Incentive Plan shall be filed with the Bankruptcy Court as a Plan Document.

**1.80. 1.78. "New Centaur, LLC"** means the Delaware or Indiana limited liability company to be formed pursuant to Section 8.2 to serve as the direct subsidiary of NewCo and the immediate parent of Reorganized Centaur Colorado, LLC, Reorganized Centaur Pennsylvania, LLC and Hoosier Park, LLC.

**1.81. 1.79. "New Centaur, LLC Membership Interests"** means the limited liability company membership units to be issued by New Centaur, LLC to NewCo on the Effective Date pursuant to the Plan.

**1.82. 1.80. "NewCo"** means a Delaware limited liability company to be formed pursuant to Section 8.2 to serve as the direct parent of New Centaur, LLC.

**1.83. 1.81. "NewCo Membership Interests"** means the limited liability company membership units to be issued by NewCo on the Effective Date pursuant to the Plan. Except as set forth in Section 8.2(f), the NewCo Membership Interests shall not be transferable without the consent of the Board of Managers and receipt of all necessary regulatory approvals.

**1.84. 1.82. "NewCo Operating Agreement"** means the limited liability company operating agreement of NewCo, the terms of which are described more fully in Exhibit "H" to the Disclosure Statement. The NewCo Operating Agreement shall be in substantially the form filed with the Bankruptcy Court as a Plan Document and shall disclose the identities of the Persons that are to hold the NewCo Membership Interests on the Effective Date and the identities of any members of the Board of Managers that will be subject to regulatory approval and their relationships, if any, to the Debtors.

MIAMI 896127 (2K)

**1.85. 1.83. "NewCo PIK Notes"** means the notes with an aggregate face amount of $~~155~~60 million to be issued by NewCo on the Effective Date pursuant to the Plan and which shall bear interest equal to the "Applicable Federal Rate" plus 4.99 percent (determined at the time of issuance). ~~The face amount of the NewCo PIK Notes is within a range, of which $155 million is the midpoint, and may change subject to regulatory requirements. The terms of the NewCo PIK Notes, which are designated as type "A" and type "B", are described more fully in Exhibit "E" to the Disclosure Statement~~ or such greater rate, as determined by the Bankruptcy Court, as is necessary to satisfy the requirements of section 1129(b)(2)(A)(i)(II) of the Bankruptcy Code. The NewCo PIK Notes shall be in substantially the form filed with the Bankruptcy Court as a Plan Document.

**1.86. 1.84. "NewCo Warrants"** means the warrants to purchase up to 99.9 percent of the NewCo Membership Interests, calculated on a fully-diluted basis after the exercise of the NewCo Warrants, and subject to dilution for any NewCo Membership Interests issuable under the Management Incentive Plan, to be (a) issued by NewCo on the Effective Date to the holders of Allowed First Lien Claims pursuant to the Plan, (b) exercisable by the holder thereof in accordance with the terms of the NewCo Warrants and upon such holder becoming licensed by all required regulatory authorities and (c) transferable, subject to any applicable securities and other laws and in accordance with the terms of the NewCo Warrants. The terms of the NewCo Warrants are described more fully in Exhibit "F" to the Disclosure Statement. The NewCo Warrants shall be in substantially the form filed with the Bankruptcy Court as a Plan Document.

**1.87. 1.85. "Notice of Confirmation"** means the notice of entry of the Confirmation Order to be filed with the Bankruptcy Court and mailed by the Claims Agent to holders of Claims and Equity Interests.

**1.88. 1.86. "Objection Deadline"** means the deadline for filing objections to Claims as set forth in Section 13.2.

**1.89. 1.87. "Original Debt Documents"** means the Prepetition First Lien Credit Agreement, the Prepetition Second Lien Credit Agreement and the Specified Hedging Agreements.

**1.90. 1.88. "Other Secured Claim"** means a Secured Claim other than a First Lien Claim.

**1.91. 1.89. "Pennsylvania Debtors"** means, collectively, Centaur Pennsylvania, LLC; VVD Properties General Partner, LLC; Valley View Downs GP, LLC; VVD Properties, LP; Valley View Downs, LP; Centaur PA Land Management, LLC; Centaur PA Land General Partner, LP; and Centaur PA Land, LP.

**1.92. 1.90. "Pennsylvania Gaming Control Board"** means the Pennsylvania state regulatory agency which oversees the slots casino industry in Pennsylvania, and which is currently reviewing the Pennsylvania Gaming License Application submitted by Valley View Downs, LP.

**1.93. 1.91. "Pennsylvania Gaming License Application"** means the application by Valley View Downs, LP with the Pennsylvania Gaming Control Board for a license to offer casino-style gaming at the future Valley View Downs location in Lawrence County, Pennsylvania.

**1.94.** ~~1.92.~~ **"Person"** means an individual, corporation, partnership, limited liability company, joint venture, trust, estate, unincorporated association, unincorporated organization, governmental entity, or political subdivision thereof, or any other entity.

**1.95.** ~~1.93.~~ **"Petition Date"** means, with respect to any Debtor, the date on which the Chapter 11 Case of such Debtor was commenced.

**1.96.** ~~1.94.~~ **"Plan"** means this chapter 11 plan of reorganization, either in its present form or as it may be amended, supplemented, or otherwise modified from time to time, and the exhibits and schedules hereto, as the same may be in effect at the time such reference becomes operative.

**1.97.** ~~1.95.~~ **"Plan Distribution"** means the payment or distribution under the Plan of Cash, Assets, Plan Securities, Litigation Trust Interests or instruments evidencing an obligation under the Plan to the holder of an Allowed Claim or Allowed Equity Interest, but shall not include distributions made by the Litigation Trustee pursuant to <u>Section 9.6</u>.

**1.98.** ~~1.96.~~ **"Plan Documents"** means the documents that aid in effectuating the Plan as specifically identified as such herein and filed with the Bankruptcy Court as specified in <u>Section 2.4</u>.

**1.99.** ~~1.97.~~ **"Plan Securities"** means the New Centaur, LLC Membership Interests, the NewCo PIK Notes, <u>the Stapled NewCo PIK Notes,</u> the NewCo Membership Interests and the NewCo Warrants.

**1.100.** ~~1.98.~~ **"Plan Supplement"** means the compilation of Plan Documents or forms of documents specified in the Plan, <u>including</u>, without limitation, any exhibits or schedules to the Plan not included herewith, each in form and substance acceptable to the Debtors, ~~which the Debtors shall, as provided in Section 2.4, file with the Bankruptcy Court on or before the date that is fifteen (15) Business Days prior to the Confirmation Hearing,~~ all of which are incorporated herein by reference.

**1.101.** ~~1.99.~~ **"Prepetition First Lien Agent"** means Credit Suisse AG, Cayman Islands Branch, as administrative agent and collateral agent under the Prepetition First Lien Credit Agreement.

**1.102.** ~~1.100.~~ **"Prepetition First Lien Claimholders"** means the Prepetition First Lien Agent and those lenders and holders of Claims arising under the Prepetition First Lien Credit Agreement and/or the Specified Hedging Agreements.

**1.103.** ~~1.101.~~ **"Prepetition First Lien Credit Agreement"** means that certain First Lien Revolving Credit and Term Loan Agreement, dated as of October 30, 2007 (as has been or may be further amended, restated, supplemented or otherwise modified from time to time) among the Borrower, as borrower, the Prepetition First Lien Agent and various lenders.

**1.104.** ~~1.102.~~ **"Prepetition Intercreditor Agreement"** means that certain Intercreditor Agreement, dated as of October 30, 2007 (as has been or may be further amended, restated, supplemented or otherwise modified from time to time) among the Borrower, the Prepetition

First Lien Agent and the Prepetition Second Lien Agent and acknowledged and agreed to by Holdings and each of the Subsidiary Guarantors.

**1.105.** ~~1.103.~~ **"Prepetition Second Lien Agent"** means Wells Fargo Bank, N.A., as administrative agent and collateral agent under the Prepetition Second Lien Credit Agreement.

**1.106.** ~~1.104.~~ **"Prepetition Second Lien Claimholders"** means the Prepetition Second Lien Agent and those lenders and holders of Claims arising under the Prepetition Second Lien Credit Agreement.

**1.107.** ~~1.105.~~ **"Prepetition Second Lien Credit Agreement"** means that certain Second Lien Revolving Credit and Term Loan Agreement, dated as of October 30, 2007 (as has been or may be further amended, restated, supplemented or otherwise modified from time to time) among the Borrower, as borrower, the Prepetition Second Lien Agent and various lenders.

**1.108.** ~~1.106.~~ **"Priority Non-Tax Claim"** means any Claim entitled to priority in payment as specified in section 507(a)(3), (4), (5), (6), (7) or (9) of the Bankruptcy Code.

**1.109.** ~~1.107.~~ **"Priority Tax Claim"** means any Claim, whether secured or unsecured, entitled to priority under section 507(a)(8) of the Bankruptcy Code.

**1.110.** ~~1.108.~~ **"Pro Rata Share"** means the proportion that an Allowed Claim or Equity Interest bears to the aggregate amount of all Claims or Equity Interests in a class or classes, as applicable, <u>including</u> Contested Claims or Equity Interests, but excluding Disallowed Claims, (a) as calculated by the Disbursing Agent or (b) as determined or estimated by the Bankruptcy Court.

**1.111.** ~~1.109.~~ **"Professional"** means a Person retained or to be compensated for services rendered or costs incurred on or after the Petition Date and on or prior to the Effective Date pursuant to sections 327, 328, 329, 330, 331, 503(b) or 1103 of the Bankruptcy Code in these Chapter 11 Cases.

**1.112.** ~~1.110.~~ **"Rejection Damage Claim"** means any Claim arising out of the rejection of an executory contract or unexpired lease.

**1.113.** ~~1.111.~~ **"Released Persons"** means (a) (i) the Debtors and the Reorganized Debtors, (ii) the Prepetition First Lien Claimholders ~~and,~~ (iii) the L/C Issuer, <u>(iv) the Committee and (v) the members and former members of the Committee, in their capacity as Committee members</u>; (b) (i) any Prepetition Second Lien Claimholder, (ii) any holder of a Valley View Downs Unsecured Claim, (iii) any holder of a General Unsecured Claim and (iv) any holder of a Convenience Claim, to the extent such Person described in one or more of subclauses (i) through (iv) of this clause (b) votes in favor of the Plan; (c) (i) any holder of a Second Lien Claim, (ii) any holder of a Valley View Downs Unsecured Claim and (iii) any holder of a General Unsecured Claim, to the extent such Person described in one or more of subclauses (i) through (iii) of this clause (c) makes the Convenience Class Election; and (d) all affiliates, officers, directors, principals, shareholders, parents, subsidiaries, members, auditors, accountants, financial advisors, consultants, and other advisors, predecessors, successors, servants, employees, agents, counsel, attorneys, partners, insurers, underwriters, administrators, executors,

representatives or assigns of each of the foregoing Persons listed in clauses (a), (b) and (c), to the extent such Person is a Released Person. No Designated Defendant shall be a Released Person nor may any Designated Defendant become a Released Person by the acquisition of a Claim in any class under the Plan or by having voted in any Class under the Plan or having made the Convenience Class Election.

**1.114. 1.112. "Reorganized Centaur Colorado, LLC"** means Centaur Colorado, LLC from and after the Effective Date.

**1.115. 1.113. "Reorganized Centaur PA Land General Partner, LP"** means Centaur PA Land General Partner, LP from and after the Effective Date.

**1.116. 1.114. "Reorganized Centaur PA Land, LP"** means Centaur PA Land, LP from and after the Effective Date.

**1.117. 1.115. "Reorganized Centaur PA Land Management, LLC"** means Centaur PA Land Management, LLC from and after the Effective Date.

**1.118. 1.116. "Reorganized Centaur Pennsylvania, LLC"** means Centaur Pennsylvania, LLC from and after the Effective Date.

**1.119. 1.117. "Reorganized Debtors"** means collectively, from and after the Effective Date, the Debtors (other than Centaur, LLC, Hoosier Park, L.P., Centaur Indiana, LLC and Centaur Racing, LLC) and any successors thereto by merger, consolidation or otherwise.

**1.120. 1.118. "Reorganized HP Dining & Entertainment, LLC"** means HP Dining & Entertainment, LLC from and after the Effective Date.

**1.121. 1.119. "Reorganized Valley View Downs GP, LLC"** means Valley View Downs GP, LLC from and after the Effective Date.

**1.122. 1.120. "Reorganized Valley View Downs, LP"** means Valley View Downs, LP from and after the Effective Date.

**1.123. 1.121. "Reorganized VVD Properties General Partner, LLC"** means VVD Properties General Partner, LLC from and after the Effective Date.

**1.124. 1.122. "Reorganized VVD Properties, LP"** means VVD Properties, LP from and after the Effective Date.

**1.125. 1.123. "Required Lenders"** shall have the meaning set forth in the Prepetition First Lien Credit Agreement.

**1.126. 1.124. "Restructuring Transactions"** means, collectively, those formations, incorporations, mergers, consolidations, restructurings, dispositions, liquidations or dissolutions that the Debtors or Reorganized Debtors, as the case may be, determine to be necessary or appropriate to effect a corporate restructuring of their respective businesses or otherwise to

simplify the overall corporate structure of the Reorganized Debtors, as described in greater detail in <u>Section 8.2</u>.

**1.127. 1.125. "Sale Documents"** means that certain purchase agreement by and between Centaur Pennsylvania, LLC, ~~Valley View Downs GP, LLC and VVD Properties, LP, as sellers, and a~~<u>as seller, and American Harness Tracks, LLC, as</u> buyer, for the purchase and sale of the partnership interests of Reorganized Valley View Downs, LP, Reorganized Centaur PA Land General Partner, LP and Reorganized Centaur PA Land, LP and the membership interests of Reorganized Centaur PA Land Management, LLC, as <u>amended and</u> approved by Final Order of the Bankruptcy Court pursuant to section 1123 of the Bankruptcy Code and such other agreements, documents and instruments necessary to consummate the sale of the partnership interests of Reorganized Valley View Downs, LP, Reorganized Centaur PA Land General Partner, LP and Reorganized Centaur PA Land, LP and the membership interests of Reorganized Centaur PA Land Management, LLC to the Winning Competing Bidder in accordance with the Bidding Procedures and the Plan.

**1.128. 1.126. "Sale Hearing"** means the ~~Confirmation Hearing or such other~~ hearing held by the Bankruptcy Court~~, as it may be continued from time to time,~~ <u>on December 13, 2010,</u> on approval of the sale of the partnership interests of Reorganized Valley View Downs, LP, Reorganized Centaur PA Land General Partner, LP and Reorganized Centaur PA Land, LP and the membership interests of Reorganized Centaur PA Land Management, LLC to the Winning Competitive Bidder.

**1.129. 1.127. "Sale Order"** means ~~the Confirmation Order or such other order entered by the Bankruptcy Court~~<u>that certain Order (A) Authorizing the Transfer of the Equity Interests to be Issued on the Effective Date in the Conveyed Entities and (B) Granting Related Relief entered on December 13, 2010 [Case No. 10-10799, D.I. 1052]</u> approving the sale of the partnership interests of Reorganized Valley View Downs, LP, Reorganized Centaur PA Land General Partner, LP and Reorganized Centaur PA Land, LP and the membership interests of Reorganized Centaur PA Land Management, LLC.

**1.130. 1.128. "Schedules"** means the schedules of assets and liabilities and list of Equity Interests and the statements of financial affairs filed by each of the Debtors with the Bankruptcy Court, as required by section 521 of the Bankruptcy Code and in conformity with the Official Bankruptcy Forms of the Bankruptcy Rules, as such schedules and statements have been or may be amended or supplemented by the Debtors from time to time in accordance with Bankruptcy Rule 1009.

**1.131. 1.129. "Second Lien Claim"** means any Claim by a Prepetition Second Lien Claimholder arising under the Prepetition Second Lien Credit Agreement.

**1.132. 1.130. "Section 503(b)(9) Bar Date"** means June 30, 2010 at 4:00 p.m. Eastern Time, the deadline for the filing of Section 503(b)(9) Claims established pursuant to an order of the Bankruptcy Court.

MIAMI 896127 (2K)

**1.133.** ~~1.131.~~ **"Section 503(b)(9) Claims"** means any Claims against any of the Debtors entitled to administrative expense status pursuant to section 503(b)(9) of the Bankruptcy Code.

**1.134.** ~~1.132.~~ **"Secured Claim"** means (a) a Claim secured by a lien on any Assets, which lien is valid, perfected and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law, and which is duly established in the Chapter 11 Cases, but only to the extent of the value of the holder's interest in the collateral that secures payment of the Claim, (b) a Claim against the Debtors that is subject to a valid right of recoupment or setoff under section 553 of the Bankruptcy Code, but only to the extent of the Allowed amount subject to recoupment or setoff as provided in section 506(a) of the Bankruptcy Code and (c) a Claim deemed or treated under the Plan as a Secured Claim; provided that to the extent that the value of such interest is less than the amount of the Claim which has the benefit of such security, the unsecured portion of such Claim shall be treated as a First Lien Deficiency Claim, Second Lien Claim, Valley View Downs Unsecured Claim or General Unsecured Claim, as applicable, unless, in any such case the class of which Claim is a part makes a valid and timely election in accordance with section 1111(b) of the Bankruptcy Code to have such Claim treated as a Secured Claim to the extent allowed.

**1.135. "Settlement"** means the settlement and compromise evidenced by that certain Settlement Agreement by and among the Debtors, the Committee and the Prepetition First Lien Agent, on behalf of the Prepetition First Lien Claimholders, dated December 7, 2010.

**1.136.** ~~1.133.~~ **"Specified Hedging Agreements"** means those agreements among Credit Suisse International and Centaur, LLC, dated October 30, 2007, October 31, 2007, May 28, 2008 and June 2, 2008, the obligations under which are part of the First Lien Claims.

**1.137. "Stapled NewCo PIK Notes"** means the notes with an aggregate face amount of $50 million to be issued by NewCo on the Effective Date pursuant to the Plan and which shall bear interest equal to the "Applicable Federal Rate" (determined at the time of issuance). The face amount of the Stapled NewCo PIK Notes is within a range, of which $50 million is the midpoint, and may change subject to regulatory requirements. The Stapled NewCo PIK Notes shall be in substantially the form filed with the Bankruptcy Court as a Plan Document.

**1.138.** ~~1.134.~~ **"Subordinated Claim"** means a Claim against any Debtor (a) subordinated by a Final Order or (b) secured by a lien or security interest subordinated by a Final Order.

**1.139.** ~~1.135.~~ **"Subsidiary Guarantor"** means those Debtors other than the Borrower that guaranteed the obligations of the Borrower under the Prepetition First Lien Credit Agreement, Specified Hedging Agreements and the Prepetition Second Lien Credit Agreement.

**1.140.** ~~1.136.~~ **"U.S. Trustee"** means the Office of the United States Trustee for Region 3, District of Delaware.

**1.141.** ~~1.137.~~ **"Valley View Downs Unsecured Claim"** means any unsecured Claim against Valley View Downs, LP, other than an Administrative Expense Claim, a First Lien Deficiency Claim, a Second Lien Claim, a General Unsecured Claim, a Convenience Claim, an

MIAMI 896127 (2K)

Intercompany Claim, an Intercompany Financing Claim, a Priority Tax Claim or a Priority Non-Tax Claim.

1.142. ~~1.138.~~ "**Winning Competitive Bidder**" ~~shall have the meaning set forth in the Bidding Procedures, identifying~~ means American Harness Tracks, LLC, the bidder submitting the highest and best bid for the partnership interests of Reorganized Valley View Downs, LP, Reorganized Centaur PA Land General Partner, LP and Reorganized Centaur PA Land, LP and the membership interests of Reorganized Centaur PA Land Management, LLC.

## ARTICLE II.

## INTERPRETATION AND APPLICATION

### 2.1. Interpretation.

Unless otherwise specified, all section, article, exhibit and schedule references in the Plan are to the respective section in, article of, or exhibit or schedule to, the Plan, as the same may be amended, waived, or modified from time to time. Words denoting the singular number shall include the plural and vice versa, as appropriate, and words denoting one gender shall include the other gender. The Disclosure Statement may be referred to for purposes of interpretation to the extent any term or provision of the Plan is determined by the Bankruptcy Court to be ambiguous.

As shown by the analysis contained in Section VIII.C. of the Disclosure Statement, the Reorganized Enterprise Value (as defined in the Disclosure Statement) of the Debtors is insufficient to permit the Prepetition First Lien Claimholders, who the Debtors believe have valid and perfected liens on substantially all of the Debtors' Assets, to receive a recovery in full on account of their Allowed First Lien Claims. The Committee, by the Challenges, has disputed this conclusion and challenged the Prepetition First Lien Claimholders' liens on the Debtors' Assets. In order to obtain confirmation of the Plan, to resolve the Challenges in accordance with the terms and conditions of the Settlement, and to facilitate the reorganization of the Debtors, the Consenting First Lien Claimholders, by their votes to accept the Plan, will agree to carve out from the Prepetition First Lien Claimholders' recovery, on account of their collateral, value sufficient to permit the Plan Distributions to, among others, holders of Allowed Second Lien Claims, Allowed General Unsecured Claims, Allowed Valley View Downs Unsecured Claims and Allowed Convenience Claims, which in the view of the Debtors and the Prepetition First Lien Agent would otherwise be distributable to holders of Allowed First Lien Claims. The Plan should be interpreted accordingly.

### 2.2. Application of Definitions and Rules of Construction Contained in the Bankruptcy Code.

Words and terms defined in section 101 of the Bankruptcy Code have the same meanings when used in the Plan, unless a different definition is set forth in Article I hereof. The rules of construction contained in section 102 of the Bankruptcy Code, other than section 102(5)

MIAMI 896127 (2K)

of the Bankruptcy Code, apply to the construction of the Plan. For the purposes of construction of the Plan, "or" is disjunctive.

### 2.3. **Other Terms.**

The words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan.

### 2.4. **Incorporation of Plan Documents.**

All appendices, exhibits and schedules to the Plan and the Plan Documents are incorporated into the Plan by this reference and are a part of the Plan as if set forth in full herein. All Plan Documents shall be filed with the Bankruptcy Court as part of the Plan Supplement ~~not less than fifteen (15) Business Days prior to the commencement of the Confirmation Hearing~~on January 28, 2011; provided, however, that any Plan Documents that are or may be subject to confidentiality provisions or otherwise contain confidential or proprietary information may be filed in redacted form under seal.

Holders of Claims and Equity Interests may obtain a copy of the Plan Documents (in redacted form, as applicable, and excluding any Plan Documents that are filed under seal), once filed, by a written request sent to the following address:

> Centaur Gaming Restructuring
> c/o AlixPartners, LLP
> Attention: John Franks
> 2101 Cedar Springs Road, Suite 1100
> Dallas, Texas 75201
> Facsimile: (214) 647-7503

### ARTICLE III.

### CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

Except as otherwise provided herein, for the purposes of organization, voting and all confirmation matters, all Claims and all Equity Interests in the Debtors will be classified as set forth in this Article III.

### 3.1. **Administrative Expense Claims and Tax Claims.**

As provided by section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims will not be classified under the Plan, and will instead be treated separately as unclassified Claims on the terms set forth in Article VI.

### 3.2. **Claims and Equity Interests.**

The Claims against and the Equity Interests in, with respect to and to the extent applicable for, each Debtor are classified under the Plan as follows:

| Class | Claims and Interests | Status | Voting Rights |
|---|---|---|---|
| 1. | Priority Non-Tax Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 2. | First Lien Claims | Impaired | Entitled to Vote |
| 3. | Second Lien Claims | Impaired | Entitled to Vote |
| 4. | Other Secured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 5. | Valley View Downs Unsecured Claims | Impaired | Entitled to Vote |
| 6. | General Unsecured Claims | Impaired | Entitled to Vote |
| 7. | Convenience Claims | Impaired | Entitled to Vote |
| 8. | Intercompany Claims | Impaired | Entitled to Vote |
| 9. | Equity Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |

(a)     Class 1 – Priority Non-Tax Claims.

Class 1 shall consist of all Priority Non-Tax Claims.

(b)     Class 2 – First Lien Claims.

Class 2 shall consist of all First Lien Claims.

(c)     Class 3 – Second Lien Claims.

Class 3 shall consist of all Second Lien Claims.

(d)     Class 4 – Other Secured Claims.

Class 4 shall consist of all Other Secured Claims.

(e)     Class 5 – Valley View Downs Unsecured Claims.

Class 5 shall consist of all Valley View Downs Unsecured Claims and, for purposes of voting on the Plan, includes only the following Valley View Downs Unsecured Claims asserted by timely filed proofs of Claim: (i) the Claim of PR Valley View Downs, L.P. in the amount of $58,186,857.02; (ii) the Claim of PREIT-RUBIN, Inc. in the amount of $3 million; (iii) the contingent, unliquidated Claim of San Pasqual Casino Development, Inc.; and (iv) the contingent Claims of each of Roderick J. Ratcliff and Kurt E. Wilson in unfixed amounts.

(f)     Class 6 – General Unsecured Claims.

Class 6 shall consist of all General Unsecured Claims.

(g)     Class 7 – Convenience Claims.

Class 7 shall consist of all Convenience Claims.

(h)     Class 8 – Intercompany Claims.

Class 8 shall consist of all Intercompany Claims.

(i)     Class 9 – Equity Interests.

Class 9 shall consist of all Equity Interests.

## ARTICLE IV.

## IDENTIFICATION OF IMPAIRED CLASSES OF CLAIMS AND EQUITY INTERESTS

### 4.1. Impaired and Unimpaired Classes of Claims and Equity Interests.

Priority Non-Tax Claims and Other Secured Claims are not impaired under the Plan. All other classes of Claims and Equity Interests are impaired under the Plan.

### 4.2. Impairment Controversies.

If a controversy arises as to whether any Claim or Equity Interest, or any class of Claims or Equity Interests, is impaired under the Plan, the Bankruptcy Court shall, after notice and a hearing, determine such controversy.

## ARTICLE V.

## PROVISIONS FOR TREATMENT OF CLAIMS AND EQUITY INTERESTS UNDER THE PLAN

The classes of Claims against and Equity Interests in, with respect to and to the extent applicable for, each Debtor shall be treated under the Plan as follows:

### 5.1. Class 1 – Priority Non-Tax Claims.

Each Allowed Priority Non-Tax Claim shall be unimpaired under the Plan and, pursuant to section 1124 of the Bankruptcy Code, all of the legal, equitable and contractual rights to which such Claim entitles the holder in respect of such Claim shall be fully reinstated and retained, and such Allowed Priority Non-Tax Claim (including any amounts to which such holder is entitled pursuant to section 1124(2) of the Bankruptcy Code) shall be paid in full in accordance with such reinstated rights on the Effective Date.

### 5.2. Class 2 – First Lien Claims.

Each holder of an Allowed First Lien Claim shall, on the Distribution Date, in full satisfaction of such holder's: (a) Allowed First Lien Secured Claim, receive a Pro Rata Share, in

accordance with that holder's Pro Rata Share of the Allowed First Lien Secured Claims, of (i) the First Lien Take Back Paper, (ii) the NewCo PIK Notes, ~~which NewCo PIK Notes are designated as type "A" in Exhibit "E" to the Disclosure Statement, less (y)~~less the $~~3.0~~3.4 million aggregate face amount of NewCo PIK Notes to be distributed to holders of Allowed Second Lien Claims if the holders of Second Lien Claims vote in favor of the Plan pursuant to section 1126 of the Bankruptcy Code, and thus, Class 3 – Second Lien Claims accepts the Plan, ~~and/or (z) the $400,000 aggregate face amount of NewCo PIK Notes to be distributed to holders of Allowed Valley View Downs Unsecured Claims if the holders of Valley View Downs Unsecured Claims vote in favor of the Plan pursuant to section 1126 of the Bankruptcy Code, and thus, Class 5 – Valley View Downs Unsecured Claims accepts the Plan,~~ (iii) the Stapled NewCo PIK Notes; (iv) the NewCo Warrants, (~~iv~~v) the Cash proceeds of (y) any Assets of Valley View Downs, LP, and (z) any sale that results in the transfer, directly or indirectly, of any Asset of Valley View Downs, LP, including through the sale of an Equity Interest, to the extent, in case of each of clauses (y) and (z), the Assets of Valley View Downs, LP are collateral or proceeds of collateral subject to the prepetition liens and security interests of the Prepetition First Lien Agent, (~~v~~vi) the Cash proceeds of the Assets of Centaur Colorado, LLC, (~~vi~~vii) the Cash proceeds of (y) the Assets of Centaur PA Land, LP, and (z) any sale that results in the transfer, directly or indirectly, of any Assets of Centaur PA Land, LP, and (~~vii~~ (y~~viii) if the holders of Second Lien Claims do not vote in favor of the Plan pursuant to section 1126 of the Bankruptcy Code, and thus, Class 3 – Second Lien Claims does not accept the Plan, those NewCo PIK Notes that would have been otherwise distributed to holders of Allowed Second Lien Claims pursuant to Section ~~5.3(a); provided that those NewCo PIK Notes shall be of the type designated as type "A" rather than type "B", and (z) if the holders of Valley View Downs Unsecured Claims do not vote in favor of the Plan pursuant to section 1126 of the Bankruptcy Code, and thus, Class 5 – Valley View Downs Unsecured Claims does not accept the Plan, those NewCo PIK Notes that would have been otherwise distributed to holders of Allowed Valley View Downs Unsecured Claims pursuant to Section 5.5(a); provided that those NewCo PIK Notes shall be of the type designated as type "A" rather than type "B",~~5.3, and (b) Allowed First Lien Deficiency Claim, receive (i) a Pro Rata Share, in accordance with that holder's Pro Rata Share of the aggregate of the Allowed First Lien Deficiency Claims, Allowed Second Lien Claims, Allowed Valley View Downs Unsecured Claims not paid in Cash and, if the holders of Second Lien Claims do not vote in favor of the Plan pursuant to section 1126 of the Bankruptcy Code, and thus, Class 3 – Second Lien Claims does not accept the Plan, and/or if the holders of Valley View Downs Unsecured Claims do not vote in favor of the Plan pursuant to section 1126 of the Bankruptcy Code, and thus, Class 5 – Valley View Downs Unsecured Claims does not accept the Plan, Allowed Intercompany Claims against Valley View Downs, LP, of the Cash proceeds remaining after payment of Allowed L/C Claims, Allowed Administrative Expense Claims and Allowed Intercompany Financing Claims against Valley View Downs, LP of (y) any Assets of Valley View Downs, LP, and (z) any sale that results in the transfer, directly or indirectly, of any Asset of Valley View Downs, LP, including through the sale of an Equity Interest, to the extent, in case of each of clauses (y) and (z), the Assets of Valley View Downs, LP are not collateral or proceeds of collateral subject to the prepetition liens and security interests of the Prepetition First Lien Agent, and (ii) a Pro Rata Share, in accordance with the holder's Pro Rata Share of the aggregate of the Allowed First Lien Deficiency Claims, Allowed Second Lien Claims, Allowed Valley View Downs Unsecured Claims not paid in Cash, Allowed General Unsecured Claims not paid in Cash and, if the holders of Second Lien Claims do not vote in favor of the Plan

MIAMI 896127 (2K)

pursuant to section 1126 of the Bankruptcy Code, and thus, Class 3 – Second Lien Claims does not accept the Plan, and/or if the holders of Valley View Downs Unsecured Claims do not vote in favor of the Plan pursuant to section 1126 of the Bankruptcy Code, and thus, Class 5 – Valley View Downs Unsecured Claims does not accept the Plan, Allowed Intercompany Claims against Valley View Downs, LP, of Litigation Trust Interests.  For purposes of determining and making Plan Distributions pursuant to this Section 5.2, the Assets of Valley View Downs, LP shall include the Cash received by Valley View Downs, LP upon expiration of the Existing L/C or release, cancellation and return of the Existing L/C by the Pennsylvania Gaming Control Board to the L/C Issuer, and the "Cash proceeds" of the Assets of Valley View Downs, LP shall also include that Cash.

### 5.3. Class 3 – Second Lien Claims.

(a)  ~~If the holders of Second Lien Claims vote in favor of the Plan pursuant to section 1126 of the Bankruptcy Code, and thus, Class 3 – Second Lien Claims accepts the Plan, each holder of an Allowed Second Lien Claim shall, on the Distribution Date, in full satisfaction of such holder's Allowed Second Lien Claim, receive (i) a Pro Rata Share, in accordance with such holder's Pro Rata Share of the Allowed Second Lien Claims, of $3.0 million aggregate face amount of the NewCo PIK Notes, which NewCo PIK Notes are designated as type "B" in Exhibit "E" to the Disclosure Statement and (ii) a Pro Rata Share, in accordance with that holder's Pro Rata Share of the aggregate of the Allowed First Lien Deficiency Claims, Allowed Second Lien Claims, Allowed Valley View Downs Unsecured Claims, Allowed General Unsecured Claims, and, if the holders of Valley View Downs Unsecured Claims do not vote in favor of the Plan pursuant to section 1126 of the Bankruptcy Code, and thus, Class 5 – Valley View Downs Unsecured Claims does not accept the Plan, Allowed Intercompany Claims against Valley View Downs, LP, of Litigation Trust Interests.~~

(b)  ~~If the~~ ~~holders of Second Lien Claims do not vote in favor of the Plan pursuant to section 1126 of the Bankruptcy Code, and thus, Class 3 – Second Lien Claims does not accept the Plan, each holder of an Allowed Second Lien Claim shall, on the Distribution Date, in full satisfaction of such holder's Allowed Second Lien Claim, receive (i) a Pro Rata Share, in accordance with that holder's Pro Rata Share of the aggregate~~Each holder of an Allowed Second Lien Claim shall, on the Distribution Date, in full satisfaction of such holder's Allowed Second Lien Claim, receive (a) a Pro Rata Share, in accordance with such holder's Pro Rata Share of the Allowed First Lien Deficiency Claims, Allowed Second Lien Claims, Allowed Valley View Downs Unsecured Claims not paid in Cash and Allowed Intercompany Claims against Valley View Downs, LP, of the Cash proceeds remaining after payment of Allowed L/C Claims, Allowed Administrative Expense Claims and Allowed Intercompany Financing Claims against Valley View Downs, LP of (~~i~~i) any Assets of Valley View Downs, LP, and (~~ii~~ii) any sale that results in the transfer, directly or indirectly, of any Asset of Valley View Downs, LP, including through the sale of an Equity Interest, to the extent, in the case of each of clauses (~~i~~i) and (~~ii~~ii), the Assets of Valley View Downs, LP are not collateral or proceeds of collateral subject to the prepetition liens and security interests of the Prepetition First Lien Agent, and (~~ii~~b) a Pro Rata Share, in accordance with ~~that~~such holder's Pro Rata Share of the aggregate of the Allowed First Lien Deficiency Claims, Allowed Second Lien Claims, Allowed Valley View Downs Unsecured Claims not paid in Cash, Allowed General Unsecured Claims not paid in Cash and Allowed Intercompany Claims against Valley View Downs, LP, of Litigation Trust Interests.

For purposes of determining and making Plan Distributions pursuant to this Section 5.3(b), the Assets of Valley View Downs, LP shall include the Cash received by Valley View Downs, LP upon expiration of the Existing L/C or release, cancellation and return of the Existing L/C by the Pennsylvania Gaming Control Board to the L/C Issuer, and the "Cash proceeds" of the Assets of Valley View Downs, LP shall also include that Cash; provided, however, that if the holders of Second Lien Claims vote in favor of the Plan pursuant to section 1126 of the Bankruptcy Code, and thus, Class 3 – Second Lien Claims accepts the Plan, each holder of an Allowed Second Lien Claim shall, on the Distribution Date, in full satisfaction of such holder's Allowed Second Lien Claim, receive (y) a Pro Rata Share, in accordance with such holder's Pro Rata Share of the Allowed Second Lien Claims, of $3.4 million aggregate face amount of the NewCo PIK Notes, and (z) a Pro Rata Share, in accordance with such holder's Pro Rata Share of the aggregate of the Allowed First Lien Deficiency Claims, Allowed Second Lien Claims, Allowed Valley View Downs Unsecured Claims not paid in Cash, Allowed General Unsecured Claims not paid in Cash, and, if the holders of Valley View Downs Unsecured Claims do not vote in favor of the Plan pursuant to section 1126 of the Bankruptcy Code, and thus, Class 5 – Valley View Downs Unsecured Claims does not accept the Plan, Allowed Intercompany Claims against Valley View Downs, LP, of Litigation Trust Interests. **Any holder of an Allowed Second Lien Claim that makes the Convenience Class Election shall be treated as a Class 7 – Convenience Claim consistent with such election.**

### 5.4. Class 4 – Other Secured Claims.

Except to the extent that the holder of an Allowed Other Secured Claim agrees to less favorable treatment, each Allowed Other Secured Claim shall, on the Distribution Date, be reinstated or rendered unimpaired in accordance with section 1124 of the Bankruptcy Code as against the applicable Debtor or its successor in interest under the Plan, notwithstanding any contractual provisions or applicable non-bankruptcy law that entitles the holder of an Other Secured Claim to demand or receive payment of such Claim prior to its stated maturity from and after the occurrence of a default. All Allowed Other Secured Claims that are not due and payable on or before the Distribution Date shall, at the Debtors' option in consultation with the Consenting Prepetition First Lien ClaimholdersAgent and Required Lenders, be paid (a) in the ordinary course of business in accordance with the course of practice between the Debtors and such holder with respect to such Claims, or (b) by transfer of the collateral securing such Claim to the holder of such Claim, each in full and complete satisfaction, settlement and release of, and in exchange for, such Claim.

### 5.5. Class 5 – Valley View Downs Unsecured Claims.

(a) If the holders of Valley View Downs Unsecured Claims vote in favor of the Plan pursuant to section 1126 of the Bankruptcy Code, and thus, Class 5 – Valley View Downs Unsecured Claims accepts the Plan, each holder of an Allowed Valley View Downs Unsecured Claim shall, on the Distribution Date, in full satisfaction of such holder's Allowed Valley View Downs Unsecured Claim, receive (i) a Pro Rata Share, in accordance with such holder's Pro Rata Share of the Allowed Valley View Downs Unsecured Claims, of $400,000 aggregate face amount of the NewCo PIK Notes, which NewCo PIK Notes are designated as type "B" in Exhibit "E" to the Disclosure Statement and (ii) a Pro Rata Share, in accordance with that holder's Pro Rata Share of the aggregate of the Allowed First Lien Deficiency Claims, Allowed

Second Lien Claims, Allowed Valley View Downs Unsecured Claims, Allowed General Unsecured Claims, and, if the holders of Second Lien Claims do not vote in favor of the Plan pursuant to section 1126 of the Bankruptcy Code, and thus, Class 3 – Second Lien Claims does not accept the Plan, Allowed Intercompany Claims against Valley View Downs, LP, of Litigation Trust Interests.

(b) If the holders of Valley View Downs Unsecured Claims do not vote in favor of the Plan pursuant to section 1126 of the Bankruptcy Code, and thus, Class 5 – Valley View Downs Unsecured Claims does not accept the Plan, each holder of an Allowed Valley View Downs Unsecured Claim shall, Each holder of an Allowed Valley View Downs Unsecured Claim shall, on the Distribution Date, in full satisfaction of such holder's Allowed Valley View Downs Unsecured Claim, receive (i) a) a Pro Rata Share, in accordance with that such holder's Pro Rata Share of the aggregate of the Allowed First Lien Deficiency Claims, Allowed Second Lien Claims, Allowed Valley View Downs Unsecured Claims and Allowed Intercompany Claims against Valley View Downs, LP, of the Cash proceeds remaining after payment of Allowed L/C Claims, Allowed Administrative Expense Claims and Allowed Intercompany Financing Claims against Valley View Downs, LP of (y i) any Assets of Valley View Downs, LP, and (z ii) any sale that results in the transfer, directly or indirectly, of any Asset of Valley View Downs, LP, including through the sale of an Equity Interest, to the extent, in the case of each of clauses (y i) and (z ii), the Assets of Valley View Downs, LP are not collateral or proceeds of collateral subject to the prepetition liens and security interests of the Prepetition First Lien Agent, and (ii b) a Pro Rata Share, in accordance with that such holder's Pro Rata Share of the aggregate of the Allowed First Lien Deficiency Claims, Allowed Second Lien Claims, Allowed Valley View Downs Unsecured Claims, Allowed General Unsecured Claims not paid in Cash and Allowed Intercompany Claims against Valley View Downs, LP, of Litigation Trust Interests. For purposes of determining and making Plan Distributions pursuant to this Section 5.5(b), the Assets of Valley View Downs, LP shall include the Cash received by Valley View Downs, LP upon expiration of the Existing L/C or release, cancellation and return of the Existing L/C by the Pennsylvania Gaming Control Board to the L/C Issuer, and the "Cash proceeds" of the Assets of Valley View Downs, LP shall also include that Cash; provided, however, that if the holders of Valley View Downs Unsecured Claims vote in favor of the Plan pursuant to section 1126 of the Bankruptcy Code, and thus, Class 5 – Valley View Downs Unsecured Claims accepts the Plan, each holder of an Allowed Valley View Downs Unsecured Claim shall, in full satisfaction of such holder's Allowed Valley View Downs Unsecured Claim, receive (y) the lesser of 50% of such holder's Allowed Valley View Downs Unsecured Claim or $1.5 million in Cash, on the Distribution Date, and (z) a Pro Rata Share, in accordance with such holder's Pro Rata Share of the aggregate of the Allowed First Lien Deficiency Claims, Allowed Second Lien Claims, Allowed Valley View Downs Unsecured Claims not paid in Cash, Allowed General Unsecured Claims not paid in Cash and, if the holders of Second Lien Claims do not vote in favor of the Plan pursuant to section 1126 of the Bankruptcy Code, and thus, Class 3 – Second Lien Claims does not accept the Plan, Allowed Intercompany Claims against Valley View Downs, LP, of Litigation Trust Interests on the Distribution Date. **Any holder of an Allowed Valley View Downs Unsecured Claim that makes the Convenience Class Election but would receive a greater distribution as a result of the treatment of such holder's Claim as a Class 5 – Valley View Downs Unsecured Claim had such holder not made the Convenience**

**Class Election, shall be treated as a Class 5 – Valley View Downs Unsecured Claim notwithstanding such election**.

### 5.6. Class 6 – General Unsecured Claims.

Each holder of an Allowed General Unsecured Claim shall, ~~on the Distribution Date,~~ in full satisfaction of such holder's Allowed General Unsecured Claim, receive (a) the lesser of 50% of such holder's Allowed General Unsecured Claim or $650,000 in Cash, on the Distribution Date, and (b) a Pro Rata Share, in accordance with ~~that~~such holder's Pro Rata Share of the aggregate of the Allowed First Lien Deficiency Claims, Allowed Second Lien Claims, Allowed ~~General Unsecured Claims, Allowed~~ Valley View Downs Unsecured Claims not paid in Cash, Allowed General Unsecured Claims not paid in Cash and, if the holders of Second Lien Claims do not vote in favor of the Plan pursuant to section 1126 of the Bankruptcy Code, and thus, Class 3 – Second Lien Claims does not accept the Plan, and/or if the holders of Valley View Downs Unsecured Claims do not vote in favor of the Plan pursuant to section 1126 of the Bankruptcy Code, and thus, Class 5 – Valley View Downs Unsecured Claims does not accept the Plan, Allowed Intercompany Claims against Valley View Downs, LP, of Litigation Trust Interests on the Distribution Date.  **Any holder of an Allowed General Unsecured Claim that makes the Convenience Class Election but would receive a greater distribution as a result of the treatment of such holder's Claim as a Class 6 – General Unsecured Claims had such holder not made the Convenience Class Election, shall be treated as a Class 6 – General Unsecured Claim notwithstanding such election**.

### 5.7. Class 7 – Convenience Claims.

Each holder of an Allowed Convenience Claim shall, on the Distribution Date in full satisfaction of such holder's Allowed Convenience Claim, receive a single Cash payment equal to 100 percent of its Allowed Convenience Claim.

### 5.8. Class 8 – Intercompany Claims.

On the Effective Date, all Intercompany Claims shall be cancelled, and the holders of such Intercompany Claims shall receive no ~~distribution~~Plan Distribution on account of such Claims; provided, however, that if the holders of Second Lien Claims do not vote in favor of the Plan pursuant to section 1126 of the Bankruptcy Code, and thus, Class 3 – Second Lien Claims does not accept the Plan, and/or if the holders of Valley View Downs Unsecured Claims do not vote in favor of the Plan pursuant to section 1126 of the Bankruptcy Code, and thus, Class 5 – Valley View Downs Unsecured Claims does not accept the Plan, each holder of an Allowed Intercompany Claim against Valley View Downs, LP, shall, in the event the Bankruptcy Court determines by a Final Order that any Assets of Valley View Downs, LP are not collateral or proceeds of collateral subject to the prepetition liens and security interests of the Prepetition First Lien Agent or Prepetition Second Lien Agent, maintain such Claim and receive on the Distribution Date, in full satisfaction thereof, (~~i~~a) a Pro Rata Share, in accordance with such holder's Pro Rata Share of the aggregate of Allowed First Lien Deficiency Claims, Allowed Second Lien Claims, Allowed Valley View Downs Unsecured Claims not paid in Cash and Allowed Intercompany Claims against Valley View Downs, LP, of the Cash proceeds remaining after payment in full of Allowed L/C Claims, Allowed Administrative Expense Claims and

Allowed Intercompany Financing Claims against Valley View Downs, LP, of (~~y~~i) any Assets of Valley View Downs, LP, and (~~z~~ii) any sale that results in the transfer, directly or indirectly, of any Asset of Valley View Downs, LP, including through the sale of an Equity Interest, to the extent, in case of each of clauses (~~y~~i) and (~~z~~ii), the Assets of Valley View Downs, LP are not collateral or proceeds of collateral subject to the prepetition liens and security interests of the Prepetition First Lien Agent, and (~~ii~~b) a Pro Rata Share, in accordance with that holder's Pro Rata Share of the aggregate of the Allowed First Lien Deficiency Claims, Allowed Second Lien Claims, Allowed Valley View Downs Unsecured Claims not paid in Cash, Allowed General Unsecured Claims not paid in Cash and Allowed Intercompany Claims against Valley View Downs, LP, of Litigation Trust Interests; provided further, however, that, in the event the holders of Valley View Downs Unsecured Claims vote in favor of the Plan pursuant to section 1126 of the Bankruptcy Code, and thus, Class 5 – Valley View Downs Unsecured Claims accepts the Plan, but holders of Second Lien Claims do not vote in favor of the Plan pursuant to section 1126 of the Bankruptcy Code, and thus, Class 3 – Second Lien Claims does not accept the Plan, the failure of Class 3 – Second Lien Claims to accept the Plan and the participation by holders of Allowed Intercompany Claims against Valley View Downs, LP in the Plan Distributions described in this Section 5.8 shall not impair or diminish the Plan Distributions of Cash to be made to the holders of Allowed Valley View Downs Unsecured Claims pursuant to Section 5.5, in the event such holders vote in favor of the Plan pursuant to section 1126 of the Bankruptcy Code, and thus, Class 5 – Valley View Downs Unsecured Claims accepts the Plan.  For purposes of determining and making Plan Distributions pursuant to this Section 5.8, the Assets of Valley View Downs, LP shall include the Cash received by Valley View Downs, LP upon expiration of the Existing L/C or release, cancellation and return of the Existing L/C by the Pennsylvania Gaming Control Board to the L/C Issuer, and the "Cash proceeds" of the Assets of Valley View Downs, LP shall also include that Cash.

### 5.9. <u>Class 9 – Equity Interests.</u>

Equity Interests shall be cancelled and the holders of such Equity Interests shall receive no ~~distribution on account of such interests.~~ Plan Distribution on account of such interests.

### 5.10. Allowance of Valley View Downs Unsecured Claims of PR Valley View Downs, L.P. and PREIT-RUBIN, Inc.

The Valley View Downs Unsecured Claim of PR Valley View Downs, L.P. in the filed amount of $58,186,857.02 and the Valley View Downs Unsecured Claim of PREIT-RUBIN, Inc. in the filed amount of $3 million, shall be Allowed for purposes of Plan Distributions by the Confirmation Order as a single Valley View Downs Unsecured Claim in an amount equal to $61,186,857.02.  The allowance of PR Valley View Downs, L.P.'s and PREIT-RUBIN, Inc.'s Valley View Downs Unsecured Claims as a single Valley View Downs Unsecured Claim in an amount equal to $61,186,857.02 for the above stated purposes is not, however, a condition precedent to the treatment of PR Valley View Downs, L.P.'s and PREIT-RUBIN, Inc.'s Valley View Downs Unsecured Claims as a single Valley View Downs Unsecured Claim (i.e., to receive the lesser of 50% of their single Allowed Valley View Downs Unsecured Claim or $1.5 million in Cash, on the Distribution Date) or as a Convenience Claim in the event PR Valley View Downs, L.P. and PREIT-RUBIN, Inc. make the Convenience Class

Election.  In the event the Effective Date does not occur, the allowance of PR Valley View Downs, L.P.'s and PREIT-RUBIN, Inc.'s Valley View Downs Unsecured Claims as a single Valley View Downs Unsecured Claim in an amount equal to $61,186,857.02 for purposes of Plan Distributions shall be null and void and shall not be deemed an admission as to the amount, character or nature of PR Valley View Downs, L.P.'s and PREIT-RUBIN, Inc.'s Valley View Downs Unsecured Claims.

# ARTICLE VI.

## PROVISIONS FOR TREATMENT
## OF UNCLASSIFIED CLAIMS UNDER THE PLAN

**6.1. <u>Unclassified Claims</u>.**

Administrative Expense Claims and Priority Tax Claims are treated in accordance with sections 1129(a)(9)(A) and 1129(a)(9)(C) of the Bankruptcy Code, respectively. Administrative Expense Claims, Intercompany Financing Claims and Priority Tax Claims are not designated as classes of Claims for the purposes of the Plan or for the purposes of sections 1123, 1124, 1125, 1126 or 1129 of the Bankruptcy Code.

**6.2. <u>Treatment of Administrative Expense Claims and Intercompany Financing Claims</u>.**

All Administrative Expense Claims and Intercompany Financing Claims shall be treated as follows:

(a) <u>Time for Filing Administrative Expense Claims</u>.

The holder of an Administrative Expense Claim, other than (i) a Fee Claim, (ii) a liability incurred and payable after the Petition Date in the ordinary course of business by a Debtor (and not past due), (iii) a Section 503(b)(9) Claim or (iv) an Administrative Expense Claim that has been Allowed on or before the Effective Date, must file with the Bankruptcy Court and serve on the Debtors, the Committee and the U.S. Trustee, notice of such Administrative Expense Claim within forty (40) days after service of Notice of Confirmation or such other specific date as may be established by the Bankruptcy Court.  Such notice must include at a minimum (w) the name of the Debtor(s) which are purported to be liable for the Claim, (x) the name of the holder of the Claim, (y) the amount of the Claim and (z) the basis of the Claim (including any documentation evidencing or supporting such Claim).  **THE FAILURE TO FILE A NOTICE OF AN ADMINISTRATIVE EXPENSE CLAIM ON OR BEFORE THE ADMINISTRATIVE EXPENSE CLAIMS BAR DATE AND THE FAILURE TO SERVE SUCH NOTICE TIMELY AND PROPERLY SHALL RESULT IN THE ADMINISTRATIVE EXPENSE CLAIM BEING FOREVER BARRED, DISALLOWED AND DISCHARGED WITHOUT FURTHER ORDER OF THE BANKRUPTCY COURT.**

(b) <u>Time for Filing Fee Claims</u>.

Each Professional who holds or asserts a Fee Claim shall be required to file with the Bankruptcy Court, and serve on all parties required to receive notice, a Fee Application

within forty-five (45) days after the Effective Date or such other specific date as may be established by the Bankruptcy Court. **THE FAILURE TO FILE TIMELY AND SERVE SUCH FEE APPLICATION SHALL RESULT IN THE FEE CLAIM BEING FOREVER BARRED AND DISCHARGED.**

      (c)      <u>Time for Filing Section 503(b)(9) Claims</u>.

      Each holder of a Section 503(b)(9) Claim was required to file with the Claims Agent a request for allowance of such Section 503(b)(9) Claim prior to the Section 503(b)(9) Bar Date. **THE FAILURE TO FILE SUCH REQUEST BY THE SECTION 503(B)(9) BAR DATE SHALL RESULT IN THE SECTION 503(B)(9) CLAIM BEING DEEMED DISALLOWED AS AN ADMINISTRATIVE EXPENSE CLAIM.** Such disallowance does not prevent such Claim from being Allowed as a Claim other than as an Administrative Expense Claim to the extent otherwise allowable.

      (d)      <u>Allowance of Administrative Expense Claims, Fee Claims and Section 503(b)(9) Claims</u>.

      An Administrative Expense Claim (other than a Fee Claim or Section 503(b)(9) Claim) with respect to which notice has been properly filed and served pursuant to <u>Section 6.2(a)</u>, or a Section 503(b)(9) Claim with respect to which a request for allowance has been properly filed and served pursuant to <u>Section 6.2(c)</u>, shall become an Allowed Administrative Expense Claim if no objection is filed within sixty (60) days after the later of (i) the Effective Date or (ii) the date of service of the applicable notice of Administrative Expense Claim or such later date as may be approved by the Bankruptcy Court on motion of a party in interest, without notice or a hearing. If an objection is filed within such 60-day period (or any extension thereof), the Administrative Expense Claim shall become an Allowed Administrative Expense Claim only to the extent allowed by Final Order. A Fee Claim in respect of which a Fee Application has been properly filed and served pursuant to <u>Section 6.2(b)</u> shall become an Allowed Administrative Expense Claim only to the extent allowed by Final Order.

      (e)      <u>Payment of Allowed Administrative Expense Claims</u>.

      On the Distribution Date, each holder of an Allowed Administrative Expense Claim shall receive in full satisfaction of such Claims (i) the amount of such holder's Allowed Administrative Expense Claim in one Cash payment or (ii) such other treatment as may be agreed upon in writing by the Debtors and such holder; <u>provided</u> that such treatment shall not provide a return to such holder having a present value as of the Effective Date in excess of such holder's Allowed Administrative Expense Claim; <u>provided</u> <u>further</u>, that an Administrative Expense Claim representing a liability incurred in the ordinary course of business of the Debtors may be paid at the Debtors' election in the ordinary course of business.

      (f)      <u>Intercompany Financing Claims</u>.

      All Intercompany Financing Claims shall, notwithstanding the occurrence of the Effective Date, remain outstanding and be retained by the Debtors or their successors under the Plan or be paid in full in Cash on the Effective Date.

MIAMI 896127 (2K)

**6.3. <u>Treatment of Priority Tax Claims.</u>**

Each holder of an Allowed Priority Tax Claim shall receive in full satisfaction of such holder's Allowed Priority Tax Claim, (a) on the Distribution Date, the amount of such holder's Allowed Priority Tax Claim in Cash, or (b) such other treatment as may be agreed upon in writing by such holder; <u>provided</u> that such agreed-upon treatment may not provide such holder with a return having a present value as of the Effective Date that is greater than the amount of such holder's Allowed Priority Tax Claim. The Confirmation Order shall enjoin any holder of an Allowed Priority Tax Claim from commencing or continuing any action or proceeding against any responsible person or officer of the Debtors that otherwise would be liable to such holder for payment of a Priority Tax Claim so long as the Debtors are in compliance with this <u>Section 6.3</u>. So long as the holder of an Allowed Priority Tax Claim is enjoined from commencing or continuing any action or proceeding against any responsible person or officer under this <u>Section 6.3</u> or pursuant to the Confirmation Order, the statute of limitations for commencing or continuing any such action or proceeding shall be tolled.

**ARTICLE VII.**

**ACCEPTANCE OR REJECTION OF THE PLAN; EFFECT OF REJECTION BY ONE OR MORE CLASSES OF CLAIMS OR EQUITY INTERESTS**

**7.1. <u>Classes Entitled to Vote.</u>**

<u>Except</u> for Class 1 – Priority Non-Tax Claims, Class 4 – Other Secured Claims and Class 9 – Equity Interests, all classes of Claims and Equity Interests are entitled to vote on the Plan.

**7.2. <u>Class Acceptance Requirement.</u>**

A class of Claims shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims in such class that have voted on the Plan. A class of Equity Interests shall have accepted the Plan if it is accepted by holders of at least two-thirds (2/3) in amount of the Equity Interests in such class that actually vote on the Plan.

**7.3. <u>Tabulation of Votes on a Non-Consolidated Basis.</u>**

The Balloting Agent will tabulate all votes on the Plan on a non-consolidated basis by class and by Debtor for the purpose of determining whether the Plan satisfies sections 1129(a)(8) and/or (10) of the Bankruptcy Code with respect to each Debtor.

**7.4. <u>Cramdown.</u>**

If all applicable requirements for confirmation of the Plan are met as set forth in section 1129(a) of the Bankruptcy Code, <u>except</u> subsection (8) thereof, the Plan shall be treated as a request that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code, notwithstanding the failure to satisfy the requirements of section

1129(a)(8), on the basis that the Plan is fair and equitable and does not discriminate unfairly with respect to each class of Claims that is impaired under, and has not accepted, the Plan.

### 7.5. Confirmation of All Cases.

Except as provided in Section 17.18 and Section 17.27, the Plan shall not be deemed to have been confirmed unless and until the Plan has been confirmed as to each of the Debtors.

# ARTICLE VIII.

# MEANS FOR IMPLEMENTATION OF THE PLAN

### 8.1. Operations Between the Confirmation Date and the Effective Date.

Through the Effective Date, the Debtors shall continue to operate their businesses as Debtors-in-Possession, subject to the oversight of the Bankruptcy Court as provided in the Bankruptcy Code, the Bankruptcy Rules and all orders of the Bankruptcy Court that are then in full force and effect.

### 8.2. Certain Transactions On or Prior to the Effective Date.

(a) Formation of NewCo, New Centaur, LLC and Hoosier Park, LLC.

Pursuant to section 1123(a)(5) of the Bankruptcy Code, on or prior to the Effective Date, (i) Centaur, LLC shall form NewCo as a Delaware limited liability company, which shall be governed by the terms of the NewCo Operating Agreement, (ii) NewCo shall form New Centaur, LLC as a Delaware or Indiana limited liability company, and (iii) New Centaur, LLC shall form Hoosier Park, LLC as an Indiana limited liability company. NewCo shall file an election to be treated as an association taxable as a corporation for federal income tax purposes on, and effective as of, the date of its formation, regardless of whether that occurs on or before the Effective Date.

(b) Issuance of NewCo Membership Interests to Centaur, LLC, New Centaur, LLC Membership Interests to NewCo and Membership Interests of Hoosier Park, LLC to New Centaur, LLC.

Pursuant to section 1123(a)(5) of the Bankruptcy Code, on the Effective Date, (i) NewCo shall issue the NewCo Membership Interests to Centaur, LLC, (ii) New Centaur, LLC shall issue the New Centaur, LLC Membership Interests to NewCo, and (iii) Hoosier Park, LLC shall issue 100 percent of its membership interests to New Centaur, LLC. Upon issuance of (x) the NewCo Membership Interests to Centaur, LLC, NewCo shall be a direct subsidiary of Centaur, LLC, (y) the New Centaur, LLC Membership Interests to NewCo, New Centaur, LLC shall be a direct subsidiary of NewCo, and (z) 100 percent of Hoosier Park, LLC's membership interests to New Centaur, LLC, Hoosier Park, LLC shall be a direct subsidiary of New Centaur, LLC.

(c)     Restructuring Transactions.

Pursuant to ~~section~~sections 365 and 1123(a)(5) of the Bankruptcy Code, on the Effective Date, the Debtors or the Reorganized Debtors, as the case may be, shall take such actions as may be necessary or appropriate to effect the following:

(i)      the transfer by Centaur, LLC of all of its Assets (other than the NewCo Membership Interests) but none of its obligations or liabilities, including, but not limited to, any obligations or liabilities under the Original Debt Documents, to NewCo followed by the transfer by NewCo of all of those Assets to New Centaur, LLC pursuant to section 1123(a)(5)(B) of the Bankruptcy Code;

(ii)     the issuance by Reorganized HP Dining & Entertainment, LLC of 100 percent of its membership interests to Hoosier Park, LLC;

(iii)    the transfer by Hoosier Park, L.P. of all of its Assets to Hoosier Park, LLC pursuant to section 1123(a)(5)(B) of the Bankruptcy Code followed by the dissolution of Hoosier Park, L.P.;

(iv)    the transfer by Centaur Indiana, LLC of all of its Assets, if any, to Hoosier Park, LLC pursuant to section 1123(a)(5)(B) of the Bankruptcy Code followed by the dissolution of Centaur Indiana, LLC;

(v)     the transfer by Centaur Racing, LLC of all of its Assets, if any, to Hoosier Park, LLC pursuant to section 1123(a)(5)(B) of the Bankruptcy Code followed by the dissolution of Centaur Racing, LLC;

(vi)    the issuance by Reorganized Centaur PA Land, LP of 11 percent of its partnership interests to Reorganized Centaur PA Land General Partner, LP, as general partner, and 89 percent of its partnership interests to Reorganized VVD Properties, LP, as limited partner;

(vii)   the issuance by Reorganized Centaur PA Land General Partner, LP of 0.1 percent of its partnership interests to Reorganized Centaur PA Land Management, LLC, as general partner, and 99.9 percent of its partnership interests to Reorganized VVD Properties, LP, as limited partner;

(viii)  the issuance by Reorganized Centaur PA Land Management, LLC of 100 percent of its membership interests to Reorganized VVD Properties, LP;

(ix)    the issuance by Reorganized VVD Properties, LP of 0.1 percent of its partnership interests to Reorganized VVD Properties General Partner, LLC, as general partner, and 99.9 percent of its partnership interests to Reorganized Centaur Pennsylvania, LLC, as limited partner;

(x)     the issuance by Reorganized VVD Properties General Partner, LLC of 100 percent of its membership interests to Reorganized Centaur Pennsylvania, LLC;

(xi)　the issuance by Reorganized Valley View Downs, LP of 1 percent of its partnership interests to Reorganized Valley View Downs GP, LLC, as general partner, and 99 percent of its partnership interests to Reorganized Centaur Pennsylvania, LLC, as limited partner;

(xii)　the issuance by Reorganized Valley View Downs GP, LLC of 100 percent of its membership interests to Reorganized Centaur Pennsylvania, LLC;

(xiii)　the issuance by Reorganized Centaur Pennsylvania, LLC of 100 percent of its membership interests to New Centaur, LLC;

(xiv)　the issuance by Reorganized Centaur Colorado, LLC of 100 percent of its membership interests to New Centaur, LLC;

(xv)　the dissolution of Centaur, LLC following NewCo, New Centaur, LLC, Hoosier Park, LLC and the Reorganized Debtors' entry into the First Lien Take Back Documents and Exit Financing pursuant to Section 8.2(d), NewCo's issuance of the NewCo PIK Notes, the Stapled NewCo PIK Notes and NewCo Warrants pursuant to Section 8.2(e), Centaur, LLC's transfer of the NewCo Membership Interests to Existing Management pursuant to Section 8.2(f) and the cancellation and annulment of the Original Debt Documents pursuant to Section 8.4;

(xvi)　the execution and delivery of appropriate agreements or other documents of formation, incorporation, merger, consolidation, dissolution or reorganization containing terms that are consistent with the terms of the Plan and that satisfy the requirements of applicable law;

(xvii)　the execution and delivery of appropriate instruments of transfer, assignment, assumption or delegation of any property, right, liability, duty or obligation on terms consistent with the terms of the Plan;

(xviii)　the amendment and restatement of constituent documents of the Reorganized Debtors in accordance with the terms of the Plan;

(xix)　the filing of appropriate organizational documents with the appropriate governmental authorities under applicable law; and

(xx)　all other actions that a Debtor or Reorganized Debtor determines are necessary or appropriate;

provided, however, that in each case the documents necessary to effect such actions shall be in form and substance satisfactory to the ConsentingPrepetition First Lien ClaimholdersAgent and Required Lenders.

(d)　Entry into First Lien Take Back Documents and Exit Financing.

Pursuant to section 1123(a)(5) of the Bankruptcy Code, on the Effective Date and at the direction of Centaur, LLC, NewCo, New Centaur, LLC, Hoosier Park, LLC and the

Reorganized Debtors shall be authorized, without further act or action under applicable law, regulation, order or rule, to enter into the First Lien Take Back Documents and Exit Financing. NewCo, New Centaur, LLC, Hoosier Park, LLC and the Reorganized Debtors are hereby authorized to enter into such agreements, collateral documents and other documents, and issue such instruments, <u>including</u>, without limitation, promissory notes, as may be necessary to effectuate their entry into such documents, in form and substance satisfactory to the ~~Consenting~~<u>Prepetition</u> First Lien ~~Claimholders~~<u>Agent and Required Lenders</u>.

  (e)  <u>Issuance of NewCo PIK Notes, Stapled NewCo PIK Notes</u> and NewCo Warrants.

    Pursuant to section 1123(a)(5) of the Bankruptcy Code, on the Effective Date and at the direction of Centaur, LLC, NewCo shall be authorized, without further act or action under applicable law, regulation, order or rule, to issue (i) ~~the~~ NewCo PIK Notes ~~designated as type "A" in Exhibit "E" to the Disclosure Statement~~ to holders of Allowed First Lien Claims, (ii) ~~the~~ NewCo PIK Notes ~~designated as type "B" in Exhibit "E" to the Disclosure Statement~~ to holders of Allowed Second Lien ~~Claims and Allowed Valley View Downs Unsecured~~ Claims, but only in the event the holders of Allowed Second Lien Claims ~~and Allowed Valley View Downs Unsecured Claims~~ are entitled to receive ~~such~~ NewCo PIK Notes in accordance with ~~Section 5.3 and Section 5.5, respectively, and (iii) the~~<u>5.3, (iii) Stapled NewCo PIK Notes to holders of Allowed First Lien Claims, and (iv)</u> NewCo Warrants to holders of the Allowed First Lien Claims, pursuant to the Plan. NewCo is hereby authorized to enter into such agreements and documents as may be necessary to effectuate the issuance of the NewCo PIK Notes<u>, Stapled NewCo PIK Notes</u> and NewCo Warrants, in form and substance satisfactory to the ~~Consenting~~<u>Prepetition</u> First Lien ~~Claimholders~~<u>Agent and Required Lenders</u>.

  (f)  <u>Transfer of NewCo Membership Interests.</u>

    Pursuant to section 1123(a)(5) of the Bankruptcy Code, on the Effective Date and only in compliance with state horse racing and gaming laws and regulations, Centaur, LLC shall be authorized, without further act or action, under applicable law, regulation, order or rule, to transfer the NewCo Membership Interests to Existing Management and the members of the Board of Managers in a manner and amount satisfactory to the ~~Consenting~~<u>Prepetition</u> First Lien ~~Claimholders~~<u>Agent and Required Lenders</u>. Centaur, LLC, NewCo and the Reorganized Debtors are hereby authorized to enter into such agreements as are necessary to effectuate the issuance of the NewCo Membership Interests, in form and substance satisfactory to the ~~Consenting~~<u>Prepetition</u> First Lien ~~Claimholders~~<u>Agent and Required Lenders</u>.

  (g)  <u>Sale of Partnership Interests of Reorganized Valley View Downs, LP, Reorganized Centaur PA Land General Partner, LP and Reorganized Centaur PA Land, LP and Membership Interests of Reorganized Centaur PA Land Management, LLC or, Alternatively, Withdrawal of the Pennsylvania Gaming License Application.</u>

    On the Effective Date (or as otherwise provided in the Sale Documents), pursuant to the Sale Documents, the Winning Competitive Bidder shall purchase the partnership interests of Reorganized Valley View Downs, LP, Reorganized Centaur PA Land General Partner, LP and Reorganized Centaur PA Land, LP and membership interests of Reorganized Centaur PA Land

MIAMI 896127 (2K)

Management, LLC.  The transfer of those interests to the Winning Competitive Bidder pursuant to the Sale Documents will be in accordance with ~~the Bidding Procedures and subject to approval by the Bankruptcy Court at the Sale Hearing~~, and pursuant to, the Sale Order.

Upon the closing of the transfer of the partnership interests of Reorganized Valley View Downs, LP, Reorganized Centaur PA Land General Partner, LP and Reorganized Centaur PA Land, LP and membership interests of Reorganized Centaur PA Land Management, LLC to the Winning Competitive Bidder, the proceeds shall be deemed attributable to the Assets of Reorganized Valley View Downs, LP, Reorganized Centaur PA Land General Partner, LP, Reorganized Centaur PA Land, LP and Reorganized Centaur PA Land Management, LLC and delivered to Centaur Pennsylvania, LLC or Reorganized Centaur Pennsylvania, LLC, as the case may be, and deposited by Centaur Pennsylvania, LLC or Reorganized Centaur Pennsylvania, LLC, as the case may be, in a segregated account established by the Disbursing Agent or other entity appointed to make Plan Distributions, wherein such proceeds shall be held by such Disbursing Agent or other entity for the benefit of, and solely for the purpose of making Plan Distributions to, holders of Claims against Valley View Downs, LP, Centaur PA Land General Partner, LP, Centaur PA Land, LP and Centaur PA Land Management, LLC.  Notwithstanding anything to the contrary in the Sale Order, (i) any and all Claims of any third parties and/or creditors against the Estates of Reorganized Valley View Downs, LP, Reorganized Centaur PA Land General Partner, LP, Reorganized Centaur PA Land, LP and Reorganized Centaur PA Land Management, LLC and/or any rights of such third parties and/or creditors to receive distributions from or on account of the Assets of Reorganized Valley View Downs, LP, Reorganized Centaur PA Land General Partner, LP, Reorganized Centaur PA Land, LP and Reorganized Centaur PA Land Management, LLC, including but not limited to, any Challenges which relate to Reorganized Valley View Downs, LP, Reorganized Centaur PA Land General Partner, LP, Reorganized Centaur PA Land, LP and Reorganized Centaur PA Land Management, LLC and/or their Assets shall not be extinguished by the transfer of the partnership interests of Reorganized Valley View Downs, LP, Reorganized Centaur PA Land General Partner, LP and Reorganized Centaur PA Land, LP and membership interests of Reorganized Centaur PA Land Management, LLC to the Winning Competitive Bidder but shall instead be fully preserved and attach to the proceeds and (ii) the proceeds shall be distributed to the holders of such Claims against Reorganized Valley View Downs, LP, Reorganized Centaur PA Land General Partner, LP, Reorganized Centaur PA Land, LP and Reorganized Centaur PA Land Management, LLC in accordance with the Plan or as otherwise ordered by the Bankruptcy Court.

Upon the closing of the transfer of the partnership interests of Reorganized Valley View Downs, LP, Reorganized Centaur PA Land General Partner, LP and Reorganized Centaur PA Land, LP and membership interests of Reorganized Centaur PA Land Management, LLC to the Winning Competitive Bidder and the receipt by Valley View Downs, LP of the distribution of the $50 million of Cash previously delivered to the L/C Issuer as collateral and security for Valley View Downs, LP's obligations in connection with the Existing L/C, upon the termination of such Existing L/C, that Cash received shall be ~~deposited into an account in accordance with the terms of the Sale Order~~ treated in accordance with the Final Cash Collateral Order; provided, however, that the further order of the Bankruptcy Court referred to in paragraph 10.a of the Final Cash Collateral Order shall be sought on motion and notice to third parties prior to such receipt.

The allocation of the proceeds between the Estates of Reorganized Valley View Downs, LP, Reorganized Centaur PA Land General Partner, LP, Reorganized Centaur PA Land, LP and Reorganized Centaur PA Land Management, LLC and/or any particular Assets of Reorganized Valley View Downs, LP, Reorganized Centaur PA Land General Partner, LP, Reorganized Centaur PA Land, LP and Reorganized Centaur PA Land Management, LLC shall be resolved by further order of the Bankruptcy Court.

Upon the closing of the transfer of the partnership interests of Reorganized Valley View Downs, LP, Reorganized Centaur PA Land General Partner, LP and Reorganized Centaur PA Land, LP and membership interests of Reorganized Centaur PA Land Management, LLC to the Winning Competitive Bidder, and subject to the occurrence of the Effective Date of the Plan, (i) the transfer of the partnership interests of Reorganized Valley View Downs, LP, Reorganized Centaur PA Land General Partner, LP and Reorganized Centaur PA Land, LP and membership interests of Reorganized Centaur PA Land Management, LLC to the Winning Competitive Bidder shall take title to and possession of the interests transferred.  Except as provided in the Plan, the transfer of title to those interests shall be be a legal, valid and effective transfer thereof to the Winning Competitive Bidder, and shall vest in the Winning Competitive Bidder all right, title and interest in the partnership interests of Reorganized Valley View Downs, LP, Reorganized Centaur PA Land General Partner, LP and Reorganized Centaur PA Land, LP and membership interests of Reorganized Centaur PA Land Management, LLC in accordance with the terms and conditions of the Sale Documents (as modified by the Sale Order) free and clear of liens pursuant to section (other than those imposed by state and federal securities laws and applicable gaming laws) to the maximum extent permitted by sections 105(a) and 1123 of the Bankruptcy Code, and (ii) all (a) prepetition and post-petition Claims against Valley View Downs, LP, Centaur PA Land General Partner, LP, Centaur PA Land, LP and Centaur PA Land Management, LLC that are subject to discharge pursuant to section 1141 of the Bankruptcy Code, and (b) Administrative Expense Claims against Valley View Downs, LP, Centaur PA Land General Partner, LP, Centaur PA Land, LP and Centaur PA Land Management, LLC, shall be discharged and released as against Valley View Downs, LP, Centaur PA Land General Partner, LP, Centaur PA Land, LP and Centaur PA Land Management, LLC, but shall attach to the proceeds of the sale of the partnership interests of Reorganized Valley View Downs, LP, Reorganized Centaur PA Land General Partner, LP and Reorganized Centaur PA Land, LP and membership interests of Reorganized Centaur PA Land Management, LLC.

In the absence of identification of a Winning Competitive Bidder pursuant to the Bidding Procedures at the Sale Hearing and/or a transfer of the partnership interests of Reorganized Valley View Downs, LP, Reorganized Centaur PA Land General Partner, LP and Reorganized Centaur PA Land, LP and membership interests of Reorganized Centaur PA Land Management, LLC to the Winning Competitive Bidder, Valley View Downs, LP or Reorganized Valley View Downs, LP, as the case may be, will (i) withdraw the Pennsylvania Gaming License Application, (ii) cause the release, cancellation and return to the L/C Issuer of the Existing L/C and (iii) following payment of any L/C Claims from the Cash supporting the Existing L/C and disbursement by the L/C Issuer of the remaining Cash supporting the Existing L/C to Valley View Downs, LP or Reorganized Valley View Downs, LP, as the case may be, distribute that Cash in accordance herewith.

MIAMI 896127 (2K)

**8.3. Corporate Action.**

(a)     The entry of the Confirmation Order shall constitute authorization for the Debtors and the Reorganized Debtors, as the case may be, to take or cause to be taken all corporate actions necessary or appropriate to implement all provisions of, and to consummate, the Plan prior to, on and after the Effective Date and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court without further approval, act or action under any applicable law, order, rule or regulation, including, without limitation, any action required by the officers, members, managers, or general or limited partners of the Debtors and the Reorganized Debtors, as the case may be, including, among other things, (i) the adoption or amendment of any organizational documents; (ii) the termination and cancellation of any Original Debt Documents or any other outstanding instrument, document or agreement evidencing Debt Claims as required by the Plan; (iii) the issuance of the Plan Securities; (iv) all transfers of Assets that are to occur pursuant to the Plan; (v) the incurrence of all obligations contemplated by the Plan and the making of all Plan Distributions; (vi) the reinstatement and assumption of all indemnity obligations to the officers, members, managers and general and limited partners of the Debtors; (vii) the implementation of all settlements and compromises as set forth in or contemplated by the Plan; (viii) taking of all actions to preserve and provide for the prosecution of the Avoidance Actions; and (ix) entering into any and all transactions, contracts or arrangements permitted by applicable law, order, rule or regulation; provided, however, that such actions taken following entry of the Confirmation Order but prior to the Effective Date shall be agreeable to the ~~Consenting~~Prepetition First Lien ~~Claimholders~~Agent and Required Lenders and such actions taken on or after the Effective Date shall be agreeable to the Board of Managers.

(b)     The officers of the Debtors and the Reorganized Debtors, as the case may be, are authorized and directed to do all things and to execute and deliver all agreements, documents, instruments, notices and certificates as are contemplated by the Plan and to take all necessary action required in connection therewith, in the name of and on behalf of the Debtors.  All obligations of the Debtors to indemnify and hold harmless their current and former officers, members, managers, general and limited partners and employees, whether arising under the Debtors' constituent documents, contract, law or equity, shall be fully reinstated and assumed by the Reorganized Debtors upon the occurrence of the Effective Date with the same effect as though such obligations constituted executory contracts that are assumed (or assumed and assigned, as applicable) under section 365 of the Bankruptcy Code, and all such obligations shall be fully enforceable on their terms from and after the Effective Date.  Nothing in the Plan, including Sections 17.1 and 17.2, shall release any obligations of the Debtors to indemnify and hold harmless their current and former officers, members, managers, general and limited partners and employees.  Nothing in the Plan, including Section 17.22, shall enjoin any of the Debtors' current and former officers and employees from asserting any indemnity or hold harmless right against the Debtors, excluding any claim for payment of attorneys' fees arising out of or relating to the Chapter 11 Cases or investigations related thereto, except to the extent such attorneys' fees were incurred in the defense of a Claim that was asserted or the subject of investigation or discovery after the Effective Date and which Claim was released pursuant to Sections 17.1 and 17.2.  The prosecution of any so-indemnified Causes of Action shall, upon the occurrence of the

Effective Date, be enjoined and prohibited, <u>except</u> solely for the purpose of obtaining a recovery from the issuer of any available insurance policy proceeds.

(c)    The constituent documents of NewCo, New Centaur, LLC, Hoosier Park, LLC and the Reorganized Debtors shall, as of the Effective Date, prohibit or be amended to prohibit the issuance of non-voting equity securities by such Entities as required by section 1123(a)(6) of the Bankruptcy Code, <u>provided</u>, <u>however</u>, that following the Effective Date, NewCo, New Centaur, LLC, Hoosier Park, LLC and the Reorganized Debtors shall be entitled to issue non-voting securities, in their sole discretion, and solely in accordance with the terms of the Plan Documents.

### 8.4. <u>Termination of Certain Debt Obligations.</u>

Upon the occurrence of the Effective Date, the Original Debt Documents shall be cancelled and annulled (along with such other documents appurtenant thereto) as to all Debtors other than Centaur Colorado, LLC.  Upon the occurrence of the Centaur Colorado, LLC Effective Date, the Original Debt Documents shall be cancelled and annulled (along with such other documents appurtenant thereto) as to Centaur Colorado, LLC.  Immediately upon the completion of all Plan Distributions to the holders of Allowed First Lien Claims and Allowed Second Lien Claims, Centaur, LLC and the Reorganized Debtors shall be authorized and directed (without further approval, act or other determination under applicable law, regulation, order or rule) to take such action as shall be necessary or appropriate to terminate and extinguish all of the Debtors' obligations under the Original Debt Documents.

### 8.5. <u>Continued Corporate Existence.</u>

<u>Except</u> as provided in <u>Section 8.2(c)</u>, the Debtors shall continue to exist, as Reorganized Debtors, after the Effective Date as separate entities, with all the powers available to such legal entities, in accordance with applicable law and pursuant to their constituent documents, as modified by the Plan.

### 8.6. <u>Re-vesting of Assets.</u>

Upon the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all property of the Debtors' Estates and any property acquired by a Debtor or Reorganized Debtor under the Plan shall vest in the Reorganized Debtors free and clear of all Claims, liens, encumbrances, charges and other interests, <u>except</u> as provided herein.  On and after the Effective Date, each Reorganized Debtor may operate its business and may use, acquire or dispose of property and compromise or settle any Claims without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan or the Confirmation Order.  Without limiting the foregoing, each Reorganized Debtor may pay the charges that it incurs on or after the Effective Date for all fees, disbursements, expenses or related support services of Professionals (<u>including</u> fees relating to the preparation of professional fee applications) without application to, or approval of, the Bankruptcy Court.

### 8.7. <u>Initial Managers and General Partners</u>.

From and after the Effective Date, (a) NewCo shall be managed by the Board of Managers, (b) NewCo shall be the manager of New Centaur, LLC, (c) New Centaur, LLC shall be the manager of all of its subsidiaries that are limited liability companies and (d) the general partners of New Centaur, LLC's subsidiaries that are limited partnerships shall manage such partnerships. Thereafter, the managers and general partners, as applicable, of NewCo, New Centaur, LLC, Hoosier Park, LLC and the Reorganized Debtors shall be selected and determined in accordance with the provisions of the organizational documents of NewCo, New Centaur, LLC, Hoosier Park, LLC and such Reorganized Debtors and applicable law. The members of the Board of Managers shall be as identified in the Plan Supplement.

### 8.8. <u>Officers</u>.

The current officers of each of the Debtors shall continue in such positions after the Effective Date in accordance with their respective employment agreements, if any, or, in the case of the Existing Management, the Long Term Employment Agreements and applicable law. From and after the Effective Date, the officers of each of New Centaur, LLC, Hoosier Park, LLC and the Reorganized Debtors shall be selected and appointed by the respective members, managers and partners of such entities, in accordance with, and pursuant to, the provisions of applicable law and their respective organizational documents. The officers of NewCo shall be as identified in the Plan Supplement.

### 8.9. <u>Retention of Causes of Action/Reservation of Rights</u>.

<u>Except</u> as set forth in <u>Sections 17.1</u> and <u>17.2</u>, all Causes of Action other than the Designated Avoidance Actions belonging to any of the Debtors shall, upon the occurrence of the Effective Date, be vested in New Centaur, LLC, Hoosier Park, LLC and the Reorganized Debtors for the benefit of the Debtors and their Estates. <u>Except</u> as set forth in <u>Sections 17.1</u> and <u>17.2</u>, the rights of New Centaur, LLC, Hoosier Park, LLC and the Reorganized Debtors to commence, prosecute or settle such Causes of Action other than the Designated Avoidance Actions shall be preserved notwithstanding the occurrence of the Effective Date.

**No Person may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against them as any indication that the Debtors will not pursue any and all available Causes of Action against them. The Debtors and the Estates expressly reserve all rights to prosecute any and all Causes of Action against any Person, <u>except</u> as otherwise provided in the Plan.** Unless any Causes of Action against a Person are expressly waived, relinquished, exculpated, released, compromised or settled in the Plan or a Final Order, the Debtors expressly reserve all Causes of Action, for later adjudication, and therefore, no preclusion doctrine, <u>including</u>, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches, shall apply to such Causes of Action upon or after the confirmation or consummation of the Plan.

<u>Except</u> as set forth in <u>Sections 17.1</u> and <u>17.2</u>, nothing in the Plan or the Confirmation Order shall be deemed a waiver or relinquishment of any Claim, Cause of Action,

right of setoff, or other legal or equitable defense which the Debtors had immediately prior to the Petition Date, against or with respect to any Claims left unimpaired by the Plan, except for avoidance actions pursuant to section 547 of the Bankruptcy Code (provided, however, that the Debtors' right to object to any Claim pursuant to section 502(d) of the Bankruptcy Code is fully preserved, including, without limitation, to the right to object to any Claim of a recipient of a transfer that is avoidable under section 547 of the Bankruptcy Code).

### 8.10. Alternative Sale in the Event of Failure to Obtain Regulatory Consents, Authorizations and Approvals.

In the event that the required regulatory authorities have not (i) approved of the Plan, the corporate governance structure contemplated by the Plan and as described in Exhibit "H" to the Disclosure Statement, the transfer of ownership and control of Hoosier Park, L.P.'s gaming facility and gaming license in connection with the consummation of the Plan and the post-Effective Date capital structure of the Reorganized Debtors by the 120th day after the Confirmation Date, which approval shall include, without limitation, a resolution, ruling or finding, as applicable, by the Indiana Gaming Commission that, because of the transfer of ownership and control of Hoosier Park, L.P.'s gaming facility and gaming license in connection with consummation of the Plan and as a result of a bankruptcy or debt adjustment, any subsequent transfer of ownership and control of such gaming facility and gaming license will be exempt from any transfer fee under Section 4-35-5-7 of the Indiana Code or other applicable gaming law or statute, which resolution, ruling or finding shall be in form and substance satisfactory to the Prepetition First Lien Agent and Required Lenders in their sole discretion; or (ii) approved the background checks of, and granted licenses to, the members of the Board of Managers by the 270th day after the Confirmation Date, at the direction of the Prepetition First Lien Agent and Required Lenders, the Debtors shall market for sale, in a good faith and expeditious manner, the Assets of the Debtors (including the Assets of Centaur Colorado, LLC, if any, to the extent such Assets are not then subject to the Fortune Valley Sale Agreement), which sale shall be subject to Bankruptcy Court approval pursuant to section 363 of the Bankruptcy Code.

Upon consummation of such sale, all liens and security interests shall attach solely to the proceeds of such sale with the same validity, priority, force and effect as presently exists with respect to the Assets sold immediately prior to the closing of such sale. The proceeds of such sale (and the proceeds, if any, of the sale of those Assets of Centaur Colorado, LLC pursuant to the Fortune Valley Sale Agreement or such sale pursuant to section 363 of the Bankruptcy Code) shall be distributed in full satisfaction of all liens, security interests and Claims of the Prepetition First Lien Agent, the Prepetition Second Lien Agent and other holders of Claims against the Debtors' Estates up to payment, in accordance with Article V; provided, however, that, in full. In the event that any proceeds of such sale remain after payment in full of all Secured Claims against the Debtors in their order of priority, such excess proceeds shall be distributed strictly in accordance with the "absolute priority rule" without the necessity of confirmation of a plan of reorganization or liquidation pursuant to section 1129 of the Bankruptcy Code. the event the holders of Second Lien Claims vote in favor of the Plan pursuant to section 1126 of the Bankruptcy Code, and thus, Class 3 – Second Lien Claims accepts the Plan, each holder of an Allowed Second Lien Claim shall receive, in lieu of a Pro Rata Share, in accordance with such holder's Pro Rata Share of the Allowed Second Lien Claims, of $3.4

MIAMI 896127 (2K)

million aggregate face amount of the NewCo PIK Notes, Cash in an amount determined by the Bankruptcy Court to be substantially equivalent in value to the NewCo PIK Notes such holder would have otherwise received pursuant to Section 5.3.

# ARTICLE IX.

# LITIGATION TRUST

**9.1.** **Creation of the Litigation Trust and Appointment of the Litigation Trustee.**

(a)     On the Effective Date, the Litigation Trust shall be created pursuant to the Litigation Trust Declaration.

(b)     The Litigation Trust shall be administered by the Litigation Trustee, subject to the direction of a three (3) member Litigation Trust advisory board.  The Litigation Trustee shall be selected by the Debtors in consultation with the Prepetition First Lien Agent and the Committee or, if no Litigation Trustee has been appointed by the Debtors within thirty (30) days following the Effective Date, the beneficiaries of the Litigation Trust, as set forth in the Litigation Trust Declaration; provided, however, that, in any event, the Litigation Trustee shall (i) be independent of, hold no interest in or adverse to, not be an employee of, or be an advisor retained, directly or indirectly during the five years immediately preceding the Effective Date, by the Debtors, the Prepetition First Lien Claimholders, the Prepetition Second Lien Claimholders or the Committee or any member thereof and, (ii) have no interest in or adverse to the Designated Avoidance Actions, and (iii) shall not be affiliated with the Debtors, Existing Management or any other officer, director, manager, agent, professional or employee of the Debtors or the Reorganized Debtors.  The Litigation Trustee shall be subject to removal for "cause" by the beneficiaries of the Litigation Trust as set forth in the Litigation Trust Declaration.  The Prepetition First Lien Agent or its designee and the Committee shall each be empowered to designate a representative to sit on the Litigation Trust advisory board.  Members of the Litigation Trust advisory board shall not be entitled to receive compensation for serving on the Litigation Trust advisory board.

(c)     The Litigation Trust Interests shall be issued to holders of Allowed First Lien Deficiency Claims, Allowed Second Lien Claims, Allowed Valley View Downs Unsecured Claims and Allowed General Unsecured Claims, and, in certain circumstances, holders of Allowed Intercompany Claims against Valley View Downs, LP as provided in Sections 5.2, 5.3, 5.5, 5.6 and 5.8.

(d)     The Except with respect to the Administrative Fund, the costs and expenses of the Litigation Trust shall not be borne by NewCo, New Centaur, LLC, Hoosier Park, LLC, the Debtors or the Reorganized Debtors.  Rather, the costs and expenses of the Litigation Trust and the Litigation Trustee shall be paid from the Administrative Fund and the proceeds of any Designated Avoidance Actions prior to any distributions being made to the beneficiaries of the Litigation Trust; provided, however, that the first proceeds, if any, of the Designated Avoidance Actions in an amount equal to the Administrative Fund shall be distributed by the Litigation Trustee to the Prepetition First Lien Agent for distribution to the Prepetition First Lien Claimholders as reimbursement for the use of the Prepetition First Lien Claimholders' cash collateral to fund the Administrative Fund prior to any distributions being made to the

beneficiaries of the Litigation Trust; provided further, however, that any one or more of the beneficiaries of the Litigation Trust may agree to fund the additional costs and expenses of the Litigation Trust and shall be entitled to reimbursement from the proceeds of any Designated Avoidance Actions prior to any distributions being made to beneficiaries of the Litigation Trust but only after the Prepetition First Lien Agent has been fully reimbursed in an amount equal to the Administrative Fund for the use of the Prepetition First Lien Claimholders' cash collateral to fund the Administrative Fund.

## 9.2. <u>Property of the Litigation Trust.</u>

(a) Notwithstanding any prohibition of assignability under applicable non-bankruptcy law, on the Effective Date, the Debtors shall be deemed to have automatically transferred to the Litigation Trust all of their right, title and interest in and to the Designated Avoidance Actions. In accordance with section 1141 of the Bankruptcy Code, the transfer of the Designated Avoidance Actions shall be free and clear of all Claims and, encumbrances, mortgages, deeds of trust, liens, pledges, or security interests, and for the benefit of the holders of Litigation Trust Interests,.

(b) The Debtors shall, on the Effective Date, transfer the Administrative Fund free and clear of all Claims, encumbrances, mortgages, deeds of trust, liens, pledges, or security interests (other than the Claim and interest of the Prepetition First Lien Agent described in this Section 9.2(b) and the Litigation Trust Declaration), to the Litigation Trust. The first proceeds, if any, of the Designated Avoidance Actions in an amount equal to the Administrative Fund shall be distributed by the Litigation Trustee to the Prepetition First Lien Agent for distribution to the Prepetition First Lien Claimholders as reimbursement of the use of the Prepetition First Lien Claimholders' cash collateral to fund the Administrative Fund prior to any distributions being made to beneficiaries of the Litigation Trust. The Administrative Fund shall be used by the Litigation Trustee and any professionals the Litigation Trustee may employ to review and evaluate the Designated Avoidance Actions and determine whether the Designated Avoidance Actions may be asserted in order to achieve recoveries for the beneficiaries of the Litigation Trust, to support, in part, and subject to Litigation Trust advisory board approval, any prosecution of the Designated Avoidance Actions, and to effectuate distributions from the Litigation Trust of any proceeds of the Designated Avoidance Actions. If the Litigation Trustee decides not to prosecute the Designated Avoidance Actions, then the balance of the Administrative Fund shall be returned to the Prepetition First Lien Agent for distribution to the Prepetition First Lien Claimholders as soon as practicable after the making of such decision by the Litigation Trustee.

## 9.3. <u>Purpose of the Litigation Trust.</u>

The Litigation Trust shall be established for the primary purpose of liquidating its assets in accordance with Treas. Reg. § 301.7701-4(d) with no objective to continue to engage in the conduct of a trade or business, <u>except</u> to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Litigation Trust. Accordingly, the Litigation Trustee shall, in an expeditious but orderly manner, liquidate and convert to Cash the Designated Avoidance Actions, make timely distributions to the holders of Litigation Trust Interests of Cash and property and not unduly prolong its duration. The Litigation Trust shall not be deemed a

successor-in-interest of the Debtors or the Reorganized Debtors for any purpose other than as specifically set forth herein or in the Litigation Trust Declaration. The Litigation Trust is intended to qualify as a "grantor trust" for federal income tax purposes with the holders of Litigation Trust Interests treated as grantors and owners of the Litigation Trust. As soon as practicable after the Effective Date, the Litigation Trustee (to the extent that the Litigation Trustee deems it necessary or appropriate in his or her sole discretion) shall value the assets of the Litigation Trust based on the good faith determination of the Litigation Trustee. The valuation shall be used consistently for all parties for all federal income tax purposes. The Bankruptcy Court shall resolve any dispute regarding such valuation.

### 9.4. Powers of the Litigation Trustee.

The Litigation Trustee shall have the power to administer the assets of the Litigation Trust in a manner consistent with the Litigation Trust Declaration and the Litigation Trustee shall be the estate representative to prosecute any and all Designated Avoidance Actions transferred to the Litigation Trust. Without limiting the generality of the foregoing, the Litigation Trustee shall (a) hold, administer and prosecute the assets of the Litigation Trust and any proceeds thereof, (b) have the power and authority to retain, as an expense of the Litigation Trust, attorney, advisors, other professionals and employees as may be appropriate to perform the duties required of the Litigation Trustee hereunder or in the Litigation Trust Declaration and to request Persons to assist the Litigation Trustee in the performance of its responsibilities pursuant to the terms of the Plan and the Litigation Trust Declaration, (c) make periodic distributions as provided in the Plan and Litigation Trust Declaration, and (d) provide periodic reports and updates regarding the status of the administration of the Litigation Trust; provided, however, that the Litigation Trustee shall not be permitted to retain any professionals retained by any of the Debtors, the Prepetition First Lien Claimholders, the Prepetition Second Lien Claimholders or the Committee or Persons that were at any time members of the Committee in connection with these Chapter 11 Cases. The Litigation Trustee shall be deemed a Disbursing Agent under the Plan when making distributions to holders of Litigation Trust Interests pursuant to the Litigation Trust Declaration and may, but shall not be required to, object to, litigate, settle, compromise, or otherwise address Claims relating to Litigation Trust assets and duties as otherwise contemplated hereunder and consistent herewith.

### 9.5. Cooperation Between the Litigation Trustee and the Disbursing Agent.

The Litigation Trustee and the Disbursing Agent shall consult and cooperate reasonably in the performance of their duties under the Plan. New Centaur, LLC, Hoosier Park, LLC and the Reorganized Debtors shall provide the Litigation Trustee with full and reasonable access to the books and records of the Debtors concerning the Designated Avoidance Actions and shall cooperate in a reasonable manner with the Litigation Trustee in respect of the investigation, prosecution, compromise, or other disposition of the Designated Avoidance Actions.

### 9.6. Distributions from the Litigation Trust.

(a)     Holders of Litigation Trust Interests that received such interests pursuant to Section 5.2, Section 5.3 or Section 5.6 on account of Claims against a particular Debtor (other

than Valley View Downs, LP) shall receive distributions from the Litigation Trust of the proceeds of only those Designated Avoidance Actions that result in the recovery of property transferred, or the value of the property transferred, by that Debtor, and each such holder shall receive a pro rata share (by amount) of each such distribution in accordance with such holder's pro rata share (by amount) of the aggregate amount of the Allowed First Lien Deficiency Claims, Allowed Second Lien Claims and Allowed General Unsecured Claims not paid in Cash against that Debtor.

(b)     Holders of Litigation Trust Interests that received such interests pursuant to Section 5.2, Section 5.3, Section 5.5 or Section 5.8 on account of Claims against Valley View Downs, LP shall receive distributions from the Litigation Trust of the proceeds of only those Designated Avoidance Actions that result in the recovery of property transferred, or the value of the property transferred, by Valley View Downs, LP, and each such holder shall receive a pro rata share (by amount) of each such distribution in accordance with such holder's pro rata share (by amount) of the aggregate amount of the Allowed First Lien Deficiency Claims, Allowed Second Lien Claims, Allowed Valley View Downs Unsecured Claims not paid in Cash and, in certain circumstances as otherwise expressly set forth herein, Allowed Intercompany Claims against Valley View Downs, LP.

### 9.7. **Termination of the Litigation Trust.**

The Litigation Trust shall exist for an initial term of five (5) years following the Effective Date (subject to extension under certain circumstances).  On or prior to the date of termination, the Bankruptcy Court, upon motion by a party in interest, may extend the term of the Litigation Trust for a finite period, if such extension is necessary to liquidate the assets of the Litigation Trust or for other good cause.  Multiple extensions of the termination of the Litigation Trust may be obtained so long as Bankruptcy Court approval is obtained prior to the expiration of each extended term and the Litigation Trustee receives an opinion of counsel or a favorable ruling from the Internal Revenue Service that any further extension would not adversely affect the status of the Litigation Trust as a "grantor trust" for federal income tax purposes. Notwithstanding the foregoing or any other provision of the Plan or the Litigation Trust Declaration, the Litigation Trustee may make distributions of Cash and property held by the Litigation Trust to the holders of Litigation Trust Interests at such time as the Litigation Trustee shall determine.

## ARTICLE X.

## MANAGEMENT INCENTIVE PLAN

On or after the Effective Date, NewCo shall be authorized to adopt and implement the Management Incentive Plan, subject to the satisfaction of the ConsentingPrepetition First Lien ClaimholdersAgent, Required Lenders and the Board of Managers, in exchange for Existing Management's entry into the Long Term Employment Agreements.

# ARTICLE XI.

## THE DISBURSING AGENT

**11.1. Appointment of the Disbursing Agent.**

Upon the occurrence of the Effective Date, New Centaur, LLC, Hoosier Park, LLC and the Reorganized Debtors shall be appointed to serve as the Disbursing Agent and shall have all powers, rights, duties and protections afforded the Disbursing Agent under the Plan.

**11.2. Powers and Duties.**

Pursuant to the terms and provisions of the Plan, the Disbursing Agent shall be empowered and directed to (a) take all steps and execute all instruments and documents necessary to make Plan Distributions to holders of Allowed Claims and Equity Interests, (b) comply with the Plan and the obligations thereunder, (c) employ, retain, or replace Professionals to represent it with respect to its responsibilities, (d) object to Claims as specified in Article XIII, and prosecute such objections, (e) compromise and settle any issue or dispute regarding the amount, validity, priority, treatment, or allowance of any Claim as provided in Article XIII, (f) make annual and other periodic reports regarding the status of Plan Distributions to the holders of Allowed Claims that are outstanding at such time, with such reports to be made available upon request to the holder of any Contested Claim, and (g) exercise such other powers as may be vested in the Disbursing Agent pursuant to the Plan, the Plan Documents or order of the Bankruptcy Court.

**11.3. Exculpation.**

**Except as otherwise provided in this Section 11.3, the Disbursing Agent and the Litigation Trustee, together with its~~its~~each of their respective officers, members, managers, general and limited partners, employees, agents and representatives, are exculpated pursuant to the Plan by all Persons, Entities, holders of Claims and Equity Interests and all other parties in interest, from any and all Causes of Action arising out of the discharge of the powers and duties conferred upon the Disbursing Agent, the Litigation Trust, or the Litigation Trustee by the Plan, any Final Order of the Bankruptcy Court entered pursuant to or in the furtherance of the Plan, or applicable law, except solely for actions or omissions arising out of the Disbursing Agent's or the Litigation Trustee's willful misconduct or gross negligence.  No holder of a Claim or an Equity Interest, or representative thereof, shall have or pursue any Cause of Action (a) against the Disbursing Agent ~~or its~~, the Litigation Trustee, or each of their respective officers, advisory board members, members, managers, general or limited partners, employees, agents and representatives for making Plan Distributions in accordance with the Plan, or (b) against any holder of a Claim for receiving or retaining Plan Distributions as provided for by the Plan.  Nothing contained in this Section 11.3 shall preclude or impair any holder of an Allowed Claim or Allowed Equity Interest from bringing an action in the Bankruptcy Court against any Debtor or the Litigation Trustee to compel the making of Plan Distributions contemplated by the Plan on account of such Claim or Equity Interest.**

44

# ARTICLE XII.

## DISTRIBUTION PROVISIONS

### 12.1. Sources of Cash for Plan Distributions.

All Cash necessary for the Disbursing Agent to make payments and Plan Distributions shall be obtained from the Cash of New Centaur, LLC, Hoosier Park, LLC and the Reorganized Debtors.

### 12.2. Investment of Funds Held by the Disbursing Agent; Tax Reporting by the Disbursing Agent.

The Disbursing Agent may, but shall not be required to, invest any funds held by the Disbursing Agent pending the distribution of such funds pursuant to the Plan in investments that are exempt from federal, state and local taxes. Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the receipt by the Disbursing Agent of a private letter ruling if the Disbursing Agent so requests one, or the receipt of an adverse determination by the IRS upon audit if not contested by the Disbursing Agent), the Disbursing Agent may (a) treat the funds and other property held by it as held in a single trust for federal income tax purposes in accordance with the trust provisions of the Internal Revenue Code (sections 641, et seq.) and (b) to the extent permitted by applicable law, report consistently with the foregoing for state and local income tax purposes.

### 12.3. Plan Distributions.

Pursuant to the terms and provisions of the Plan, the Disbursing Agent shall make the required Plan Distributions specified under the Plan on the relevant Distribution Date therefor.

The Disbursing Agent may make all distributions on account of Allowed First Lien Claims to the Prepetition First Lien Agent in its capacity as administrative agent for the First Lien Lenders, which funds the Prepetition First Lien Agent shall distribute to the First Lien Lenders on a pro rata basis. The Prepetition First Lien Agent shall be entitled to the exculpation protections provided in Section 11.3 with respect to any distributions the Prepetition First Lien Agent makes on account of Allowed First Lien Claims.

The Disbursing Agent may make all distributions on account of Allowed Second Lien Claims to the Prepetition Second Lien Agent in its capacity as administrative agent for the Second Lien Lenders, which funds the Prepetition Second Lien Agent shall distribute to the Second Lien Lenders on a pro rata basis. The Prepetition Second Lien Agent shall be entitled to the exculpation protections provided in Section 11.3 with respect to any distributions the Prepetition Second Lien Agent makes on account of Allowed Second Lien Claims.

### 12.4. Timing of Plan Distributions.

Each Plan Distribution shall be made on the relevant Distribution Date therefor. In the event a Plan Distribution shall be payable on a day other than a Business Day, such Plan

Distribution shall instead be paid on the immediately succeeding Business Day, but shall be deemed to have been made on the date otherwise due. A Plan Distribution shall be deemed to have been timely made if made on such date or within ten (10) days thereafter.

For federal income tax purposes, except to the extent a Plan Distribution is made in connection with reinstatement of an obligation pursuant to section 1124 of the Bankruptcy Code, a Plan Distribution will be allocated first to the principal amount of a Claim and then, to the extent the Plan Distribution exceeds the principal amount of the Claim, to the portion of the Claim representing accrued but unpaid interest.

### 12.5. **Address for Delivery of Plan Distributions/Unclaimed Distributions.**

Subject to Bankruptcy Rule 9010, any Plan Distribution or delivery to a holder of an Allowed Claim shall be made at the address of such holder as set forth (a) in the Schedules, (b) on the proof of Claim filed by such holder, (c) in any notice of assignment filed with the Bankruptcy Court with respect to such Claim pursuant to Bankruptcy Rule 3001(e), or (d) in any notice served by such holder giving details of a change of address. If any Plan Distribution is returned to the Disbursing Agent as undeliverable, no Plan Distributions shall be made to such holder unless the Disbursing Agent is notified of such holder's then current address within ninety (90) days after such Plan Distribution was returned. After such date, if such notice was not provided, a holder shall have forfeited its right to such Plan Distribution, and the undeliverable Plan Distributions shall be returned to New Centaur, LLC, Hoosier Park, LLC and the Reorganized Debtors, as applicable. Supplemental Plan Distributions may be made from time to time at the discretion of the Disbursing Agent.

### 12.6. **Time Bar to Cash Payments.**

Checks issued in respect of Allowed Claims shall be null and void if not negotiated within one hundred and eighty (180) days after the date of issuance thereof. Requests for reissuance of any voided check shall be made directly to the Disbursing Agent by the holder of the Allowed Claim to whom such check was originally issued. Any claim in respect of such a voided check shall be made within one hundred and eighty (180) days after the date of issuance of such check. If no request is made as provided in the preceding sentence, any Claims in respect of such void check shall be discharged and forever barred and such unclaimed Plan Distribution shall revert to New Centaur, LLC, Hoosier Park, LLC and the Reorganized Debtors, as applicable.

### 12.7. **Manner of Payment under the Plan.**

Unless the Person receiving a Plan Distribution agrees otherwise, any Plan Distribution to be made in Cash under the Plan shall be made, at the election of the Disbursing Agent, by check drawn on a domestic bank or by wire transfer from a domestic bank. Cash payments to foreign creditors may, in addition to the foregoing, be made, at the option of the Disbursing Agent, in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.

**12.8. Expenses Incurred on or after the Effective Date and Claims of the Disbursing Agent.**

Except as otherwise ordered by the Bankruptcy Court or as provided in the Plan, the amount of any reasonable fees and expenses incurred (or to be incurred) by the Disbursing Agent on or after the Effective Date (including, without limitation, taxes) shall be paid when due. Professional fees and expenses incurred by the Disbursing Agent from and after the Effective Date in connection with the effectuation of the Plan shall be paid in the ordinary course of business. Any dispute regarding compensation shall be resolved by agreement of the parties or if the parties are unable to agree, as determined by the Bankruptcy Court.

**12.9. Fractional Plan Distributions.**

Notwithstanding anything to the contrary contained herein, no Plan Distributions of fractional shares or fractions of dollars (whether in Cash or Plan Securities) will be made. Fractional shares and fractions of dollars shall be rounded to the nearest whole unit (with any amount equal to or less than one-half share or one-half dollar, as applicable, to be rounded down).

**12.10. Surrender and Cancellation of Instruments.**

As a condition to receiving any Plan Distribution, on or before the Distribution Date, the holder of an Allowed Claim evidenced by a certificate, instrument or note, other than any such certificate, instrument or note that is being reinstated or being left unimpaired under the Plan, shall (a) surrender such certificate, instrument or note representing such Claim, and (b) execute and deliver such other documents as may be necessary to effectuate the Plan in the sole determination of the Disbursing Agent. Such certificate, instrument or note shall thereafter be cancelled and extinguished. The Disbursing Agent shall have the right to withhold any Plan Distribution to be made to or on behalf of any holder of such Claims unless and until (i) such certificates, instruments or notes are surrendered, or (ii) any relevant holder provides to the Disbursing Agent an affidavit of loss or such other documents as may be required by the Disbursing Agent together with an appropriate indemnity in the customary form. Any such holder who fails to surrender such certificates, instruments or notes, or otherwise fails to deliver an affidavit of loss and indemnity prior to the second anniversary of the Effective Date, shall be deemed to have forfeited its Claims and shall not participate in any Plan Distribution. All property in respect of such forfeited Claims shall revert to New Centaur, LLC, Hoosier Park, LLC and the Reorganized Debtors, as applicable.

## ARTICLE XIII.

## PROCEDURES FOR RESOLVING
## AND TREATING CONTESTED CLAIMS

**13.1. Prosecution of Contested Claims.**

After the date the Confirmation Order becomes a Final Order, only the Reorganized Debtors may object to the allowance of Contested Claims filed with the Bankruptcy

Court.  All objections that are filed and prosecuted as provided herein shall be litigated to Final Order or compromised and settled in accordance with Section 13.3.

**13.2. Objection Deadline.**

As soon as practicable, but in no event later than one ~~hundred and eighty (180)~~ninety (90) days after the Effective Date (subject to being extended by order of the Bankruptcy Court upon motion of the Disbursing Agent without notice or a hearing), objections to Claims shall be filed with the Bankruptcy Court and served upon the holders of each of the Claims to which objections are made.  In the event that the Debtors object to a Claim, the holder of such Claim will not receive a distribution on account of such Claim until such Claim is Allowed.

**13.3. Claims Settlement.**

Notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, from and after the Effective Date, the Disbursing Agent shall have authority to settle or compromise all Claims and Causes of Action without further review or approval of the Bankruptcy Court.

**13.4. Entitlement to Plan Distributions Upon Allowance.**

Notwithstanding any other provision hereof, if any portion of a Claim is a Contested Claim, no payment or distribution provided hereunder shall be made on account of such Claim unless and until such Claim becomes an Allowed Claim that is not a Contested Claim, subject to the setoff rights as provided in Section 17.19.  When a Claim that is not an Allowed Claim as of the Effective Date becomes an Allowed Claim, the holder of such Allowed Claim shall thereupon become entitled to receive the Plan Distributions in respect of such Claim the same as though such Claim had been an Allowed Claim on the Effective Date.

**13.5. Contested Claims Reserve.**

The Disbursing Agent may establish one or more Contested Claims Reserves for the purpose of effectuating distributions to holders of Contested Claims pending the allowance or disallowance of such Claims in accordance with the Plan.

**13.6. Estimation of Claims.**

An Estimation Order may be used to calculate and establish the amount of the Contested Claims Reserve.  The Debtors and the Reorganized Debtors may at any time request that the Bankruptcy Court estimate any contingent, unliquidated or Contested Claim pursuant to section 502(c) of the Bankruptcy Code, regardless of whether the Debtors previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim including, without limitation, during the pendency of any appeal relating to any such objection.  In the event that the Bankruptcy Court estimates any contingent, unliquidated or Contested Claim, the amount so estimated shall constitute either (a) the Allowed amount of such Contested Claim, (b) a maximum limitation on such Contested

Claim or (c) in the event such Contested Claim is estimated in connection with the estimation of other Claims within the same class, a maximum limitation on the aggregate amount of Allowed Claims on account of such Contested Claims so estimated. If the estimated amount constitutes a maximum limitation on the amount of such Claim, or on more than one such Claim within a class of Claims, as applicable, the Debtors or the Reorganized Debtors may pursue supplementary proceedings to object to the allowance of such Claims. All of the aforementioned objection, estimation and resolution procedures are intended to be cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn or otherwise resolved by any mechanism approved by the Bankruptcy Court.

**13.7. <u>No Recourse Against the Debtors, the Litigation Trustee, or the Reorganized Debtors.</u>**

If a Contested Claim Reserve is established pursuant to <u>Section 13.5</u>, any holder of a Contested Claim that ultimately becomes an Allowed Claim shall be entitled to receive its applicable distribution under the Plan solely from any Contested Claim Reserve established on account of such Contested Claims. In no event shall any holder of a Contested Claim have any recourse with respect to distributions made, or to be made, under the Plan to holders of such Claims, to any Debtor, the Litigation Trustee, the Litigation Trust, or the Reorganized Debtors on account of such Contested Claim, regardless of whether such Contested Claim shall ultimately become an Allowed Claim, and regardless of whether sufficient Cash or other property remains available for distribution in the Contested Claim Reserve established on account of such Contested Claims at the time such Claim becomes entitled to receive a distribution under the Plan.

**ARTICLE XIV.**

**TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

**14.1. <u>Assumption and Rejection of Executory Contracts and Unexpired Leases.</u>**

(a) All executory contracts and unexpired leases of the Debtors shall be rejected pursuant to the provisions of section 365 of the Bankruptcy Code effective as of and subject to the occurrence of the Effective Date, unless another date is specified in the Plan <u>except</u>: (i) any executory contracts and unexpired leases that are the subject of separate motions to assume or assume and assign filed pursuant to section 365 of the Bankruptcy Code by the Debtors before the Effective Date; (ii) contracts and leases listed in Schedule 2 attached to the Disclosure Statement and any subsequently filed "Schedule of Assumed Executory Contracts and Unexpired Leases" to be filed by the Debtors with the Bankruptcy Court before the entry of, or as an exhibit to, the Confirmation Order; (iii) all executory contracts and unexpired leases assumed or assumed and assigned under the Plan or by order of the Bankruptcy Court entered before the Effective Date; (iv) any executory contract or unexpired lease that is the subject of a dispute over the amount or manner of cure pursuant to the next section hereof and for which the Debtors make a motion to reject such contract or lease based upon the existence of such dispute filed at any time; (v) any agreement, obligation, security interest, transaction, or similar undertaking that the Debtors believe is not executory or a lease that is later determined by the Bankruptcy Court to be an executory contract or unexpired lease that is subject to assumption or rejection under

section 365 of the Bankruptcy Code; (vi) any oral or written joint defense agreements relating to actual, potential, or threatened litigation or investigations involving any of the Debtors, which shall be assumed; (vii) any guaranty or similar agreement executed by a third party which guarantees repayment or performance of an obligation owed to any of the Debtors or to indemnify the Debtors; and (viii) agreements with third parties regarding preservation of the confidentiality of documents produced by the Debtors. Any order entered ~~postconfirmation~~post-confirmation by the Bankruptcy Court, after notice and a hearing, authorizing the rejection of an executory contract or unexpired lease shall cause such rejection to be a prepetition breach under sections 365(g) and 502(g) of the Bankruptcy Code, as if such relief was granted and such order was entered preconfirmation. The Debtors reserve the right to amend Disclosure Statement Schedule 2 or any "Schedule of Assumed Executory Contracts and Unexpired Leases" prior to the entry of the Confirmation Order. Each executory contract and unexpired lease to be assumed by the Debtors shall include modifications, amendments, supplements, restatements, or other similar agreements made directly or indirectly by any agreement, instrument or other document that affects such executory contract or unexpired lease, without regard to whether such agreement, instrument, or other document is listed on Disclosure Statement Schedule 2 or any "Schedule of Assumed Executory Contracts and Unexpired Leases."

(b)     The inclusion of a contract, lease, or other agreement in Section 14.1(a) or on Disclosure Statement Schedule 2 or any "Schedule of Assumed Executory Contracts and Unexpired Leases" shall not constitute an admission by the Debtors as to the characterization of whether any such included contract, lease, or other agreement is, or is not, an executory contract or unexpired lease or whether any claimants under any such contract, lease or other agreement are time-barred from asserting Claims against the Debtors. The Debtors reserve all rights with respect to the characterization of any such agreements.

(c)     The Plan shall constitute a motion to reject such executory contracts and unexpired leases rejected pursuant to this Section 14.1, and the Debtors shall have no liability thereunder except as is specifically provided in the Plan. Entry of the Confirmation Order by the Clerk of the Bankruptcy Court shall constitute approval of such rejections pursuant to section 365(a) of the Bankruptcy Code, subject to the occurrence of the Effective Date, and a finding by the Bankruptcy Court that each such rejected agreement, executory contract or unexpired lease is burdensome and that the rejection thereof is in the best interests of the Debtors and their Estates.

(d)     The Plan shall constitute a motion to assume and assign to New Centaur, LLC, Hoosier Park, LLC or the Reorganized Debtors, as applicable, such executory contracts and unexpired leases as set forth in Disclosure Statement Schedule 2 or any "Schedule of Assumed Executory Contracts and Unexpired Leases." Entry of the Confirmation Order by the Clerk of the Bankruptcy Court shall constitute approval of such assumption and assignment pursuant to sections 365(a), (b), and (f) of the Bankruptcy Code, and a finding by the Bankruptcy Court that the requirements of section 365(f) of the Bankruptcy Code have been satisfied. Any non-Debtor counterparty to an agreement listed on Disclosure Statement Schedule 2 or any "Schedule of Assumed Executory Contracts and Unexpired Leases" or any other contract or unexpired lease otherwise designated as being assumed or assumed and assigned in Section 14.1(a) who disputes the assignment of an executory contract or unexpired lease must file with the Bankruptcy Court, and serve upon the Debtor, a written objection to the assumption and assignment, which objection shall set forth the basis for the dispute by no later than ten (10) Business Days prior to

MIAMI 896127 (2K)

the Confirmation Hearing.  The failure to timely object shall be deemed a waiver of any and all objections to the assumption and assignment of executory contracts and leases as set forth in Disclosure Statement Schedule 2 or any "Schedule of Assumed Executory Contracts and Unexpired Leases" or as otherwise designated as being assumed or assumed and assigned in Section 14.1(a).

### 14.2. Cure.

At the election of the Debtors following consultation with the ~~Consenting~~Prepetition First Lien ~~Claimholders~~Agent and Required Lenders, any monetary defaults under each executory contract and unexpired lease to be assumed under the Plan shall be satisfied pursuant to section 365(b)(1) of the Bankruptcy Code: (a) by payment of the default amount in Cash on the Effective Date or as soon thereafter as practicable; or (b) on such other terms as agreed to by the parties to such executory contract or unexpired lease.  In the event of a dispute regarding: (i) the amount of any cure payments; (ii) the ability to provide adequate assurance of future performance under the contract or lease to be assumed or assumed and assigned; or (iii) any other matter pertaining to assumption or assumption and assignment, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order resolving the dispute and approving assumption or assignment, as applicable.  Disclosure Statement Schedule 2 or any "Schedule of Assumed Executory Contracts and Unexpired Leases" attached to the Disclosure Statement set forth the Debtors' cure obligations for each agreement for which cure obligations must be satisfied as a condition to the assumption and assignment of such agreement.  Any non-Debtor counterparty to an agreement listed on the Disclosure Statement Schedule 2 or any "Schedule of Assumed Executory Contracts and Unexpired Leases" who disputes the scheduled cure obligation (or objects to the omission of a scheduled cure obligation) must file with the Bankruptcy Court, and serve upon the Debtors, a written objection to the cure obligation, which objection shall set forth the basis for the dispute, the alleged correct cure obligation, and any other objection related to the assumption or assumption and assignment of the relevant agreement by no later than ten (10) Business Days prior to the Confirmation Hearing.  If a non-Debtor counterparty fails to file and serve an objection which complies with the foregoing, the cure obligation set forth on the Disclosure Statement Schedule 2 or any "Schedule of Assumed Executory Contracts and Unexpired Leases" shall be binding on the non-Debtor counterparty, and the non-Debtor counterparty shall be deemed to have waived any and all objections to the assumption or assumption and assignment of the relevant agreement as proposed by the Debtors.

### 14.3. Claims Arising from Rejected Contracts.

Rejection Damage Claims must be submitted to the Claims Agent, with copies to counsel for the Debtors, by the first Business Day that is at least thirty (30) days following the Effective Date.  Properly submitted Rejection Damage Claims shall be treated as Valley View Downs Unsecured Claims, General Unsecured Claims or Convenience Claims, as applicable, under the Plan subject to objection by the Reorganized Debtors.  **ANY SUCH REJECTION DAMAGE CLAIMS THAT ARE NOT PROPERLY SUBMITTED PURSUANT TO THIS SECTION 14.3 WILL FOREVER BE BARRED FROM ASSERTION AND SHALL NOT**

**BE ENFORCEABLE AGAINST THE REORGANIZED DEBTORS, THEIR RESPECTIVE ESTATES, AFFILIATES OR ASSETS.**

## ARTICLE XV.

## CONDITIONS PRECEDENT TO
## CONFIRMATION OF THE PLAN AND
## THE OCCURRENCE OF THE EFFECTIVE DATE

**15.1. Conditions Precedent to Confirmation.**

As conditions precedent to confirmation of the Plan, the Clerk of the Bankruptcy Court shall have entered an order or orders:

(i)       approving the Disclosure Statement as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code;

(ii)       authorizing the solicitation of votes with respect to the Plan;

(iii)       determining that all votes are binding and have been properly tabulated as acceptances or rejections of the Plan;

(iv)       ~~reasonably acceptable, in form and substance, to the Debtors and the Consenting First Lien Claimholders and confirming and giving effect to the terms and provisions of the Plan;~~

(iv)       ~~(v)~~ determining that all applicable tests, standards and burdens ~~in connection with the Plan~~ under section 1129 of the Bankruptcy Code have been duly satisfied and met by the Debtors and the Plan;

~~(vi)       approving the Plan Documents, which shall be in form and substance satisfactory to the Consenting First Lien Claimholders;~~

(v)       ~~(vii)~~ authorizing the Debtors to execute, enter into, and deliver the Plan Documents and to execute, implement, and to take all actions otherwise necessary or appropriate to give effect to, the transactions contemplated by the Plan and the Plan Documents;

(vi)       approving the Plan Documents (other than the Litigation Trust Declaration), which shall be in form and substance satisfactory to the Prepetition First Lien Agent and Required Lenders;

(vii)       authorizing the execution and delivery of, and approving, the Litigation Trust Declaration, which shall be in form and substance satisfactory to the Prepetition First Lien Agent, Required Lenders and Committee, and authorizing the implementation and effectuation of the Litigation Trust Declaration;

(viii)     reasonably acceptable, in form and substance, to the Debtors, Prepetition First Lien Agent and Required Lenders and, only with respect to provisions of the order or orders that affect Plan Distributions to holders of Allowed Valley View Downs Unsecured Claims, Allowed General Unsecured Claims and Allowed Convenience Claims or necessary to effectuate, or that would be inconsistent with, the terms and conditions of the Settlement, the Committee, confirming and giving effect to the terms and provisions of the Plan; and

(ix)     (viii) resolving any the Challenges brought by the Committee, which shall be a Final by approving the Settlement subject to the various terms and conditions thereof and the occurrence of the Effective Date, in form and substance acceptable to the Committee, Prepetition First Lien Agent and Required Lenders, and which may be the Confirmation Order or Final Orders.

**15.2. Conditions Precedent to the Occurrence of the Effective Date.**

The following are conditions precedent to the occurrence of the Effective Date:

(i)     the Confirmation Order shall have been entered by the Clerk of the Bankruptcy Court, be in full force and effect and not be subject to any stay or injunction;

(ii)     the order resolving the Challenges and approving the Settlement subject to the various terms and conditions thereof and the occurrence of the Effective Date, and which may be the Confirmation Order, shall be a Final Order,

(iii)     (ii) the closing of any Exit Financing shall have occurred;

(iv)     (iii) the forms of the NewCo PIK Notes, Stapled NewCo PIK Notes and NewCo Warrants shall be in form and substance satisfactory to the Consenting Prepetition First Lien Claimholders Agent and Required Lenders and shall have been issued pursuant to the Plan;

(v)     (iv) the aggregate face amount of the Stapled NewCo PIK Notes shall not be materially more or less than $155 50 million;

(vi)     (v) the composition of the Board of Managers shall be acceptable to the Consenting First Lien Claimholders and Prepetition First Lien Agent and Required Lenders and the management-appointee, equity-appointee and at least three (3) other members of the Board of Managers shall have been seated and will be subject to the terms and conditions of the NewCo Operating Agreement notwithstanding that not all members of the Board of Managers shall have been seated;

(vii)     (vi) all necessary regulatory consents, authorizations and approvals of the post-Effective Date capital structure of the Reorganized Debtors shall have been given;

(viii)     (vii) all necessary consents, authorizations and approvals shall have been given for the transfers of property and the payments provided for or contemplated by the Plan, including, without limitation, (a) satisfaction or waiver of all conditions to the

obligations of (1) the Debtors under the Plan and the Plan Documents and (2) the Debtors and the Prepetition First Lien Claimholders under the First Lien Take Back Documents, and (b) the valid issuance of the Plan Securities or, in the case of regulatory consents, authorizations or approvals, the status of any requests or applications for such consents, authorizations or approvals immediately preceding the Effective Date shall be satisfactory to the ~~Consenting~~Prepetition First Lien ~~Claimholders~~Agent and Required Lenders;

(ix)     all holders of the NewCo Membership Interests shall have executed the NewCo Operating Agreement;

(x)     ~~(viii)~~ payment of all Intercompany Financing Claims; provided, however, that payment of such claims may be waived in accordance with Section 15.3 on a Debtor by Debtor basis~~; and~~

(xi)     ~~(ix)~~ the Debtors shall have received a resolution, ruling or finding, as applicable, by the Indiana Gaming Commission that, because of the transfer of ownership and control of Hoosier Park, L.P.'s gaming facility and gaming license in connection with consummation of the Plan and as a result of a bankruptcy or debt adjustment, any subsequent transfer of ownership and control of such gaming facility and gaming license will be exempt from any transfer fee under Section 4-35-5-7 of the Indiana Code or other applicable gaming law or statute, which resolution, ruling or finding shall be in form and substance satisfactory to the Prepetition First Lien Agent and Required Lenders in their sole discretion;

(xii)     the Litigation Trust shall have been established, the Litigation Trustee shall have been appointed, the Administrative Fund shall have been funded and the Designated Avoidance Actions shall have been transferred to the Litigation Trust; and

(xiii)     the Debtors shall have sufficient liquidity as of the Effective Date or projected liquidity as of the sixtieth (60th) Business Day after the Effective Date to make the Plan Distributions of Cash to holders of Allowed Valley View Downs Unsecured Claims, Allowed General Unsecured Claims and Allowed Convenience Claims on such dates.

**15.3. <u>Waiver of Conditions.</u>**

The Debtors (a) with the written consent of the ~~Consenting~~Prepetition First Lien ~~Claimholders~~Agent and Required Lenders, may waive any one or more of the conditions set forth in clauses (i~~v~~) through (vii~~vi~~) of Section 15.1 or the conditions set forth in clauses (ii~~ii~~) through (viii~~xi~~) of Section 15.2, and (b) with the written consent of the Prepetition First Lien Agent, Required Lenders and Committee, may waive ~~the condition set forth in clause (ix) of~~ one or more of the conditions set forth in clauses (i) through (iv) and clauses (vii) and (viii) of Section 15.1 or the conditions set forth in clauses (i), (xii) and (xiii) of Section 15.2, in a writing executed by each of them without notice or order of the Bankruptcy Court and without notice to any parties in interest. The Debtors may seek to waive in its entirety or as to any particular Challenge the condition set forth in clause (viii~~ix~~) of Section 15.1 and the condition set forth in

clause (ii) of Section 15.2 by separate motion, and that condition those conditions shall be deemed waived only upon entry by the Bankruptcy Court of an order granting such motion.

### 15.4. **Effect of Non-Occurrence of the Effective Date.**

If the Effective Date shall not occur, the Plan shall be null and void and nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims against or Equity Interests in a Debtor; (b) prejudice in any manner the rights of any party in interest; or (c) constitute an admission, acknowledgement, offer, or undertaking by the Debtors or any other party in interest.

## ARTICLE XVI.

## RETENTION OF JURISDICTION

Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, the Bankruptcy Court shall retain and shall have exclusive jurisdiction over any matter (a) arising under the Bankruptcy Code, (b) arising in or related to the Chapter 11 Cases or the Plan or (c) that relates to the following:

(i)     To hear and determine any and all motions or applications pending on the Confirmation Date or thereafter brought in accordance with Article XIV hereof for the assumption, assumption and assignment, or rejection of executory contracts or unexpired leases to which any of the Debtors is a party or with respect to which any of the Debtors may be liable, and to hear and determine any and all Claims and any related disputes (including, without limitation, the exercise or enforcement of setoff or recoupment rights, or rights against any third party or the property of any third party resulting therefrom or from the expiration, termination or liquidation of any executory contract or unexpired lease);

(ii)     To determine any and all adversary proceedings, applications, motions and contested or litigated matters that may be pending on the Effective Date or that, pursuant to the Plan, may be instituted by the Disbursing Agent, the Litigation Trust, the Litigation Trustee, or the Debtors, as applicable, after the Effective Date, including, without limitation, the Designated Avoidance Actions;

(iii)     To hear and determine any objections to the allowance of Claims, whether filed, asserted, or made before or after the Effective Date, including, without limitation, to hear and determine any objections to the classification of any Claim and to allow, disallow or estimate any Contested Claim in whole or in part;

(iv)     To issue such orders in aid of execution of the Plan to the extent authorized or contemplated by section 1142 of the Bankruptcy Code;

(v)     To consider any modifications of the Plan, remedy any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(vi)     To hear and determine all Fee Applications and applications for allowances of compensation and reimbursement of any other fees and expenses authorized to be paid or reimbursed under the Plan or the Bankruptcy Code;

(vii)     To hear and determine all controversies, suits and disputes that may relate to, impact upon, or arise in connection with the Plan, the Plan Documents or their interpretation, implementation, enforcement or consummation;

(viii)     To hear and determine all controversies, suits and disputes that may relate to, impact upon, or arise in connection with the Confirmation Order (and all exhibits to the Plan) or its interpretation, implementation, enforcement or consummation;

(ix)     To the extent that Bankruptcy Court approval is required, to consider and act on the compromise and settlement of any Claim or Cause of Action by, on behalf of, or against the Estates or the Litigation Trust;

(x)     To determine such other matters that may be set forth in the Plan, or the Confirmation Order, or that may arise in connection with the Plan, or the Confirmation Order, including, without limitation, in respect of the Litigation Trust;

(xi)     To hear and determine matters concerning state, local and federal taxes, fines, penalties, or additions to taxes for which the Reorganized Debtors, the Debtors-in-Possession, or the Disbursing Agent may be liable, directly or indirectly, in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

(xii)     To hear and determine all controversies, suits and disputes that may relate to, impact upon, or arise in connection with any setoff and/or recoupment rights of the Debtors or any Person under the Plan;

(xiii)     To hear and determine all controversies, suits and disputes that may relate to, impact upon, or arise in connection with Causes of Action of the Debtors (including Avoidance Actions and Designated Avoidance Actions) commenced by the Disbursing Agent, the Litigation Trustee, the Debtors or any third parties, as applicable, before or after the Effective Date;

(xiv)     To enter an order or final decree closing the Chapter 11 Cases;

(xv)     To issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Person with consummation, implementation or enforcement of the Plan, the Litigation Trust Declaration, or the Confirmation Order; and

(xvi)     To hear and determine any other matters related hereto and not inconsistent with chapter 11 of the Bankruptcy Code.

MIAMI 896127 (2K)

## MISCELLANEOUS PROVISIONS

**17.1. Releases by the Debtors.**

On the Effective Date, each of the Released Persons shall be released by each Debtor, and their respective Estates, from any and all Claims (except in the case of ~~each of~~ Centaur, Inc. ~~and Holdings~~, Holdings and the Designated Defendants, from liability in connection with, arising from, or related to, the Designated Avoidance Actions), including, without limitation, Avoidance Actions, liens, encumbrances, security interests, obligations, suits, judgments, damages, rights, Causes of Action and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing, or hereafter arising, in law, equity or otherwise, that any Debtor is entitled to assert in its own right or on behalf of the holder of any Claim or Equity Interest or other Person, based in whole or in part upon any act or omission, transaction, agreement, event or other occurrence taking place on or prior to the Effective Date in any way relating to any Debtor, the Chapter 11 Cases, the formulation, preparation, negotiation, dissemination, implementation, administration, confirmation or consummation of any of the Plan, or the property to be distributed under the Plan, the disclosure statement concerning the Plan, any contract, employee pension or other benefit plan, instrument, release or other agreement or document created, modified, amended, terminated or entered into in connection with either the Plan or any agreement between the Debtors and any Released Person, or any other act taken or omitted to be taken in connection with the Debtors' ~~bankruptcy~~Chapter 11 Cases.  Without limitation of the foregoing, each such Released Person shall be released and exculpated from any and all Claims, obligations, suits, judgments, damages, rights, Causes of Action and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, that any holder of a Claim or Equity Interest is entitled to assert in its own right or on behalf of any other person, based in whole or in part upon any act or omission, transaction, agreement, event or other occurrence relating to the Debtors and taking place prior to the Effective Date.

**17.2. Release of Released Persons by Other Released Persons.**

On the Effective Date, except as expressly provided under the Plan with respect to (a) Plan Distributions on account of Allowed Claims or Allowed Equity Interests, if any, that any of the Released Persons may have against any of the Debtors' Estates, and (b) any other rights or obligations under the Plan or the Plan Documents, each of the Released Persons shall release each other from any and all Claims (except in the case of ~~each of~~ Centaur, Inc. ~~and Holdings~~, Holdings and the Designated Defendants, from liability in connection with, arising from, or related to, the Designated Avoidance Actions), including, without limitation, Avoidance Actions, liens, encumbrances, security interests, obligations, suits, judgments, damages, rights, Causes of Action, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity, or otherwise, that any Released Person is entitled to assert against any other Released Person, based in whole or in part upon any act or omission, transaction, agreement, event or occurrence taking place on or before the Effective Date in any way relating to any Debtor, the Chapter 11 Cases, the formulation, preparation, negotiation, dissemination, implementation, administration, confirmation or consummation of any of the

Plan, or the property to be distributed under the Plan, the disclosure statement concerning the Plan, any contract, employee pension or other benefit plan, instrument, release or other agreement or document created, modified, amended, terminated, or entered into in connection with either the Plan or any agreement between the Debtors and any Released Person, or any other act taken or omitted to be taken in connection with the Debtors' ~~bankruptcy~~Chapter 11 Cases. Notwithstanding any of the foregoing, the Plan shall not release any obligations of the Debtors to indemnify and hold harmless their current and former officers and employees, <u>except</u> for claims or Causes of Action against any current and former officers and employees resulting from the willful misconduct or gross negligence of such indemnified party, whether arising under the Debtors' ~~constituent~~organizational documents, contract, law or equity.

**17.3. <u>Third Party Agreements; Subordination.</u>**

The Plan Distributions to the various classes of Claims and Equity Interests hereunder shall not affect the right of any Person to levy, garnish, attach or employ any other legal process with respect to such Plan Distributions by reason of any claimed subordination rights or otherwise. All such rights and any agreements relating thereto shall remain in full force and effect, <u>except</u> as compromised and settled pursuant to the Plan. Plan Distributions shall be subject to and modified by any Final Order directing distributions other than as provided in the Plan. The right of the Debtors to seek subordination of any lien, security interest, Claim or Equity Interest pursuant to section 510 of the Bankruptcy Code is fully reserved, and the treatment afforded any Claim or Equity Interest that becomes a Subordinated Claim or subordinated Equity Interest at any time shall be modified to reflect such subordination. Unless the Confirmation Order provides otherwise, no Plan Distributions shall be made on account of a Subordinated Claim or subordinated Equity Interest.

All contractual and subordination rights of the Prepetition First Lien Agent and other Prepetition First Lien Claimholders with respect to any Plan Distributions, <u>including</u>, without limitation, the subordination of the liens held by or on behalf of the Prepetition Second Lien Agent, the other Prepetition Second Lien Claimholders or any agent or trustee therefor to the liens held by or on behalf of the Prepetition First Lien Agent, the other Prepetition First Lien Claimholders or any agent or trustee therefor, as described in the Prepetition Intercreditor Agreement, shall be enforceable under the Plan, <u>except</u> if, and to the extent, expressly compromised by the Plan. The classification and manner of satisfying Claims under the Plan and the Plan Distributions take into consideration the contractual subordination rights that the Prepetition First Lien Agent and the other Prepetition First Lien Claimholders have against holders of other Claims with respect to Plan Distributions.

**17.4. <u>Payment of Statutory Fees.</u>**

All fees payable pursuant to section 1930 of title 28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid by the Debtors on or before the Effective Date and shall be satisfied by the Reorganized Debtors thereafter until the Chapter 11 Cases are closed by form of order reasonably acceptable to the Litigation Trustee, if the Litigation Trust is not fully administered at the time the Chapter 11 Cases are closed.

MIAMI 896127 (2K)

**17.5. Satisfaction of Claims.**

      The rights afforded in the Plan and the treatment of all Claims and Equity Interests herein on the Effective Date shall be in exchange for and in complete satisfaction, discharge and release of all Claims and Equity Interests of any nature whatsoever, including any accrued post-petition interest, against the Debtors and the Debtors-in-Possession, or any of their Estates, Assets, properties, or interests in property. Except as otherwise expressly provided in the Plan, on the Effective Date, all Claims against and Equity Interests in the Debtors and the Debtors-in-Possession shall be satisfied, discharged and released in full. ~~The~~On the Effective Date, the Reorganized Debtors shall not be responsible for any pre-Effective Date obligations of the Debtors or the Debtors-in-Possession, except those expressly assumed by any Reorganized Debtor(s), as applicable. Except as otherwise provided herein, on the Effective Date, all Persons and Entities shall be precluded and forever barred from asserting against the Reorganized Debtors, their respective successors or assigns, or their Estates, Assets, properties, or interests in property any event, occurrence, condition, thing, or other or further Claims or Causes of Action based upon any act, omission, transaction, or other activity of any kind or nature that occurred or came into existence prior to the Effective Date, other than subordination of the ~~First~~Second Lien Claims, whether or not the facts of or legal bases therefore were known or existed prior to the Effective Date.

**17.6. Exculpation.**

      **~~The~~On the Effective Date, the Debtors and any Released Persons shall not be liable for any Cause of Action related to or arising in connection with or out of the administration of the Chapter 11 Cases, pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for gross negligence or willful misconduct as determined by Final Order of the Bankruptcy Court. The Confirmation Order shall enjoin all holders of Claims and Equity Interests from asserting or prosecuting any Claim or Cause of Action against any Released Person as to which such Released Person has been exculpated from liability pursuant to the preceding sentence.**

**17.7. Discharge of Liabilities.**

      Except as otherwise provided in the Plan, upon the occurrence of the Effective Date, the Debtors shall be discharged from all Claims and Causes of Action to the fullest extent permitted by section 1141 of the Bankruptcy Code, and all holders of Claims and Equity Interests shall be precluded from asserting against the Reorganized Debtors, the Debtors, the Estates, the Assets, or any property dealt with under the Plan, any further or other Cause of Action based upon any act or omission, transaction, event, thing, or other activity of any kind or nature that occurred or came into existence prior to the Effective Date.

      **EXCEPT AS OTHERWISE PROVIDED IN THE PLAN, ON THE EFFECTIVE DATE, THE REORGANIZED DEBTORS SHALL NOT HAVE, AND SHALL NOT BE CONSTRUED TO HAVE OR MAINTAIN ANY LIABILITY, CLAIM, OR OBLIGATION, THAT IS BASED IN WHOLE OR IN PART ON ANY ACT, OMISSION, TRANSACTION, EVENT, OTHER OCCURRENCE, OR THING**

**OCCURRING OR IN EXISTENCE ON OR PRIOR TO THE EFFECTIVE DATE OF THE PLAN (<u>INCLUDING</u>, WITHOUT LIMITATION, ANY LIABILITY OR CLAIMS ARISING UNDER APPLICABLE NON-BANKRUPTCY LAW AS A SUCCESSOR TO THE DEBTORS) AND NO SUCH LIABILITIES, CLAIMS, OR OBLIGATIONS FOR ANY ACTS SHALL ATTACH TO THE REORGANIZED DEBTORS.**

**17.8. <u>Discharge of Debtors</u>.**

<u>Except</u> as otherwise provided in the Plan or the Confirmation Order, on the Effective Date, without further notice or order, all Claims of any nature whatsoever shall be automatically discharged forever. <u>Except</u> as otherwise provided in the Plan or the Confirmation Order, on the Effective Date, the Debtors, their Estates, and all successors thereto shall be deemed fully discharged and released from any and all Claims, <u>including</u>, without limitation, demands and liabilities that arose before the Effective Date, and all debts of the kind specified in section 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not (a) a proof of Claim based upon such debt is filed or deemed filed under section 501 of the Bankruptcy Code, (b) a Claim based upon such debt is allowed under section 502 of the Bankruptcy Code or (c) the holder of a Claim based upon such debt has accepted the Plan. The Confirmation Order shall be a judicial determination of discharge of all liabilities of the Debtors, their Estates and all successors thereto. As provided in section 524 of the Bankruptcy Code, such discharge shall void any judgment against the Debtors, their Estates, or any successor thereto at any time obtained to the extent it relates to a Claim discharged, and operates as an injunction against the prosecution of any action against the Reorganized Debtors or property of the Debtors or their Estates to the extent it relates to a discharged Claim.

**17.9. <u>Notices</u>.**

Any notices, requests and demands required or permitted to be provided under the Plan, in order to be effective, shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

> Centaur, LLC
> Attention: Kurt E. Wilson, Executive Vice President, Chief Financial Officer,
>     Treasurer and Secretary
> 10 West Market Street, Suite 200
> Indianapolis, Indiana 46204
> Telephone: (317) 656-8785
> Facsimile: (317) 656-8780
>
> and
>
> White & Case LLP
> Attention: Gerard H. Uzzi
> 1155 Avenue of the Americas
> New York, New York 10036

MIAMI 896127 (2K)

Telephone:  (212) 819-8200
Facsimile:  (212) 354-8113

and

Fox Rothschild LLP
Attention:  Jeffrey M. Schlerf
919 North Market Street, Suite 1600
Wilmington, Delaware  19801
Telephone:  (302) 654-7444
Facsimile:  (302) 656-8920

**17.10. <u>Headings</u>.**

The headings used in the Plan are inserted for convenience only, and neither constitute a portion of the Plan nor in any manner affect the construction of the provisions of the Plan.

**17.11. <u>Governing Law</u>.**

Unless a rule of law or procedure is supplied by federal law (<u>including</u> the Bankruptcy Code and the Bankruptcy Rules), the laws of the State of Delaware, without giving effect to the conflicts of laws principles thereof, shall govern the construction of the Plan and any agreements, documents and instruments executed in connection with the Plan, <u>except</u> as otherwise expressly provided in such instruments, agreements or documents.

**17.12. <u>Expedited Determination</u>.**

The Disbursing Agent is hereby authorized to file a request for expedited determination under section 505(b) of the Bankruptcy Code for all tax returns filed with respect to the Debtors.

**17.13. <u>Exemption from Transfer Taxes</u>.**

Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of notes or equity securities under the Plan, the creation of any mortgage, deed of trust, lien, pledge, or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under the Plan, shall not be subject to any stamp, real estate transfer, mortgage recording or other similar tax.

**17.14. <u>Retiree Benefits</u>.**

Pursuant to section 1129(a)(13) of the Bankruptcy Code, on and after the Effective Date, all retiree benefits (as that term is defined in section 1114 of the Bankruptcy Code), if any, shall continue to be paid in accordance with applicable law.

MIAMI 896127 (2K)

**17.15. <u>Notice of Entry of Confirmation Order and Relevant Dates</u>.**

Promptly upon entry of the Confirmation Order, the Debtors shall publish as directed by the Bankruptcy Court and serve on all known parties in interest and holders of Claims and Equity Interests, notice of the entry of the Confirmation Order and all relevant deadlines and dates under the Plan.

**17.16. <u>Interest and Attorneys' Fees</u>.**

Interest accrued after the Petition Date will accrue and be paid on Claims only to the extent specifically provided for in the Plan, the Confirmation Order or as otherwise required by the Bankruptcy Court or by applicable law; <u>provided</u>, <u>however</u>, pursuant to the Prepetition Intercreditor Agreement, interest, fees, expenses, and other charges shall continue to accrue from the Petition Date on the First Lien Claims and such amounts shall, if the Prepetition Second Lien Claimholders receive any proceeds from any collateral securing the First Lien Claims, be payable by the Prepetition Second Lien Claimholders to the Prepetition First Lien Claimholders, pursuant to the Prepetition Intercreditor Agreement, until the First Lien Obligations (as defined in the Prepetition Intercreditor Agreement) have been paid in full.

<u>Except</u> as set forth in the Plan or as ordered by the Bankruptcy Court, no award or reimbursement of attorneys' fees or related expenses or disbursements shall be allowed on, or in connection with, any Claim.

**17.17. <u>Modification of the Plan</u>.**

As provided in section 1127 of the Bankruptcy Code, modification of the Plan may be proposed in writing by the Debtors at any time before confirmation, <u>provided</u> that the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code, and the Debtors shall have complied with section 1125 of the Bankruptcy Code. The Debtors may modify the Plan at any time after confirmation and before substantial consummation, <u>provided</u> that the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code and the Bankruptcy Court, after notice and a hearing, confirms the Plan as modified, under section 1129 of the Bankruptcy Code, and the circumstances warrant such modifications, <u>provided</u> <u>further</u>, that any modification of the Plan between the Confirmation Date and the Effective Date shall be subject to the ~~satisfaction of the Consenting First Lien Claimholders~~<u>prior consent of the Prepetition First Lien Agent and Required Lenders and, in the case of any modification that affects Section 6.2(b) or Section 6.2(d) (as it relates to Fee Claims) or Plan Distributions to holders of Allowed Valley View Downs Unsecured Claims, Allowed General Unsecured Claims and Allowed Convenience Claims or necessary to effectuate, or that would be inconsistent with, the terms of, the Settlement, the Committee</u>. A holder of a Claim that has accepted the Plan shall be deemed to have accepted such Plan as modified if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim or Equity Interest of such holder. <u>Any modification of the Litigation Trust Declaration between the Confirmation Date and the Effective Date shall be subject to the prior consent of the Prepetition First Lien Agent, Required Lenders and Committee. Any (a) modification of the NewCo PIK Notes or (b) modification of the First Lien Take Back Paper, that would affect materially the Plan Distributions of NewCo PIK Notes to be made, in the event</u>

the holders of Second Lien Claims vote in favor of the Plan pursuant to section 1126 of the Bankruptcy Code, and thus, Class 3 – Second Lien Claims accepts the Plan, to the holders of Second Lien Claims, between the Confirmation Date and the Effective shall be subject to the prior consent of (i) the Prepetition First Lien Agent and Required Lenders and (ii) in the event the holders of Second Lien Claims vote in favor of the Plan pursuant to section 1126 of the Bankruptcy Code, and thus, Class 3 – Second Lien Claims accepts the Plan, one or more Prepetition Second Lien Claimholders holding more than fifty-percent (50%) in amount of the Second Lien Claims.  Any other modification of the First Lien Take Back Paper or any modification of the terms of the Long Term Employment Agreements, the terms of the Management Incentive Plan, the NewCo Operating Agreement, the Stapled NewCo PIK Notes or the NewCo Warrants, between the Confirmation Date and the Effective Date shall be subject to the prior consent of the Prepetition First Lien Agent and Required Lenders.

### 17.18. **Revocation of Plan.**

The Debtors reserve the right to revoke and withdraw the Plan or to adjourn the Confirmation Hearing with respect to any one or more of the Debtors prior to the occurrence of the Effective Date.  If the Debtors revoke or withdraw the Plan with respect to any one or more of the Debtors, or if the Effective Date does not occur as to any Debtor, then, as to such Debtor, the Plan and all settlements and compromises set forth in the Plan and not otherwise approved by a separate Final Order and the Settlement itself shall be deemed null and void and nothing contained herein and no acts taken in preparation for consummation of the Plan shall be deemed to constitute a waiver or release of any Claims against or Equity Interests in such Debtor or to prejudice in any manner the rights of any of the Debtors or any other Person in any other further proceedings involving such Debtor.

In the event that the Debtors choose to adjourn the Confirmation Hearing with respect to any one or more of the Debtors, the Debtors reserve the right to proceed with confirmation of the Plan with respect to those Debtors in relation to which the Confirmation Hearing has not been adjourned.  With respect to those Debtors with respect to which the Confirmation Hearing has been adjourned, the Debtors reserve the right to amend, modify, revoke, or withdraw the Plan and/or to submit any new plan of reorganization at such times and in such manner as they consider appropriate, subject to the provisions of the Bankruptcy Code.

### 17.19. **Setoff Rights.**

In the event that any Debtor has a Claim of any nature whatsoever against the holder of a Claim against such Debtor, then such Debtor may, but is not required to, set off against the Claim (and any payments or other Plan Distributions to be made in respect of such Claim hereunder) such Debtor's Claim against such holder, subject to section 553 of the Bankruptcy Code, and the Litigation Trustee may, but shall not be required, to assert such setoff rights as a defense to any Claim that it may object to pursuant hereto.  Neither the failure to set off nor the allowance of any Claim under the Plan shall constitute a waiver or release of any Claims that any Debtor may have against the holder of any Claim.

**17.20. Compliance with Tax Requirements.**

In connection with the Plan, the Debtors and the Disbursing Agent, as applicable, shall comply with all withholding and reporting requirements imposed by federal, state, local, and foreign taxing authorities and all Plan Distributions hereunder shall be subject to such withholding and reporting requirements. Notwithstanding the foregoing, each holder of an Allowed Claim or Equity Interest that is to receive a Plan Distribution shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any government unit upon it, including income, withholding and other tax obligations, on account of such Plan Distribution, and no holder of an Allowed Claim or Equity Interest shall have responsibility for the satisfaction and payment of any tax obligations imposed by any government unit upon any other holder of an Allowed Claim or Equity Interest. The Disbursing Agent has the right, but not the obligation, to not make a Plan Distribution until such holder has made arrangements satisfactory to the Disbursing Agent for payment of any such tax obligations.

**17.21. Rates.**

The Plan does not provide for the change of any rate that is within the jurisdiction of any governmental regulatory commission after the occurrence of the Effective Date.

**17.22. Injunctions.**

**On the Effective Date and except as otherwise provided herein, all Persons who have been, are, or may be holders of Claims against or Equity Interests in the Debtors shall be permanently enjoined from taking any of the following actions against or affecting the Debtors, the Reorganized Debtors, the Estates, the Assets, the Disbursing Agent, the Litigation Trust, the Litigation Trustee, or any of the Released Persons, or their respective assets and property, with respect to such Claims or Equity Interests (other than actions brought to enforce any rights or obligations under the Plan):**

> (i) **commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including, without limitation, all suits, actions and proceedings that are pending as of the Effective Date, which must be withdrawn or dismissed with prejudice);**

> (ii) **enforcing, levying, attaching, collecting or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree or order;**

> (iii) **creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance; and**

> (iv) **asserting any setoff, right of subrogation or recoupment of any kind; provided, that any defenses, offsets or counterclaims which the Debtors may have or assert in respect of the above referenced Claims are fully preserved in accordance with Section 17.19.**

MIAMI 896127 (2K)

**17.23. Binding Effect.**

The Plan shall be binding upon the Reorganized Debtors, the holders of all Claims and Equity Interests, parties in interest, Persons and Entities, and their respective successors and assigns. To the extent any provision of the Disclosure Statement or any other solicitation document may be inconsistent with the terms of the Plan, the terms of the Plan shall be binding and conclusive.

**17.24. Severability.**

**SUBJECT TO THE SETTLEMENT, IN THE EVENT THE BANKRUPTCY COURT DETERMINES THAT ANY PROVISION OF THE PLAN IS UNENFORCEABLE EITHER ON ITS FACE OR AS APPLIED TO ANY CLAIM OR EQUITY INTEREST OR TRANSACTION, THE DEBTORS MAY MODIFY THE PLAN IN ACCORDANCE WITH SECTION 17.17 SO THAT SUCH PROVISION SHALL NOT BE APPLICABLE TO THE HOLDER OF ANY SUCH CLAIM OR EQUITY INTEREST OR TRANSACTION. UNLESS SUCH MODIFICATION WOULD VIOLATE, FRUSTRATE, OR BREACH THE SETTLEMENT. SUBJECT TO THE SETTLEMENT, SUCH A DETERMINATION OF UNENFORCEABILITY SHALL NOT (A) LIMIT OR AFFECT THE ENFORCEABILITY AND OPERATIVE EFFECT OF ANY OTHER PROVISION OF THE PLAN OR (B) REQUIRE THE RESOLICITATION OF ANY ACCEPTANCE OR REJECTION OF THE PLAN UNLESS SUCH A DETERMINATION WOULD VIOLATE, FRUSTRATE OR BREACH THE SETTLEMENT.**

**17.25. No Admissions.**

**AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS, AND OTHER CAUSES OF ACTION OR THREATENED CAUSES OF ACTIONS, THE PLAN SHALL NOT CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY, STIPULATION OR WAIVER, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS. THE PLAN SHALL NOT BE ADMISSIBLE IN ANY NON-BANKRUPTCY PROCEEDING NOR SHALL IT BE CONSTRUED TO BE CONCLUSIVE ADVICE ON THE TAX, SECURITIES AND OTHER LEGAL EFFECTS OF THE PLAN AS TO HOLDERS OF CLAIMS AGAINST, AND EQUITY INTERESTS IN, THE DEBTORS OR THEIR AFFILIATES, AS DEBTORS AND DEBTORS-IN-POSSESSION IN THESE CHAPTER 11 CASES.**

**17.26. Dissolution of the Committee.**

On the Effective Date, the Committee shall dissolve automatically, whereupon its members, Professionals and agents shall be released from any further duties and responsibilities in the Chapter 11 Cases and under the Bankruptcy Code, except with respect to (a) applications for Fee Claims or reimbursement of expenses incurred as a member of the Committee, and (b) any motions or other actions seeking enforcement or implementation of the provisions of the Plan or the Confirmation Order or pending appeals of orders entered in the Chapter 11 Cases.

**17.27.** ~~Potential Exclusion of the Pennsylvania Debtors from the Plan.~~ Settlement.

~~The Debtors reserve the right, with the prior consent of the Consenting First Lien Claimholders, to (a) amend the Plan to treat the Pennsylvania Debtors separately from the Indiana Debtors, Centaur, LLC or Centaur Colorado, LLC and (b) adjourn the Confirmation Hearing in respect of the Plan as to the Pennsylvania Debtors until further notice or order of the Bankruptcy Court. If this occurs, the Confirmation Order shall (i) authorize NewCo or its subsidiaries to operate the businesses of, and provide debtor-in-possession financing, protected to the fullest extent permitted under sections 364(c) and (d) of the Bankruptcy Code, to the Pennsylvania Debtors and (ii) provide an extension of the periods in which the Pennsylvania Debtors possess the exclusive right to file a plan of reorganization and solicit acceptances thereto for an additional one hundred eighty (180) days without prejudice to the rights of the Pennsylvania Debtors to seek additional extensions or the rights of parties in interest to seek to shorten or terminate such exclusive periods. Such amendment shall be without prejudice to the Pennsylvania Debtors to further amend, modify or revoke the Plan and/or to submit any new plan of reorganization as it relates to the Pennsylvania Debtors.~~

On the Effective Date, the Settlement shall be effectuated hereby. Upon the Effective Date, the Litigation Trustee shall be authorized to and, not later than the first Business Day after the Effective Date shall, dismiss with prejudice the Challenges in accordance with the Settlement. The Settlement, upon Bankruptcy Court approval, shall be otherwise enforceable by its express terms and by the Plan.

**17.28.** **Indemnification of the Prepetition First Lien Agent.**

From and at all times following the Effective Date, (a) each of NewCo, New Centaur, LLC, Hoosier Park, LLC and the Reorganized Debtors shall (and shall cause each of their present and future subsidiaries to), jointly and severally, and (b) each holder of an Allowed First Lien Claim (in the proportion that such holder's First Lien Claim bears to the total Allowed First Lien Claims but, subject thereto, jointly and severally with each Person specified in (a)) shall, on demand, advance and indemnify the Prepetition First Lien Agent and its respective officers, directors, principals, shareholders, parents, subsidiaries, affiliates, members, auditors, accountants, financial advisors, consultants, and other advisors, predecessors, successors, servants, employees, agents, counsel, attorneys, partners, insurers, underwriters, administrators, executors, representatives or assigns (each an "Indemnified Person") against all Causes of Action, regardless of whether any such Indemnified Person is a party thereto (and regardless of whether such matter is initiated by a third party or by NewCo, any Reorganized Debtor or any of their respective affiliates or shareholders), and against all losses, costs, liabilities, damages, obligations, expenses and disbursements (including, without limitation, the payment of any attorney or other advisory fees) and any duties, taxes and charges incurred or suffered by or awarded against them related to, in connection with or arising out of the performance by them of any actions required or contemplated by the Plan (including the implementation of any transactions contemplated by the Plan), the consummation of the Plan or the administration of the Plan or the property to be distributed under the Plan, except to the extent resulting primarily from the gross negligence or willful misconduct of such Indemnified Person as determined by Final Order of the Bankruptcy Court.

MIAMI 896127 (2K)

### 17.29. Fee Auditor.

Following the Effective Date, the Reorganized Debtors shall pay in Cash, within thirty (30) days of receipt by the Reorganized Debtors of an invoice from the Warren H. Smith & Associates, P.C., as fee auditor, all reasonable fees and expenses of Warren H. Smith & Associates, P.C., as fee auditor, that are incurred after the Effective Date, without the need for any further authorization from the Bankruptcy Court.  In the event that a party in interest objects to payment of such invoice from Warren H. Smith & Associates, P.C., as fee auditor, for post-Effective Date fees and expenses, in whole or in part, and the parties cannot resolve such objection after good faith negotiation, the Bankruptcy Court shall retain jurisdiction to make a determination as to the extent to which the invoice shall be paid by the Reorganized Debtors.

MIAMI 896127 (2K)

Dated: ~~October 18, 2010~~January 28, 2011                    Respectfully submitted,

**Centaur PA Land, LP**

By:  Centaur PA Land General Partner, LP,
       its general partner

 By:  Centaur PA Land Management, LLC,
        its general partner

 By:  Centaur, LLC, its manager

  By:   /s/ Kurt E. Wilson
       _____

        Name:  Kurt E. Wilson
        Title:  Executive Vice President, Chief
                Financial Officer, Treasurer and
                Secretary

**Centaur, LLC**

  By:   /s/ Kurt E. Wilson
       _____
        Name:  Kurt E. Wilson
        Title:  Executive Vice President, Chief
                Financial Officer, Treasurer and
                Secretary

**Centaur Colorado, LLC**

By:  Centaur, LLC, its manager

  By:   /s/ Kurt E. Wilson
       _____
        Name:  Kurt E. Wilson
        Title:  Executive Vice President, Chief
                Financial Officer, Treasurer and
                Secretary

**Centaur Indiana, LLC**

By:  Centaur, LLC, its manager

  By:   /s/ Kurt E. Wilson
       _____
        Name:  Kurt E. Wilson
        Title:  Executive Vice President, Chief
                Financial Officer, Treasurer and
                Secretary

68

**Centaur Racing, LLC**

By:  Centaur, LLC, its manager

  By:   /s/ Kurt E. Wilson                
        Name:  Kurt E. Wilson
        Title:  Executive Vice President, Chief
              Financial Officer, Treasurer and
              Secretary

**Hoosier Park, L.P.**

By:  Centaur Indiana, LLC, its general partner

 By:  Centaur, LLC, its manager

  By:   /s/ Kurt E. Wilson                
        Name:  Kurt E. Wilson
        Title:  Executive Vice President, Chief
              Financial Officer, Treasurer and
              Secretary

**HP Dining & Entertainment, LLC**

By:  Centaur, LLC, its manager

  By:   /s/ Kurt E. Wilson                
        Name:  Kurt E. Wilson
        Title:  Executive Vice President, Chief
              Financial Officer, Treasurer and
              Secretary

**Centaur Pennsylvania, LLC**

By:  Centaur, LLC, its manager

  By:   /s/ Kurt E. Wilson                
        Name:  Kurt E. Wilson
        Title:  Executive Vice President, Chief
              Financial Officer, Treasurer and
              Secretary

MIAMI 896127 (2K)

**VVD Properties General Partner, LLC**

By:  Centaur, LLC, its manager

  By:   /s/ Kurt E. Wilson             
        Name:  Kurt E. Wilson
        Title:  Executive Vice President, Chief
             Financial Officer, Treasurer and
             Secretary

**Valley View Downs GP, LLC**

By:  Centaur, LLC, its manager

  By:   /s/ Kurt E. Wilson             
        Name:  Kurt E. Wilson
        Title:  Executive Vice President, Chief
             Financial Officer, Treasurer and
             Secretary

**Valley View Downs, LP**

By:  Valley View Downs GP, LLC, its
     general partner

  By:  Centaur, LLC, its manager

  By:   /s/ Kurt E. Wilson             
        Name:  Kurt E. Wilson
        Title:  Executive Vice President, Chief
             Financial Officer, Treasurer and
             Secretary

**VVD Properties, LP**

By:  VVD Properties General Partner, LLC,
     its general partner

  By:  Centaur, LLC, its manager

  By:   /s/ Kurt E. Wilson             
        Name:  Kurt E. Wilson
        Title:  Executive Vice President, Chief
             Financial Officer, Treasurer and
             Secretary

MIAMI 896127 (2K)

**Centaur PA Land General Partner, LP**

By: Centaur PA Land Management, LLC,
    its general partner

 By: Centaur, LLC, its manager

  By:  /s/ Kurt E. Wilson
        Name: Kurt E. Wilson
        Title: Executive Vice President, Chief
             Financial Officer, Treasurer and
             Secretary

**Centaur PA Land Management, LLC**

By: Centaur, LLC, its manager

  By:  /s/ Kurt E. Wilson
        Name: Kurt E. Wilson
        Title: Executive Vice President, Chief
             Financial Officer, Treasurer and
             Secretary

MIAMI 896127 (2K)

# EXHIBIT "A"

| | DEBTORS |
|---|---|
| **1.** | **Centaur PA Land, LP** |
| 2. | Valley View Downs, LP |
| **3.** | **Centaur, LLC** |
| 4. | Centaur Colorado, LLC |
| **5.** | **Centaur Indiana, LLC** |
| 6. | Centaur Racing, LLC |
| **7.** | **Hoosier Park, L.P.** |
| 8. | HP Dining & Entertainment, LLC |
| **9.** | **Centaur Pennsylvania, LLC** |
| 10. | VVD Properties General Partner, LLC |
| **11.** | **Valley View Downs GP, LLC** |
| 12. | VVD Properties, LP |
| **13.** | **Centaur PA Land General Partner, LP** |
| 14. | Centaur PA Land Management, LLC |

Document comparison done by Workshare DeltaView on Friday, January 28, 2011 3:45:23 PM

| Input: | |
|---|---|
| Document 1 | interwovenSite://MIDMS/MIAMI/896127/1 |
| Document 2 | interwovenSite://MIDMS/MIAMI/896127/6 |
| Rendering set | Standard |

| Legend: |
|---|
| Insertion |
| Deletion |
| Moved from |
| Moved to |
| Style change |
| Format change |
| Moved deletion |
| Inserted cell |
| Deleted cell |
| Moved cell |
| Split/Merged cell |
| Padding cell |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 564 |
| Deletions | 597 |
| Moved from | 18 |
| Moved to | 18 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 1197 |